**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**RUBIN LAW OFFICE, P.C.**
David Rubin (SBN 304744)
david@rubinlawoffice.com
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Phone: (619) 719–1087

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URSULA BYRAM, S.B. by and through guardian *ad litem* TIMOTHY BYRAM, N.B. by and through guardian *ad litem* TIMOTHY BYRAM, and A.B. by and through guardian *ad litem* KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, BLAKE RUNGE, and DOES 1–10, <br><br> Defendants. | **CASE NO.: 2:23-CV-9285** <br><br> **COMPLAINT FOR DAMAGES** <br><br> <u>Federal Law Claims</u> <br> 1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983) <br> 2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983) <br> 3. 42 U.S.C. § 1983 Fourteenth Amendment, Interference with Familial Relationship <br> 4. Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983) <br> 5. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983) <br> 6. Municipal Liability, Failure to Train (42 U.S.C. § 1983) <br> 7. Municipal Liability, Ratification (42 U.S.C. § 1983) <br> 8. Americans with Disabilities Act (42 U.S.C. § 12132) <br> <u>State Law Claims</u> <br> 9. Battery <br> 10. Negligence <br> 11. Intentional Infliction of Emotional Distress <br> 12. False Imprisonment <br> 13. Violation of Cal. Civil Code § 52. <br><br> **DEMAND FOR JURY TRIAL** |

## **COMPLAINT FOR DAMAGES**

COME NOW, Plaintiffs URSULA BYRAM, S.B. and N.B. by and through their guardian *ad litem*, TIMOTHY BYRAM; and A.B. by and through his guardian *ad litem* KAITLYN HUMENCHUK for their Complaint for Damages against Defendants COUNTY OF LOS ANGELES, BLAKE RUNGE, and DOES 1–10 and hereby allege as follows:

## **INTRODUCTION**

1.      This civil rights and state tort action arises from the egregious and unjustified use of deadly force by Defendant BLAKE RUNGE against Everett Byram, a 34-year-old comedian and father of three. On the night of February 10, 2023, Los Angeles Sheriff's Department deputies recklessly escalated a manageable situation into a deadly confrontation, resulting in a life cut short, three young children robbed of their father's love and guidance, and a widow permanently scarred by the loss of her partner. Plaintiffs seek compensatory damages from Defendants for violating their rights under the United States Constitution and for their violations of state law. Plaintiffs seek punitive damages from Defendant BLAKE RUNGE.

## **JURISDICTION AND VENUE**

2.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)–(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

3.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C.

§1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

5.     On August 1, 2023, Plaintiffs served their comprehensive and timely claim for damages on their own behalf and on behalf of the Mr. Byram with the COUNTY OF LOS ANGELES pursuant to applicable sections of the California Government Code.

6.     On October 2, 2023, Defendant COUNTY served its letters of rejection of Plaintiffs' claims.

## **PARTIES**

7.     Everett Byram, a 34-year-old man, was killed on February 10, 2023 by Defendant BLAKE RUNGE. At all relevant times, Mr. Byram was an individual residing in Los Angeles.

8.     Plaintiff URSULA BYRAM is an individual who was residing in Los Angeles at the time of the incident. URSULA BYRAM is the wife of Mr. Byram; she sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff URSULA BYRAM is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. She currently resides in Arkansas.

9.     Plaintiff S.B., a child of Mr. Byram, is an individual and was residing in Los Angeles at the time of the incident. Plaintiff S.B. sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff S.B. is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. Plaintiff S.B. currently resides in Arkansas.

10.    Plaintiff N.B., a child of Mr. Byram, is an individual and was residing in Los Angeles at the time of the incident. Plaintiff N.B. sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff N.B. is Mr. Byram's successor-in-interest pursuant to

California Code of Civil Procedure §§377.30 and 377.60. Plaintiff N.B. currently resides in Arkansas.

11.     Plaintiff A.B., a child of Mr. Byram, sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff A.B. is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. Plaintiff A.B. currently resides in Virginia.

12.     Defendant COUNTY OF LOS ANGELES ("COUNTY") is a political subdivision of the State of California that is within this judicial district. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the COUNTY Sheriff's Department ("LASD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring those actions, omissions, policies, procedures, practices, and customs of the Defendant COUNTY, LASD, and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, Defendant COUNTY was the employer of Deputies BLAKE RUNGE and DOES 1–10.

13.     Defendant DEPUTY RUNGE was and is a deputy with the LASD. At all relevant times, DEPUTY RUNGE was acting under the color of law within the course and scope of his duties as a deputy working for the LASD. At all relevant times, DEPUTY RUNGE acted with complete authority and ratification of his principal, Defendant COUNTY.

14.     Defendant Deputy DOES 1–8 are deputies with the LASD. At all relevant times, DOES 1–8 were acting under the color of law within the course and scope of their duties as deputies working for the LASD. At all relevant times, DOES 1–8 acted with complete authority and ratification of their principal, Defendant COUNTY.

15.     Defendants DOES 9–10 are managerial, supervisorial, or policymaking employees of the Defendant COUNTY who were acting under color of law within the course and scope of their duties as supervisorial officials for the LASD. Defendant DOES 9–10 were acting with the complete authority of their principal, Defendant COUNTY.

16.     Plaintiffs are ignorant of the true names and capacities of DOES 1–10 and therefore sue them by such fictitious names. Plaintiffs will amend the complaint to allege the true names and capacities of those Defendants when their names has been ascertained. Plaintiffs are informed and believe, and on that basis allege, that DOES 1–10 are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiffs' damages.

17.     According to information and belief, Defendants RUNGE and DOES 1–10 were at all relevant times residents of Los Angeles.

18.     Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

19.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein all individual Defendants, including Defendants RUNGE and DOES 1–10 acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and the Defendant COUNTY.

20.     Pursuant to Cal. Govt. Code §815.2(a), Defendant COUNTY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants RUNGE and DOES 1–10 as alleged by Plaintiffs' state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his

employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendants RUNGE and DOES 1–10 are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant COUNTY is also liable pursuant to Cal. Govt. Code §815.6.

21.     All Defendants who are natural persons, including Defendants RUNGE and DOES 1–10 are sued individually. Defendant COUNTY is being sued for direct liability under *Monell* and vicarious liability under Plaintiffs' state law claims; and punitive damages are only being requested as to Defendant RUNGE.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22.     On February 10, 2023, at approximately 10:22 p.m., deputies from the Los Angeles County ("COUNTY") Sheriff's Department ("LASD") responded to the residence of URSULA BYRAM and Everett Byram.

23.     Upon arrival, deputies spoke with URSULA BYRAM at the front door, where she informed them that Mr. Byram was having a mental health crisis.

24.     Mr. Byram was 34 years old with a history of depression.

25.     Deputies entered the residence, entered the backyard and located Mr. Byram in the side yard of the residence, where they found him in possession of a blunt sword.

26.     Initially, two deputies aimed non-lethal weapons at Mr. Byram: one wielded a Taser, and the other a 40mm foam baton launcher.

27.     Despite knowing that Mr. Byram was suffering from a mental health crisis, the Defendant Officers escalated the situation by simultaneously shouting conflicting commands at him, contributing to his disorientation.

28.     Shortly thereafter, RUNGE approached, drew his firearm, and pointed it at Mr. Byram, joining the two deputies who had previously aimed non-lethal weapons at Mr. Byram.

29.     RUNGE also began shouting orders simultaneously with other officers, escalating the situation and further disorienting Mr. Byram.

30.     One of the officers called for the use of a non-lethal weapon against Mr. Byram.

31.     Ignoring the call for the use of non-lethal force, RUNGE discharged his firearm, fatally wounding Mr. Byram.

32.     Almost immediately following the gunshot, another officer deployed the 40mm foam baton launcher.

33.     At the time of the shooting, Mr. Byram did not pose an immediate threat of death or serious bodily injury to any person, including the involved deputies.

34.     When shot and killed, Mr. Byram was standing several yards away from the Defendant Officers, who themselves were behind or near a backyard gate, providing them with distance, space, cover, and time.

35.     Mr. Byram was neither charging nor advancing toward the deputies and was at such a distance that he could not reasonably be perceived as posing an imminent threat of death or severe bodily injury.

36.     The Defendants failed to provide a verbal warning indicating that deadly force would be used and did not afford Mr. Byram an opportunity to heed any such warning.

37.     Following the shooting, the involved deputies neglected to promptly summon medical attention for, or provide medical aid to, Mr. Byram.

38.     As a direct and proximate result of the shooting and the subsequent failure to provide timely medical care, Mr. Byram experienced severe pain and suffering, loss of life, and loss of earning capacity.

39.     Following the shooting of Mr. Byram, the LASD deputies unlawfully detained URSULA BYRAM in a patrol vehicle without justification.

40.     URSULA BYRAM was held in this manner for an extended period exceeding 7 hours.

41.     During her unlawful detention, URSULA BYRAM was placed in a patrol vehicle along with her son, but her daughter was absent.

42.     The involved deputies deliberately withheld information from URSULA BYRAM concerning the condition and whereabouts of her husband, Mr. Byram, and her daughter.

43.     Due to this lack of communication, URSULA BYRAM was left in a state of distress, uncertain as to the welfare of her daughter and under the impression that she might have been injured or even killed.

44.     Approximately one week after the fatal shooting of Mr. Byram, deputies from the Los Angeles Sheriff's Department conducted an unscheduled welfare check at URSULA BYRAM's residence.

45.     This welfare check was focused on Mr. Byram, who had already tragically lost his life as a result of the deputies' actions, further exacerbating URSULA BYRAM's emotional distress.

46.     This unexpected and unjustifiable encounter subjected URSULA BYRAM to additional shock and emotional distress, thereby compounding the trauma she had already endured.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force (42 U.S.C. § 1983)

(Plaintiffs against RUNGE and DOES 1–10)

47.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

48.    Plaintiffs bring this claim for relief in their capacity as the successors in interest of Mr. Byram under California Code of Civil Procedure § 377.30.

49.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by law enforcement officers.

50.    Defendants RUNGE and DOES 1–10 failed to employ de-escalation tactics, gave conflicting and simultaneous commands, and did not provide a verbal warning for the use of deadly force when it was feasible to do so.

51.    DEPUTY RUNGE used excessive force against Mr. Byram by ignoring the call for non-lethal force and fatally shooting him, despite the fact that Mr. Byram was not an immediate threat of death or serious bodily injury. At the time of the shooting, Mr. Byram was several yards away from the officers, who had cover and distance between them and Mr. Byram. Furthermore, no verbal warning of deadly force was given, nor was Mr. Byram given an opportunity to heed such a warning. This unjustified and unreasonable use of force violated Mr. Byram's Fourth Amendment rights.

52.    As a direct result of the Defendants actions, Mr. Byram experienced severe physical and mental pain up to the time of his death.

53.     Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the LASD and acted under color of state law.

54.     The use of force was excessive and unreasonable, given that Mr. Byram posed no immediate threat, was several yards away, and officers had cover, time, and space to maneuver.

55.     The conduct of RUNGE was willful, wanton, malicious, and done with reckless disregard for Mr. Byram's rights and safety, warranting the imposition of exemplary and punitive damages.

56.     No serious or violent crime was being responded to, and less intrusive alternatives were available.

57.     Further, the Defendants knew that Mr. Byram was suffering from a mental health crisis, but they did not take that into account when they chose to escalate the situation, shout simultaneously, and shoot him without warning.

58.     DEPUTY RUNGE is directly liable for Mr. Byram's injuries, and DOES 1–8 are liable for Mr. Byram's injuries either because they were integral participants in the excessive force and because they failed to intervene to prevent DEPUTY RUNGE's actions. DOES 9–10 are liable under for exhibiting deliberate indifference to the known propensity of DEPUTY RUNGE to use excessive force. Despite being aware of DEPUTY RUNGE's history of excessive force and violent behavior, DOES 9–10 failed to take appropriate supervisory action or implement effective preventative measures. Their failure to properly supervise, train, or discipline DEPUTY RUNGE directly and proximately caused the violation of the Plaintiff's constitutional rights during the incident in question.

59.     Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, loss of opportunity of life, and loss of

enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

60.     The conduct of RUNGE was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiffs and the Mr. Byram. RUNGE intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. As such, this conduct entitles the Plaintiff to an award of exemplary and punitive damages from RUNGE. No action for punitive damages is brought against DOES 1–10 or the COUNTY.

### SECOND CLAIM FOR RELIEF

**Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)**

(Plaintiffs against RUNGE and DOES 1–8)

61.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62.     Plaintiffs bring this claim for relief in their capacity as the successors in interest of Mr. Byram under California Code of Civil Procedure § 377.30. This claim for relief arose in Mr. Byram's favor, and Mr. Byram would have been the plaintiff with respect to this cause of action had he lived.

63.     Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

64.     The denial of medical care by Defendants deprived Mr. Byram of his right to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

65.     Defendants failed to provide timely medical care to Mr. Byram and failed to timely summon medical care for Mr. Byram. Defendants' delay

11

and/or denial of medical care was a cause of Mr. Byram's pain, suffering, and death.

66.     As a direct result of the aforesaid acts and omissions of Defendants, Mr. Byram suffered great physical and mental injury, fear, and emotional distress leading to his death and the loss of enjoyment of life.

67.     Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering and loss of enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment—Denial of Familial Relationship (42 U.S.C. § 1983)**

(Plaintiffs against RUNGE and DOES 1–10)

68.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

69.     URSULA BYRAM had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in URSULA BYRAM's familial relationship with her husband, Mr. Byram.

70.     S.B., by and through guardian ad litem TIMOTHY BYRAM, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in S.B.'s familial relationship with their father, Mr. Byram.

71.     N.B., by and through guardian ad litem TIMOTHY BYRAM, had a cognizable interest under the Due Process Clause of the Fourteenth

Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in N.B.'s familial relationship with their father, Mr. Byram.

72.     A.B., by and through guardian ad litem KAITLYN HUMENCHUK, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in A.B.'s familial relationship with their father, Mr. Byram.

73.     Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

74.     The aforementioned actions of Defendants RUNGE and DOES 1–10 shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Byram and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

75.     As a direct and proximate result of these actions, Mr. Byram experienced pain and suffering and eventually died. Defendants RUNGE and DOES 1–10 thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. Byram.

76.     As a direct and proximate cause of the acts of Defendants RUNGE and DOES 1–10, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Byram, and will continue to be so deprived for the remainder of their natural lives.

PLAINTIFFS' COMPLAINT FOR DAMAGES

77. DEPUTY RUNGE is directly liable for Mr. Byram's injuries, and DOES 1–8 are liable for Mr. Byram's injuries either because they were integral participants in the excessive force and because they failed to intervene to prevent DEPUTY RUNGE's actions. DOES 9–10 are liable under for exhibiting deliberate indifference to the known propensity of DEPUTY RUNGE to use excessive force. Despite being aware of DEPUTY RUNGE's history of excessive force and violent behavior, DOES 9–10 failed to take appropriate supervisory action or implement effective preventative measures. Their failure to properly supervise, train, or discipline DEPUTY RUNGE directly and proximately caused the violation of the Plaintiff's constitutional rights during the incident in question.

78. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seek both survival and wrongful death damages for the violation of their rights. Plaintiffs also seek attorney's fees and costs under this claim.

79. The conduct of RUNGE was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiffs and the Mr. Byram. RUNGE intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. As such, this conduct entitles the Plaintiff to an award of exemplary and punitive damages from RUNGE. No action for punitive damages is brought against DOES 1–10 or the COUNTY.

## **FOURTH CLAIM FOR RELIEF**

### **Fourth Amendment—Unlawful Detention (42 U.S.C. § 1983)**

(URSULA BYRAM against RUNGE and DOES 1–10)

80. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

14

81.    The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures. Statute 42 U.S.C. § 1983 provides a right of action for conduct which violates this right. DOES 1–10 violated URSULA BYRAM's rights to be free from unreasonable searches and seizures, which is guaranteed to her by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

82.    At all relevant times, DOES 1–10 acted under the color of state law and within the course and scope of their duties. DOES 1–10 had no reasonable justification to detain URSULA BYRAM for an extended period exceeding 7 hours.

83.    As a direct result of the unlawful detention, URSULA BYRAM was placed in a situation causing her to experience severe emotional distress.

84.    As a result of their misconduct, DOES 1–10 are liable for URSULA BYRAM's emotional distress for wrongfully detaining her and failing to inform her of the condition and whereabouts of her family members while in their custody, control, and care.

85.    URSULA BYRAM brings this claim against Defendants, seeking compensatory damages, including pain and suffering, emotional distress, and humiliation. She also seeks attorney's fees under this claim, pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability: Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(Plaintiffs against the COUNTY)

86.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

87.     The actions of DEPUTY RUNGE and DOES 1–10, which deprived Mr. Byram and Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments, were carried out in accordance with a widespread and longstanding practice or custom of Defendant COUNTY. This custom condones, ratifies, and acquiesces in the excessive use of deadly force by Sheriff's deputies. Due to this ingrained practice, Defendants RUNGE and DOES 1–10 have not been disciplined, reprimanded, retrained, suspended, or faced any administrative or adverse employment consequences in connection with Mr. Byram's death. This practice or custom by COUNTY serves as the moving force behind the deprivation of the Plaintiffs' rights and Mr. Byram's death.

88.     Defendants COUNTY, together with other COUNTY final policymakers and supervisors, maintained the following unconstitutional customs, practices, and policies:

a. The use of excessive force, including excessive deadly force by LASD deputies when there is no need for deadly force, or where there is no imminent threat to deputies.

b. The COUNTY's failure to provide adequate training regarding the use of force, and the use of deadly force.

c. The COUNTY's employing and retaining as Sheriff's deputies and individuals whom the COUNTY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive deadly force.

d. The use of excessive force by LASD deputies against individuals suffering from a mental health crisis, when there are reasonable alternatives.

e. The COUNTY's inadequately supervising, training, controlling, assigning, and disciplining Deputy Sheriffs, contributing to

16

situations like that encountered on February 10, 2023, where lack of proper direction and control led to the escalation of a situation involving a mentally distressed individual and resulted in fatal consequences.

f.  The COUNTY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by County deputies, as demonstrated by the incident on February 10, 2023, where conflicting orders and the use of lethal force against an individual suffering from a mental health crisis highlight systemic failures in handling such situations.

g.  The COUNTY's failures to adequately discipline County deputies and for categories of misconduct as demonstrated on February 10, 2023, where a call for non-lethal force was ignored, leading to the use of deadly force against a mentally distressed individual without adequate warning or opportunity for the individual to comply.

h.  The COUNTY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of deadly force instances such as the one on February 10, 2023, where lethal force was used against a individual in a mental health crisis who did not pose an immediate threat of death or serious bodily injury to any person.

i.  Even when an incident such as the one on February 10, 2023 is brought to light, where the use of force was excessive and fatal against a mentally distressed individual, the COUNTY has refused to discipline, terminate, or retrain the deputies involved.

j.  The COUNTY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which sheriff's deputies do not report other deputies' errors, misconduct, or crimes, as potentially indicated by the lack of immediate corrective actions or reporting regarding the incident on February 10, 2023.

k.  The COUNTY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of excessive force by sheriff's deputies, as evidenced by the fatal incident on February 10, 2023, where a lack of discipline, retraining, investigation, termination, and recommendation for criminal prosecution perpetuates a cycle of violence, especially against vulnerable populations.

l.  The COUNTY's custom and practice of providing inadequate training regarding handling situations with mentally ill persons and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158, as exemplified by the incident on February 10, 2023, where the deputies were ill-prepared to de-escalate a situation involving an individual suffering from a mental health crisis, leading to fatal consequences.

89.  Defendants COUNTY, and DEPUTY RUNGE, along with DOES 1–10, together with various other COUNTY officials, and final policy makers, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above. The Defendants COUNTY and DEPUTY RUNGE, along with DOES 1–10, acted with deliberate indifference to the foreseeable effects and consequences of

these customs and policies with respect to the constitutional rights of Mr. Byram, Plaintiffs, and other individuals similarly situated.

90.     The following are only a few examples of constitutional violations committed by Sheriff's deputies working for Defendant County. These examples demonstrate the unconstitutional customs and practices of using excessive force against unarmed civilians, ratifying that use of deadly force, and/or finding the use of deadly force to be justified or "within policy," as exemplified in the incident on February 10, 2023, involving Mr. Byram during a mental health crisis. Despite knowledge of Mr. Byram's mental health condition and initial use of non-lethal force options, DEPUTY RUNGE escalated the situation by discharging his firearm, fatally wounding Mr. Byram, who at that time did not pose an immediate threat of death or serious bodily injury to any person, including the involved deputies. This incident reflects the alleged unconstitutional customs and practices within the Defendant COUNTY.

   a. In *Mitchell v. County of Los Angeles*, et al., case number CV 03-8421 RJK (Awx), an LASD Deputy killed an unarmed civilian, Robert Mitchell, shooting him in the back six times. At trial, the COUNTY argued that use of deadly force by the Deputy was reasonable; the jury found otherwise, returning a $4,000,000 verdict. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy.

   b. In *Gutierrez, et al. v. County of Los Angeles*, et al., case number CV 10-7608 PSG (AJWx), a jury found that an LASD Deputy used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. The Deputy was not disciplined or retrained for his use of deadly

force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy.

c.   On August 8, 2009, in the City of Carson, an LASD Deputy shot and killed Ezequiel Jacobo, who was unarmed. Police reports confirmed that Mr. Jacobo was unarmed. The Deputy was not disciplined or retrained for shooting Mr. Jacobo. The COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Jacobo, et al. v. County of Los Angeles, et al.*, case number CV-11-7212 GW (SSx)).

d.   In 2011, in the city of Norwalk, LASD deputies shot Emiliano Amaya five times in the back, killing him. In 2017, a jury awarded more than $3 million to the plaintiffs. The COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Marian Amaya, et al., v. County of Los Angeles, et al.*, case number VC062384)

e.   On January 4, 2012, an LASD Deputy killed Ms. Jazmyne Ha Eng, a 40-year-old who sought psychiatric help at the Asian Pacific Family Center in Rosemead. Ms. Eng, who suffered from schizophrenia, was holding a small ball-peen hammer when Deputy Vance shot her. The shooting occurred within 12 seconds of the deputies making contact with Ms. Eng. In 2014, the COUNTY settled the lawsuit for $1.8 million.

f.   On February 1, 2013, in the City of Walnut, an LASD Deputy shot Michael Lobrono, who was unarmed. Police reports confirmed that Mr. Lobrono was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. In October 2014, the COUNTY

20

settled the lawsuit for $335,000. (Lobrono, et al. v. County of Los Angeles, et al., case number CV 13-03838).

g. On April 20, 2013, in the City of Cudahy, an LASD Deputy shot and killed Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting. Police reports confirmed that Mr. Sanchez was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Sanchez v. County of Los Angeles, et al*., case number CV 13-03836).

h. On May 11, 2013, in the City of Cudahy, an LASD Deputy shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting. Police reports confirmed that Mr. Arceo was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*N.K.A., et al. v. County of Los Angeles, et al*., case number CV 13-05507).

i. On May 23, 2013, in the City of Compton, LASD Deputies shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot. The Deputies were not disciplined or retrained for their use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*D.A.B., et al. v. County of Los Angeles, et al.*, case number CV 14-05207 FMO (ASx)).

j. On August 1, 2014, in the city of Pico Rivera, LASD Deputies shot and killed 54-year old man, Frank Mendoza in broad daylight in the doorway of Mr. Mendoza's home. LASD deputies

21

allegedly mistook him for a parolee-at-large. Mendoza was unarmed at the time he was shot. In May 2018, the County settled the case for $14.35 million. The COUNTY found that the deputies were justified in their use of deadly force.

k. In 2015, LASD deputies shot and killed an unarmed man. The Board of Supervisors approved a $1.5 million legal settlement for the family of the young father that was shot and killed by a Sheriff's deputy in Cerritos in 2015 when he allegedly used his car to try and run over the deputy.

l. In *Martinez v. County of Los Angeles, et al*., case number 2:14-cv-05456-DSF-MAN, an LASD Deputy discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was unarmed. Deputy Gonzalez was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. In 2016, the Board of Supervisors approved a settlement of the lawsuit for $2,800,000.

m. On March 8, 2017, an LASD deputy shot and killed Dennis Todd Rogers, an African-American man, who was 41 years old, and was having a mental health crisis outside a 24 Hour Fitness in Ladera Heights. His family filed a lawsuit against the LASD, *Dennis Todd Rogers et al v. County of Los Angeles, et al*, case number 2:2017cv05236, alleging that the deputies reacted improperly by shooting to kill, and accused the COUNTY of failing to adequately train and supervise deputies to deal with people who suffer from mental illness.

n. On March 31, 2021, LASD shot and left paralyzed Isaias Cervantes, a 25-year-old man who suffered from autism who

functioned as a six-year old. On the day of the incident when he got shot by LASD deputies, he was experiencing a mental health crisis and having problems with his family. As a result of the shooting, the Cervantes family filed an action against the LASD alleging that the deputies who responded to the call involving Cervantes deliberately incited a crisis irrationally panicked, then "recklessly shot their way out of an imagined danger." It was also alleged that deputies shot Cervantes after only 83 seconds had passed after making contact with him.

o. On March 14, 2021, LASD deputies shot and killed David Ordaz Jr., who was 34 years old and a father of three, after LASD deputies responded to call for help where Ordaz was experiencing a mental health emergency in East Los Angeles. The family of Ordaz alleged that the LASD deputies shot at Ordaz after he turned away. The coroner's report supported that Ordaz was struck in the back. Following the shooting the County Sheriff commented, that he had "grave concerns" regarding this deputy-involved shooting.

p. On February 15, 2018, the LASD Civilian Oversight Commission issued a report calling for more mental health evaluation teams to respond to mental health emergencies. The report is available at http://file.lacounty.gov/SDSInter/bos/supdocs/1033706_Item4.MetFinalReport.pdf. At pages 11 and 12 of the report, the LASD Oversight Commission cited its concerns over the County's payouts for lawsuits stemming from the excessive use of force and cited concerns regarding the excessive use of force by LASD deputies on people with mental illness or disabilities.

91.    The aforementioned cases establish a pattern of excessive use of force by Sheriff's deputies, and the unconstitutional custom, and practice of the COUNTY in ratifying the excessive use of force by Sheriff's deputies, as evidenced by the number of prior cases involving the use of deadly force by deputies working for the LASD.

92.    The County's longstanding practice or custom caused the deprivation of Mr. Byram and Plaintiffs' rights by DEPUTY RUNGE and DOES 1–10; that is, the County's official policy condoning excessive force against mentally ill people is so closely related to the deprivation of Mr. Byram and Plaintiffs' rights in this case as to be the moving force that caused Mr. Byram's death.

93.    The COUNTY had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above.

94.    The COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Byram, Plaintiffs, and other individuals similarly situated.

95.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Byram. The aforementioned acts and omissions also caused Mr. Byram's pain and suffering, loss of enjoyment of life, and death.

96.    Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

97.    Plaintiffs bring their claim individually and as successors in interest to Mr. Byram and seek wrongful death damages under this claim.

Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

## SIXTH CLAIM FOR RELIEF

### Municipal Liability: Failure to Train (42 U.S.C. § 1983)

(Plaintiffs against COUNTY)

98.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.    At all times herein mentioned, DEPUTY RUNGE and DOES 1–10, acted under color of law and the acts and omissions of the DOES 1–10 deprived Mr. Byram and Plaintiffs of their Constitutional rights under the United States Constitution. The training policies of Defendant COUNTY were not adequate to properly train LASD deputies to handle the usual and recurring situations in their interactions with residents, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness. The training policies of Defendant COUNTY were not adequate to properly train LASD deputies with regard to the use of deadly force, the permissible use of deadly weapons, and protecting the rights of persons to medical care during in the course of detaining individuals.

100.   The unjustified and excessive use of deadly force against Mr. Byram by DEPUTY RUNGE and DOES 1–10, was a result of the negligent training by Defendant COUNTY who failed to train LASD deputies, such as DEPUTY RUNGE and DOES 1–10, as to proper police tactics, proper use of force, proper use of deadly force, and proper police tactics in the use of force with respect to mentally ill individuals. Defendant COUNTY was responsible for the training of LASD deputies to ensure that the actions, procedures, and practices of DEPUTY RUNGE and DOES 1–10, complied with Peace Officer

25

Standards and Training ("POST") training standards regarding proper police tactics, proper use of force, and proper use of deadly force.

101.   Defendant COUNTY negligently failed to train COUNTY Sheriff's deputies, such as DEPUTY RUNGE and DOES 1–10, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics when dealing with individuals suffering from a mental health crisis. POST was established by the California Legislature in 1959 to set minimum training standards for California Sheriff's deputies. The training policies of Defendant COUNTY were not adequate to train its Sheriff's deputies to handle the usual and recurring situations with residents and pretrial detainees that DOES 1–10 have contact with.

102.   The training policies of Defendant COUNTY were deficient in the following:

   a. Defendant COUNTY failed to adequately train Los Angeles County Sheriff's deputies, such as DEPUTY RUNGE and DOES 1–10, in de-escalating interactions with residents or individuals experiencing a mental health crisis. Instead of de-escalation, DEPUTY RUNGE and DOES 1–10 escalated their interactions with Mr. Byram, who was experiencing a mental health crisis.

   b. Defendant COUNTY failed to properly train Los Angeles County Sheriff's deputies, like DEPUTY RUNGE and DOES 1–10, to manage their fear to prevent it from becoming unreasonable and not objectively justifiable. This lack of training led to the use of deadly force by DEPUTY RUNGE and DOES 1–10, causing the death of residents or individuals in a mental health crisis, such as Mr. Byram.

c. Defendant COUNTY failed to properly train COUNTY Sheriff's deputies, such as DEPUTY RUNGE and DOES 1–10, in proper police tactics, such as situational awareness, to prevent the use of negligent tactics, which is what DEPUTY RUNGE and DOES 1–10 did in this case. Because of this lack of proper training by Defendant COUNTY, DEPUTY RUNGE and DOES 1–10 did not use proper police tactics in handling their contact and interaction with Mr. Byram. DEPUTY RUNGE and DOES 1–10 used defective police tactics, including the lack of situational awareness. These training failures by Defendant COUNTY, and defective tactics by DEPUTY RUNGE and DOES 1–10, resulted in the death of Mr. Byram.

d. Defendant COUNTY failed to properly train Sheriff's deputies, such as DEPUTY RUNGE and DOES 1–10, on the importance of effective communication between officers prior to using any type of force.

e. Because of the lack of proper training by COUNTY, DEPUTY RUNGE and DOES 1–10 did not use effective communication prior to and during the use of force against Mr. Byram. This ineffective communication by DEPUTY RUNGE and DOES 1–10, prior to and during the incident, resulted in the death of Mr. Byram, causing constitutional injuries to Mr. Byram and PLAINTIFFS.

103.   The failure of Defendant COUNTY to provide proper training to its deputy Sheriffs resulted in the deprivation of Plaintiffs' rights by DEPUTY RUNGE and DOES 1–10. Defendant COUNTY's failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiffs.

104.   The training policies of the County were not adequate to train its deputy Sheriffs to handle the usual and recurring situations they must deal with, including situations involving persons suffering from a mental health crisis, such as Mr. Byram. Defendant County was deliberately indifferent to the obvious consequences of its failure to properly train its deputy Sheriffs.

105.   The failure of the County to provide adequate training to its deputy Sheriffs caused the deprivation of Plaintiffs' rights by DEPUTY RUNGE and DOES 1–10; the County's failure to train is so closely related to the deprivation of Mr. Byram and Plaintiffs' rights as to be the moving force that caused the ultimate constitutional injuries to Plaintiffs.

106.   By reason of the aforementioned acts and omissions of Defendant COUNTY, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Byram. The aforementioned acts and omissions also caused Mr. Byram's pain and suffering, loss of enjoyment of life, and death.

107.   Defendant COUNTY is liable to the Plaintiffs for compensatory damages under 42 U.S.C. § 1983. Plaintiffs bring these claims as Mr. Byram's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of Mr. Byram's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

### SEVENTH CLAIM FOR RELIEF

### Municipal Liability: Ratification (42 U.S.C. § 1983)

(Plaintiffs against COUNTY)

108.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

109.   At all relevant times Defendants RUNGE and DOES 1–10 acted under the color of state law and within the course and scope of their employment with Defendant COUNTY.

110.   The acts of Defendant RUNGE and DOES 1–10 deprived Mr. Byram and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Mr. Byram without justification, causing his death, deprived Plaintiffs of their familial relationship Mr. Byram.

111.   Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying the unconstitutional and unreasonable uses of force, including deadly force.

112.   Upon information and belief, a final policymaker for the Defendant COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendants RUNGE and DOES 1–10 and the bases for them, ratified the acts and omissions of Defendants RUNGE and DOES 1–10 and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants' acts, specifically approving the LASD Deputies' unlawful detention of Mr. Byram, and the excessive and unreasonable shooting of Mr. Byram when he was not an immediate threat of death or serious bodily injury.

113.   The official policies with respect to the incident are that LASD Deputies are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the Deputies or others. The LASD Deputies' actions deviated from these official policies because Mr. Byram did not pose an immediate threat of death or serious bodily injury to the involved Deputies or anyone else.

114.   Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of Defendants RUNGE and DOES 1–10 were "within policy."

115.   By reason of the aforementioned acts and omissions, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. §1983.

116.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seeks both survival and wrongful death damages. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

### EIGHTH CLAIM FOR RELIEF

**Americans with Disabilities Act (42 U.S.C. § 12132)**

(Plaintiffs against all Defendants)

117.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

118.   Mr. Byram was a "qualified individual," with a mental impairment, specifically depressive disorder, that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 (2).

119.   Los Angeles County is a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), as explained by regulations under these laws.

120.   Under the ADA, the COUNTY is mandated to develop effective procedures for interactions with individuals with mental disabilities and to ensure the protection of their personal and civil rights.

121.   Congress enacted the ADA with the finding that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. §12101(a)(2).

122.   The COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. §12182 (a).

123.   The COUNTY, DEPUTY RUNGE, and DOES 1–10 violated the ADA by: (1) failing to properly train its deputies to respond and interact peacefully with individuals with mental impairments, such as Mr. Byram; and (2) failing to follow procedures for de-escalation and non-lethal force in interactions with Mr. Byram, who was experiencing a mental health crisis.

124.   As a result of the acts and omissions of the Defendants, Mr. Byram suffered damages, including loss of life and pain and suffering.

125.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seeks both survival and wrongful death damages. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

## NINTH CLAIM FOR RELIEF

### Battery

(Plaintiffs against all Defendants)

126.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

127.   Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

128.   Defendant RUNGE intentionally shot Mr. Byram, resulting in his fatal injury. RUNGE had no legal justification for using deadly force against Mr. Byram, making the use of force unreasonable under the circumstances.

129.   At all relevant times, Mr. Byram did not pose an immediate threat of death or serious bodily injury to anyone, including Defendants RUNGE

and DOES 1–10. No warning was given that deadly force would be used prior to its use, and less-than-lethal alternatives were available.

130.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendant RUNGE pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries proximately caused by an act or omission of an employee of the public entity.

131.   The conduct of Defendant RUNGE was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Byram, entitling Plaintiffs to an award of exemplary and punitive damages.

132.   Plaintiffs seek survival, wrongful death, and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

## TENTH CLAIM FOR RELIEF

### Negligence

(Plaintiffs against all Defendants)

133.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

134.   Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

135.   Police officers, including Defendants RUNGE and DOES 1–10, have a duty to use reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, using de-escalation techniques, and only using force as a last resort, especially when dealing with individuals in a mental health crisis. Defendants RUNGE and DOES 1–10 also have a responsibility to provide timely medical care to individuals they have harmed.

136. Defendants RUNGE and DOES 1–10 negligently caused physical injury to Mr. Byram when RUNGE discharged his firearm at him, striking him fatally. Their use of force was excessive, unreasonable, and negligent, including their pre-shooting conduct and post-shooting neglect to provide medical care.

137. Defendants RUNGE and DOES 1–10 breached their duty of care. Their actions were negligent and reckless, including but not limited to: (a) ignoring the call for non-lethal force and fatally shooting Mr. Byram; (b) contributing to Mr. Byram's disorientation by shouting conflicting command; and (c) failing to provide or summon timely medical care after the shooting.

138. As a direct and proximate result of the conduct of Defendants RUNGE and DOES 1–10, Mr. Byram suffered severe physical and mental pain, loss of life, and loss of earning capacity.

139. At all relevant times, Mr. Byram was not an immediate threat of death or serious bodily injury to anyone, was several yards away from officers who had cover, and was not given any warning that deadly force would be used.

140. Defendant COUNTY is vicariously liable for the wrongful acts of Defendants RUNGE and DOES 1–10 pursuant to section 815.2(a) of the California Government Code.

141. Plaintiffs bring this claim as successors-in-interest to Mr. Byram and seek wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

1  **ELEVENTH CLAIM FOR RELIEF**

2  **Intentional Infliction of Emotional Distress**

3  (Plaintiffs against all Defendants)

4  142.   Plaintiffs repeat and reallege each and every allegation in the

5  foregoing paragraphs of this Complaint with the same force and effect as if

6  fully set forth herein.

7  143.   The conduct of the Defendants, including but not limited to,

8  unlawfully detaining URSULA BYRAM in a patrol vehicle for over 7 hours

9  and deliberately withholding vital information about the condition and

10  whereabouts of her husband and daughter, was extreme and outrageous and

11  beyond the scope of conduct which should be tolerated by citizens in a

12  democratic and civilized society.

13  144.   Defendants committed these extreme and outrageous acts,

14  including the unscheduled and inappropriate "welfare check" on her deceased

15  husband, with the intent to inflict severe mental and emotional distress upon

16  URSULA BYRAM.

17  145.   As a direct and proximate result of Defendants' willful,

18  intentional, and malicious conduct URSULA BYRAM suffered severe and

19  extreme mental and emotional distress.

20  146.   Therefore, URSULA BYRAM is entitled to an award of

21  compensatory and punitive damages against said defendants.

22  **TWELFTH CLAIM FOR RELIEF**

23  **False Imprisonment**

24  (URSULA BYRAM against all Defendants)

25  147.   Plaintiffs repeat, reallege, and incorporate each and every

26  allegation in the foregoing paragraphs of this Complaint and with the same

27  force and effect as if fully set forth herein.

28

148.   The Defendant deputies, acting within the course and scope of their duties, unlawfully detained URSULA BYRAM without probable cause, exigent circumstances, or a warrant for her detention.

149.   URSULA BYRAM's freedom of movement was intentionally restricted by these deputies for an extended period exceeding 7 hours, to which she did not consent. At all relevant times, URSULA BYRAM was not committing any crimes.

150.   As an actual and proximate result of the deputies' false imprisonment of URSULA BYRAM, she sustained emotional distress and mental anguish.

151.   Defendants committed the aforementioned acts and omissions knowingly, willfully, maliciously, with the expressed intent to harm Plaintiff and with conscious or reckless disregard for URSULA BYRAM's rights. By reason thereof, Plaintiffs seek punitive and exemplary damages from the involved deputies in an amount according to proof at trial.

152.   Defendant COUNTY is liable for the wrongful acts of the involved LASD deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject them to liability, and under the theory of *respondeat superior*.

153.   As a result of their misconduct, Defendant deputies are liable for URSULA BYRAM's emotional distress, either because they failed to intervene or prevent these violations. The COUNTY is liable under the theory of *respondeat superior*.

154.   Plaintiffs bring this claim on behalf of URSULA BYRAM and seek damages for emotional distress, mental anguish, and punitive damages.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

(Plaintiffs against BLAKE RUNGE and COUNTY)

155.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

156.   Defendants RUNGE and DOES 1–10 acted within the course and scope of their employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

157.   The Bane Act, the California Constitution, and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.

158.   On information and belief, Defendants RUNGE and DOES 1–10, while working for the COUNTY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Mr. Byram, including by using excessive force against him without justification or excuse.

159.   When Defendants unnecessarily shot Mr. Byram, they interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, medical care, and life, liberty, and property. They intentionally used deadly force, demonstrating a reckless disregard for Mr. Byram's right to be free from excessive force.

160.   On information and belief, Defendant RUNGE intentionally and spitefully committed the above acts to discourage Mr. Byram from exercising his civil rights.

161.   On information and belief, Mr. Byram reasonably believed that the violent acts committed by Defendants were intended to discourage him from exercising his civil rights.

162.   Defendants successfully interfered with the civil rights of Mr. Byram and Plaintiffs.

163.   Mr. Byram was caused to suffer severe pain and suffering, loss of enjoyment of life, and loss of life. The conduct of Defendants was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Byram.

164.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendants RUNGE and DOES 1–10 under California law and the doctrine of repondeat superior and section 815.2(a) of the California Government Code.

165.   The conduct of the individual Defendants RUNGE and DOES 1–10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Byram. Plaintiffs and Mr. Byram are thus entitled to an award of exemplary and punitive damages.

166.   Plaintiffs also seek survival damages, costs, and attorneys' fees under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff REGINA CASTRO requests entry of judgment in her favor against Defendants COUNTY OF LOS ANGELES; DEPUTY BLAKE RUNGE; and DOES 1–10 as follows:

1.   For compensatory damages according to proof at trial, including: survival damages, not limited to pre-death pain and suffering and loss life under federal and state law; and wrongful death damages under federal and state law;

2.   For funeral and burial expenses, and loss of financial support;

3.   For loss of consortium;

4.   For punitive and exemplary damages against DEPUTY BLAKE

37

RUNGE in an amount to be proven at trial;

     5.    For statutory damages;

     6.    For reasonable attorneys' fees including litigation expenses;

     7.    For costs of suit and interest incurred; and

     8.    For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: November 3, 2023       **LAW OFFICES OF DALE K. GALIPO**

                               */s/ Dale K. Galipo*
                                 Dale K. Galipo
                                 Cooper Alison-Mayne
                                 *Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby submits this demand that this action be tried in front of a jury.

DATED: November 3, 2023          **LAW OFFICES OF DALE K. GALIPO**

/s/      *Dale K. Galipo*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff*