**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**RUBIN LAW OFFICE, P.C.**
David Rubin (SBN 304744)
david@rubinlawoffice.com
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Phone: (619) 719-1087

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

URSULA BYRAM, S.B. by and through guardian *ad litem* TIMOTHY BYRAM, N.B. by and through guardian *ad litem* TIMOTHY BYRAM, and A.B. by and through guardian *ad litem* KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram,

                    Plaintiffs,

          v.

COUNTY OF LOS ANGELES, BLAKE RUNGE, and DOES 1-10, inclusive,

                    Defendants.

Case No.: 2:23-cv-9285-SB (MARx)

Judge: Hon. Stanley Blumenfeld

**JOINT STIPULATION TO ALLOW PLAINTIFFS TO AMEND THEIR COMPLAINT**

1

2      IT IS HEREBY STIPULATED BY AND BETWEEN Plaintiffs and

3  Defendants, through their respective attorneys of record, as follows:

4      Plaintiffs filed their Complaint on November 3, 2023. (Dkt. No. 1.) The

5  County of Los Angeles filed its answer on December 6, 2023, and Deputy Blake

6  Runge filed his answer on December 19, 2023. (Dkt. Nos. 18, 26.)

7      At the time of filing, Plaintiffs were genuinely ignorant of the name of Los

8  Angeles Sheriff's Department Deputy Branda Alcantara, who is an additional

9  named defendant in the proposed First Amended Complaint. A redlined copy of

10  Plaintiffs' proposed First Amended Complaint is attached hereto as "Exhibit A."

11      The parties request that the Court afford Plaintiffs seven (7) days to file their

12  First Amended Complaint after the Court grants them leave. The parties further

13  request that Defendants' responsive pleading be due fourteen (14) days after

14  service of the First Amended Complaint.

15      Based upon the foregoing, the parties apply for and stipulate to an order

16  permitting Plaintiffs to file a First Amended Complaint.

17

18  DATED:  March 5, 2024              LAW OFFICES OF DALE K. GALIPO

19
                                      By:  ___/s/Cooper Alison-Mayne___
20
                                          Dale K. Galipo
21                                        Cooper Alison-Mayne[1]
                                          *Attorneys for Plaintiffs*
22

23

24

25

26

27  _____
    [1] As the filer of this document, I attest that all other signatories listed, and on whose behalf the
28  filing is submitted, concur in the filing's content and have authorized the filing.

                                      2

1  DATED:  March 5, 2024          HURRELL CANTRALL LLP

2                                 By:    _/s/Jordan S. Stern_____

3                                        THOMAS C. HURRELL
4                                        NICOLE G. ORTEGA
                                         JORDAN S. STERN
5                                        Attorneys for Defendants COUNTY OF
6                                        LOS ANGELES and DEPUTY BLAKE
                                         RUNGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**RUBIN LAW OFFICE, P.C.**
David Rubin (SBN 304744)
david@rubinlawoffice.com
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Phone: (619) 719–1087

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URSULA BYRAM, S.B. by and through guardian *ad litem* TIMOTHY BYRAM, N.B. by and through guardian *ad litem* TIMOTHY BYRAM, and A.B. by and through guardian *ad litem* KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, BLAKE RUNGE, and , BRENDA ALCANTARA and DOES 1–10,<br><br>        Defendants. | Case No.: 2:23-cv-09285-SB-MAR<br><br>COMPLAINT AMENDED COMPLAINTFOR DAMAGES<br><br>Federal Law Claims<br>I.   Fourth Amendment, Excessive Force (42 U.S.C. § 1983)<br>2.   Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>3.2. 42 U.S.C. § 1983 Fourteenth Amendment, Interference with Familial Relationship<br>4.3. Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)<br>5.4. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)<br>6.5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)<br>7.6. Municipal Liability, Ratification (42 U.S.C. § 1983)<br>8.7. Americans with Disabilities Act (42 U.S.C. § 12132)<br><br>State Law Claims<br>9.8. Battery<br>10.9. Negligence<br>11.  Intentional Infliction of Emotional Distress<br>12.10.   False Imprisonment |

1

| | |
|---|---|
| 1 | ~~13.~~11.    Violation of Cal. Civil Code § 52. |
| 2 | |
| 3 | ~~DEMAND FOR JURY TRIAL~~ |
| 4 | |
| 5 | |
| 6 | |

7     **AMENDED COMPLAINT FOR DAMAGES**

8     COME NOW, Plaintiffs URSULA BYRAM, S.B. and N.B. by and through

9 their guardian *ad litem*, TIMOTHY BYRAM; and A.B. by and through his

10 guardian *ad litem* KAITLYN HUMENCHUK for their Amended Complaint for

11 Damages against Defendants COUNTY OF LOS ANGELES, BLAKE RUNGE,

12 and BRENDA ALCANTARA , ~~and DOES 1–10~~ and hereby allege as follows:

13     **INTRODUCTION**

14     1.    This civil rights and state tort action arises from the egregious

15 and unjustified use of deadly force by Defendant BLAKE RUNGE against

16 Everett Byram, a 34-year-old comedian and father of three. On the night of

17 February 10, 2023, Los Angeles Sheriff's Department deputies recklessly

18 escalated a manageable situation into a deadly confrontation, resulting in a

19 life cut short, three young children robbed of their father's love and guidance,

20 and a widow permanently scarred by the loss of her partner. Plaintiffs seek

21 compensatory damages from Defendants COUNTY OF LOS ANGELES,

22 BLAKE RUNGE, and BRENDA ALCANTARA for violating their rights

23 under the United States Constitution and for their violations of state law.

24 Plaintiffs seek punitive damages from Defendant BLAKE RUNGE.

25     **JURISDICTION AND VENUE**

26     2.    The Court has jurisdiction over Plaintiffs' claims pursuant to 28

27 U.S.C. §§1331 and 1343(a)(3)–(4) because Plaintiffs assert claims arising

28

1   under the laws of the United States including 42 U.S.C. §1983 and the Fourth

2   and Fourteenth Amendments of the United States Constitution.

3       3.      This Court has supplemental jurisdiction over Plaintiffs' claims

4   arising under state law pursuant to 28 U.S.C. §1367(a) because those claims

5   are so related to the federal claims that they form part of the same case or

6   controversy under Article III of the United States Constitution.

7       4.      Venue in this judicial district is proper pursuant to 28 U.S.C.

8   §1391(b) because all incidents, events, and occurrences giving rise to this

9   action occurred within this district.

10      5.      On August 1, 2023, Plaintiffs served their comprehensive and

11  timely claim for damages on their own behalf and on behalf of ~~the~~ Mr. Byram

12  with the COUNTY OF LOS ANGELES pursuant to applicable sections of the

13  California Government Code.

14      6.      On October 2, 2023, Defendant COUNTY served its letters of

15  rejection of Plaintiffs' claims.

16                          **PARTIES**

17      7.      Everett Byram, a 34-year-old man, was killed on February 10,

18  2023 by Defendant BLAKE RUNGE. At all relevant times, Mr. Byram was

19  an individual residing in Los Angeles.

20      8.      Plaintiff URSULA BYRAM is an individual who was residing in

21  Los Angeles at the time of the incident. URSULA BYRAM is the wife of Mr.

22  Byram; she sues under federal and state law in her individual capacity and as

23  successor-in-interest to Mr. Byram. Plaintiff URSULA BYRAM is Mr.

24  Byram's successor-in-interest pursuant to California Code of Civil Procedure

25  §§377.30 and 377.60. She currently resides in Arkansas.

26      9.      Plaintiff S.B., a child of Mr. Byram, is an individual and was

27  residing in Los Angeles at the time of the incident. Plaintiff S.B. sues under

28  federal and state law in her individual capacity and as successor-in-interest to

1  Mr. Byram. Plaintiff S.B. is Mr. Byram's successor-in-interest pursuant to

2  California Code of Civil Procedure §§377.30 and 377.60. Plaintiff S.B.

3  currently resides in Arkansas.

4      10.    Plaintiff N.B., a child of Mr. Byram, is an individual and was

5  residing in Los Angeles at the time of the incident. Plaintiff N.B. sues under

6  federal and state law in her individual capacity and as successor-in-interest to

7  Mr. Byram. Plaintiff N.B. is Mr. Byram's successor-in-interest pursuant to

8  California Code of Civil Procedure §§377.30 and 377.60. Plaintiff N.B.

9  currently resides in Arkansas.

10     11.    Plaintiff A.B., a child of Mr. Byram, sues under federal and state

11 law in her individual capacity and as successor-in-interest to Mr. Byram.

12 Plaintiff A.B. is Mr. Byram's successor-in-interest pursuant to California

13 Code of Civil Procedure §§377.30 and 377.60. Plaintiff A.B. currently resides

14 in Virginia.

15     12.    Defendant COUNTY OF LOS ANGELES ("COUNTY") is a

16 political subdivision of the State of California that is within this judicial

17 district. Defendant COUNTY is responsible for the actions, omissions,

18 policies, procedures, practices, and customs of its various agents and

19 agencies, including the COUNTY Sheriff's Department ("LASD") and its

20 agents and employees. At all relevant times, Defendant COUNTY was

21 responsible for assuring those actions, omissions, policies, procedures,

22 practices, and customs of ~~the~~ Defendant COUNTY, LASD, and its employees

23 and agents complied with the laws of the United States and the State of

24 California. At all relevant times, Defendant COUNTY was the employer of

25 Deputies <u>RUNGE and ALCANTARA</u>~~BLAKE RUNGE and DOES 1–10~~.

26     13.    Defendant<u>s</u> <u>RUNGE and ALCANTARA</u> ~~DEPUTY RUNGE was~~

27 ~~and~~<u>are</u> ~~is a~~ deput<u>ies</u>~~y~~ with the LASD. At all relevant times, <u>they</u> ~~DEPUTY~~

28 ~~RUNGE was~~<u>were</u> acting under the color of law within the course and scope

4

1 of ~~his~~ their duties as ~~a~~ deput~~y~~ies working for the ~~LASD~~LASD. At all relevant
2 times, ~~DEPUTY RUNGE~~the deputies acted with complete authority and
3 ratification of his principal, Defendant COUNTY.

4 ~~14.    Defendant Deputy DOES 1-8 are deputies with the LASD. At all~~
5 ~~relevant times, DOES 1-8 were acting under the color of law within the~~
6 ~~course and scope of their duties as deputies working for the LASD. At all~~
7 ~~relevant times, DOES 1-8 acted with complete authority and ratification of~~
8 ~~their principal, Defendant COUNTY.~~

9 ~~15.    Defendants DOES 9-10 are managerial, supervisorial, or~~
10 ~~policymaking employees of the Defendant COUNTY who were acting under~~
11 ~~color of law within the course and scope of their duties as supervisorial~~
12 ~~officials for the LASD. Defendant DOES 9-10 were acting with the complete~~
13 ~~authority of their principal, Defendant COUNTY.~~

14 ~~16.    Plaintiffs are ignorant of the true names and capacities of DOES~~
15 ~~1-10 and therefore sue them by such fictitious names. Plaintiffs will amend~~
16 ~~the complaint to allege the true names and capacities of those Defendants~~
17 ~~when their names has been ascertained. Plaintiffs are informed and believe,~~
18 ~~and on that basis allege, that DOES 1-10 are responsible in some manner for~~
19 ~~the occurrences alleged herein and proximately caused Plaintiffs' damages.~~

20 ~~17.~~14.    According to information and belief, Defendants RUNGE
21 and ALCANTARA ~~RUNGE and DOES 1-10~~ were at all relevant times
22 residents of Los Angeles.

23 ~~18.~~15.    Defendants acted at all times mentioned herein as the actual
24 and/or ostensible agents, employees, servants, or representatives of each other
25 and, in doing the activities alleged herein, acted within the scope of their
26 authority as agents and employees, and with the permission and consent of
27 each other.

28

19.16.    At all relevant times, Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein all individual Defendants, including Defendants RUNGE and ALCANTARA RUNGE and DOES 1–10 acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and the Defendant COUNTY.

20.17.    Pursuant to Cal. Govt. Code §815.2(a), Defendant COUNTY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants RUNGE and ALCANTARA, RUNGE and DOES 1–10 as alleged by Plaintiffs' state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendants RUNGE and ALCANTARA RUNGE and DOES 1–10 are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant COUNTY is also liable pursuant to Cal. Govt. Code §815.6.

21.18.    All Defendants who are natural persons, including Defendants RUNGE and ALCANTARA RUNGE and DOES 1–10 are sued individually. Defendant COUNTY is being sued for direct liability under *Monell* and vicarious liability under Plaintiffs' state law claims. ; and pPunitive damages are only being requested as to Defendant RUNGE.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22.19.    On February 10, 2023, at approximately 10:22 p.m., deputies from the Los Angeles County ("COUNTY") Sheriff's Department ("LASD") responded to the residence of URSULA BYRAM and Everett Byram.

**Formatted:** Keep with next

23.20.      Upon arrival, deputies spoke with URSULA BYRAM at the front door, where she informed them that Mr. Byram was having a mental health crisis.

24.21.      Mr. Byram was 34 years old with a history of depression.

25.22.      Deputies entered the residence, entered the backyard and located Mr. Byram in the side yard of the residence, where they found him in possession of a blunt sword.

26.23.      Initially, two deputies aimed non-lethal weapons at Mr. Byram: one wielded a Taser, and the other a 40mm foam baton launcher.

27.24.      Despite knowing that Mr. Byram was suffering from a mental health crisis, the Defendant Officersthe deputies escalated the situation by simultaneously shouting conflicting commands at him, contributing to his disorientation.

28.25.      Shortly thereafter, RUNGE approached, drew his firearm, and pointed it at Mr. Byram, joining the two deputies who had previously aimed non-lethal weapons at Mr. Byram.

29.26.      RUNGE also began shouting orders simultaneously with other officersdeputies, escalating the situation and further disorienting Mr. Byram.

30.27.      One of the officers deputies called for the use of a non-lethal weapon against Mr. Byram.

31.28.      Ignoring the call for the use of non-lethal force, RUNGE discharged his firearm, fatally wounding Mr. Byram.

32.29.      Almost immediately following the gunshot, another officer deputy deployed the 40mm foam baton launcher.

33.30.      At the time of the shooting, Mr. Byram did not pose an immediate threat of death or serious bodily injury to any person, including the involved deputies.

7

1    34.31.    When shot and killed, Mr. Byram was standing several

2    yards away from the deputiesDefendant Officers, who themselves were

3    behind or near a backyard gate, providing them with distance, space, cover,

4    and time.

5    35.32.    Mr. Byram was neither charging nor advancing toward the

6    deputies and was at such a distance that he could not reasonably be perceived

7    as posing an imminent threat of death or severe bodily injury.

8    36.33.    The DefendantsDEPUTY RUNGE failed to provide a

9    verbal warning indicating that deadly force would be used and did not afford

10   Mr. Byram an opportunity to heed any such warning.

11   37.    Following the shooting, the involved deputies neglected to

12   promptly summon medical attention for, or provide medical aid to, Mr.

13   Byram.

14   34.    As a direct and proximate result of the shooting and the

15   subsequent failure to provide timely medical care, Mr. Byram experienced

16   severe pain and suffering, loss of life, and loss of earning capacity.

17   35.    Upon information and belief, the Inclusive Province AKIA

18   ("IPA") is a violent deputy gang involved in criminal activity, similar to other

19   deputy gangs within the Los Angeles County Sheriff's Department, such as

20   the "Executioners" operating in Compton, or the "Bandidos" operating out of

21   East Los Angeles. AKIA is Ku Klux Klan shorthand for "A Klansman I Am."

22   36.    Upon information and belief, deputy members of IPA use

23   violence and unreasonable force against those they are sworn to protect, as

24   well as falsify reports, violating the civil rights of hundreds of citizens of Los

25   Angeles.

26   38.37.    Upon information and belief, at the time of the incident,

27   DEFENDANT RUNGE was a member of the IPA.

28

1    ~~39.~~38.    Following the shooting of Mr. Byram, DEPUTY

2    ALCANTARA~~the LASD deputies unlawfully~~ detained URSULA BYRAM in

3    a patrol vehicle without justification.

4    ~~40.~~39.    URSULA BYRAM was held in this manner for an extended

5    period exceeding 4~~7~~ hours.

6    ~~41.~~40.    During her unlawful detention, URSULA BYRAM was

7    placed in a patrol vehicle along with her son, but her daughter was absent.

8    ~~42.~~41.    The involved deputies deliberately withheld information

9    from URSULA BYRAM concerning the condition and whereabouts of her

10   husband, Mr. Byram, and her daughter.

11   ~~43.~~42.    Due to this lack of communication, URSULA BYRAM was

12   left in a state of distress, uncertain as to the welfare of her daughter and under

13   the impression that she might have been injured or even killed.

14   ~~44.    Approximately one week after the fatal shooting of Mr. Byram,~~

15   ~~deputies from the Los Angeles Sheriff's Department conducted an~~

16   ~~unscheduled welfare check at URSULA BYRAM's residence.~~

17   ~~45.    This welfare check was focused on Mr. Byram, who had already~~

18   ~~tragically lost his life as a result of the deputies' actions, further exacerbating~~

19   ~~URSULA BYRAM's emotional distress.~~

20   ~~46.    This unexpected and unjustifiable encounter subjected URSULA~~

21   ~~BYRAM to additional shock and emotional distress, thereby compounding~~

22   ~~the trauma she had already endured.~~

23                          **FIRST CLAIM FOR RELIEF**

24          **Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

25          (Plaintiffs against DEPUTY RUNGE ~~RUNGE and DOES 1–10~~)

26   ~~47.~~43.    Plaintiffs repeat and reallege each and every allegation in

27   the foregoing paragraphs of this Complaint with the same force and effect as

28   if fully set forth herein.

9

48.44.     Plaintiffs bring this claim for relief in their capacity as the successors-in-interest of Mr. Byram under California Code of Civil Procedure § 377.30.

49.45.     The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by law enforcement officers.

50.46.     DEPUTY RUNGE Defendants RUNGE and DOES 1–10 failed to employ de-escalation tactics, gave conflicting and simultaneous commands, and did not provide a verbal warning for the use of deadly force when it was feasible to do so.

51.47.     DEPUTY RUNGE used excessive force against Mr. Byram by ignoring the his colleague's call for non-lethal force and fatally shooting him, despite the fact that Mr. Byram was did not posenot an immediate threat of death or serious bodily injury to anyone. At the time of the shooting, Mr. Byram was several yards away from the officersdeputies, who had cover and distance between them and Mr. Byram. Furthermore, no verbal warning of deadly force was given, nor was Mr. Byram given an opportunity to heed such a warning. This unjustified and unreasonable use of force violated Mr. Byram's Fourth Amendment rights.

52.48.     As a direct result of DEPUTY RUNGE the Defendants actions, Mr. Byram experienced severe physical and mental pain up to the time of his death.

53.49.     DEPUTY RUNGE Defendants RUNGE and DOES 1–10 acted within the course and scope of their his employment as deputies a deputy for the LASD and acted under color of state law.

1   54.50.       The use of force was excessive and unreasonable, given

2   that Mr. Byram posed no immediate threat, was several yards away, and

3   officers the deputies had cover, time, and space to maneuver.

4   55.51.       The conduct of RUNGE was willful, wanton, malicious,

5   and done with reckless disregard for Mr. Byram's rights and safety,

6   warranting the imposition of exemplary and punitive damages.

7   56.52.       No serious or violent crime was being responded to, there

8   was no report that Mr. Byram had a firearm, and less intrusive alternatives

9   were available.

10  57.53.       Further, the DEPUTY RUNGE Defendants knew that Mr.

11  Byram was suffering from a mental health crisis, but they he did not take that

12  into account when they he chose to escalate the situation, shout

13  simultaneously with other deputies, and shoot him Mr. Byram without

14  warning.

15  58.    DEPUTY RUNGE is directly liable for Mr. Byram's injuries,

16  and DOES 1–8 are liable for Mr. Byram's injuries either because they were

17  integral participants in the excessive force and because they failed to

18  intervene to prevent DEPUTY RUNGE's actions. DOES 9–10 are liable

19  under for exhibiting deliberate indifference to the known propensity of

20  DEPUTY RUNGE to use excessive force. Despite being aware of DEPUTY

21  RUNGE's history of excessive force and violent behavior, DOES 9–10 failed

22  to take appropriate supervisory action or implement effective preventative

23  measures. Their failure to properly supervise, train, or discipline DEPUTY

24  RUNGE directly and proximately caused the violation of the Plaintiff's

25  constitutional rights during the incident in question.

26  54.

27  59.55.       Plaintiffs seek survival damages, including but not limited

28  to pre-death pain and suffering, loss of life, loss of opportunity of life, and

11

loss of enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees

and costs under this claim.

60.56.     The conduct of DEPUTY RUNGE RUNGE was malicious,

wanton, oppressive, and carried out with conscious disregard for the rights of

both the Plaintiffs and the Mr. Byram. DEPUTY RUNGE RUNGE

intentionally deprived and violated their constitutional rights, or acted with

reckless disregard for those rights. Upon information and belief, DEPUTY

RUNGE is a member of the IPA, a violent deputy gang that encourages the

use of excessive force against citizens. As such, this conduct entitles the

Plaintiff to an award of exemplary and punitive damages from DEPUTY

RUNGE.RUNGE. No action for punitive damages is brought against DOES

1–10 or the COUNTY.

**SECOND CLAIM FOR RELIEF**

**Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)**

**(Plaintiffs against RUNGE and DOES 1–8)**

61.     Plaintiffs repeat and reallege each and every allegation in the

foregoing paragraphs of this Complaint with the same force and effect as if

fully set forth herein.

62.     Plaintiffs bring this claim for relief in their capacity as the

successors in interest of Mr. Byram under California Code of Civil Procedure

§ 377.30. This claim for relief arose in Mr. Byram's favor, and Mr. Byram

would have been the plaintiff with respect to this cause of action had he lived.

63.     Defendants RUNGE and DOES 1–10 acted within the course and

scope of their employment as deputies for the Defendant COUNTY and

LASD and acted under color of state law.

64.     The denial of medical care by Defendants deprived Mr. Byram of

his right to be secure in his person against unreasonable searches and seizures

12

1  guaranteed by the Fourth Amendment to the U.S. Constitution, as applied to
2  the states by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.
3       65.   Defendants failed to provide timely medical care to Mr. Byram
4  and failed to timely summon medical care for Mr. Byram. Defendants' delay
5  and/or denial of medical care was a cause of Mr. Byram's pain, suffering, and
6  death.
7       66.   As a direct result of the aforesaid acts and omissions of
8  Defendants, Mr. Byram suffered great physical and mental injury, fear, and
9  emotional distress leading to his death and the loss of enjoyment of life.
10      67.   Plaintiffs seek survival damages, including but not limited to pre-
11 death pain and suffering and loss of enjoyment of life, under this claim.
12 Plaintiffs also seek attorneys' fees and costs under this claim.

13                           **~~THIRD~~SECOND CLAIM FOR RELIEF**

14       **Fourteenth Amendment—Denial of Familial Relationship (42 U.S.C. § 1983)**

15          (Plaintiffs against DEPUTY RUNGE~~RUNGE and DOES 1–10~~)

16      ~~68.~~57.      Plaintiffs repeat and reallege each and every allegation in

17 the foregoing paragraphs of this Complaint with the same force and effect as

18 if fully set forth herein.

19      ~~69.~~58.      URSULA BYRAM had a cognizable interest under the Due

20 Process Clause of the Fourteenth Amendment of the United States

21 Constitution to be free from state actions that deprive her of life, liberty, or

22 property in such a manner as to shock the conscience, including but not

23 limited to unwarranted state interference in URSULA BYRAM's familial

24 relationship with her husband, Mr. Byram.

25      ~~70.~~59.      S.B., by and through guardian ad litem TIMOTHY

26 BYRAM, had a cognizable interest under the Due Process Clause of the

27 Fourteenth Amendment of the United States Constitution to be free from state

28 actions that deprive them of life, liberty, or property in such a manner as to

                                           13

1  shock the conscience, including but not limited to unwarranted state
2  interference in S.B.'s familial relationship with their father, Mr. Byram.
3      71. 60.      N.B., by and through guardian ad litem TIMOTHY
4  BYRAM, had a cognizable interest under the Due Process Clause of the
5  Fourteenth Amendment of the United States Constitution to be free from state
6  actions that deprive them of life, liberty, or property in such a manner as to
7  shock the conscience, including but not limited to unwarranted state
8  interference in N.B.'s familial relationship with their father, Mr. Byram.
9      72. 61.      A.B., by and through guardian ad litem KAITLYN
10  HUMENCHUK, had a cognizable interest under the Due Process Clause of
11  the Fourteenth Amendment of the United States Constitution to be free from
12  state actions that deprive them of life, liberty, or property in such a manner as
13  to shock the conscience, including but not limited to unwarranted state
14  interference in A.B.'s familial relationship with their father, Mr. Byram.
15      73. 62.      Defendant DEPUTY RUNGE s RUNGE and DOES 1-10
16  acted within the course and scope of their his employment as deputies for the
17  Defendant COUNTY and LASD and acted under color of state law.
18      74. 63.      The aforementioned actions of DEPUTY
19  RUNGE Defendants RUNGE and DOES 1-10 shock the conscience, in that
20  they he acted with deliberate indifference to the constitutional rights of Mr.
21  Byram and Plaintiffs, and with a purpose to harm unrelated to any legitimate
22  law enforcement objective.
23      75. 64.      As a direct and proximate result of these actions, Mr.
24  Byram experienced pain and suffering and eventually died. Defendant
25  DEPUTY RUNGE s RUNGE and DOES 1-10 thus violated the substantive
26  due process rights of Plaintiffs to be free from unwarranted interference with
27  their familial relationship with Mr. Byram.
28

76.65.     As a direct and proximate cause of the acts of DEPUTY RUNGE Defendants RUNGE and DOES 1–10, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Byram, and will continue to be so deprived for the remainder of their natural lives.

77.   DEPUTY RUNGE is directly liable for Mr. Byram's injuries., and DOES 1–8 are liable for Mr. Byram's injuries either because they were integral participants in the excessive force and because they failed to intervene to prevent DEPUTY RUNGE's actions. DOES 9–10 are liable under for exhibiting deliberate indifference to the known propensity of DEPUTY RUNGE to use excessive force. Despite being aware of DEPUTY RUNGE's history of excessive force and violent behavior, DOES 9–10 failed to take appropriate supervisory action or implement effective preventative measures. Their failure to properly supervise, train, or discipline DEPUTY RUNGE directly and proximately caused the violation of the Plaintiff's constitutional rights during the incident in question.

66.

78.67.     Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seek both survival and wrongful death damages for the violation of their rights. Plaintiffs also seek attorney's fees and costs under this claim.

79.68.     The conduct of DEPUTY RUNGE RUNGE was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiffs and the Mr. Byram. DEPUTY RUNGE RUNGE intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. Upon information and belief, DEPUTY RUNGE is a member of the IPA, a violent deputy gang that encourages the use of excessive force against citizens. As such, this conduct entitles the

15

1  Plaintiff to an award of exemplary and punitive damages from DEPUTY
2  RUNGERUNGE. No action for punitive damages is brought against DOES 1
3  10 or the COUNTY..
4  FOURTH THIRD CLAIM FOR RELIEF
5  Fourth Amendment—Unlawful Detention (42 U.S.C. § 1983)
6  (URSULA BYRAM against BRENDA ALCANTARARUNGE and DOES 1
7  10)
8  80.69.    Plaintiffs repeat and reallege each and every allegation in
9  the foregoing paragraphs of this Complaint with the same force and effect as
10  if fully set forth herein.
11  81.70.    The Fourth Amendment to the United States Constitution
12  guarantees all persons the right to be free from unreasonable searches and
13  seizures. Statute 42 U.S.C. § 1983 provides a right of action for conduct
14  which violates this right. BRENDA ALCANTARA DOES 1 10 violated
15  URSULA BYRAM's rights to be free from unreasonable searches and
16  seizures, which is guaranteed to her by the Fourth Amendment to the United
17  States Constitution and applied to state actors by the Fourteenth Amendment.
18  82.71.    At all relevant times, BRENDA ALCANTARA DOES 1 10
19  acted under the color of state law and within the course and scope of their
20  duties. BRENDA ALCANTARA DOES 1 10 had no reasonable justification
21  to detain URSULA BYRAM for an extended period exceeding 7 4 hours.
22  83.72.    As a direct result of the unlawful detention, URSULA
23  BYRAM was placed in a situation causing her to experience severe emotional
24  distress.
25  84.73.    As a result of their her misconduct, BRENDA
26  ALCANTARA DOES 1 10 areis liable for URSULA BYRAM's emotional
27  distress for wrongfully detaining her and failing to inform her of the
28

16

1  condition and whereabouts of her family members while in ~~their~~ her custody,

2  control, and care.

3      ~~85.~~74.      URSULA BYRAM brings this claim against BRENDA

4  ALCANTARA~~Defendants~~, seeking compensatory damages, including pain

5  and suffering, emotional distress, and humiliation. She also seeks attorney's

6  fees under this claim, pursuant to 42 U.S.C. § 1988.

7                      **~~FIFTH~~ FOURTH CLAIM FOR RELIEF**

8  **Municipal Liability: Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

9                     (Plaintiffs against the COUNTY)

10      ~~86.~~75.      Plaintiffs repeat and reallege each and every allegation in

11  the foregoing paragraphs of this Complaint with the same force and effect as

12  if fully set forth herein.

13      ~~87.~~76.      The actions of DEPUTY RUNGE ~~and DOES 1–10~~, which

14  deprived Mr. Byram and Plaintiffs of their constitutional rights under the

15  Fourth and Fourteenth Amendments, were carried out in accordance with a

16  widespread and longstanding practice or custom of Defendant COUNTY.

17  This custom condones, ratifies, and acquiesces in the excessive use of deadly

18  force by Sheriff's deputies. Due to this ingrained practice, DEPUTY RUNGE

19  ~~Defendants RUNGE and DOES 1–10 have~~has not been disciplined,

20  reprimanded, retrained, suspended, or faced any administrative or adverse

21  employment consequences in connection with Mr. Byram's death. This

22  practice or custom by COUNTY serves as the moving force behind the

23  deprivation of the Plaintiffs' rights and Mr. Byram's death.

24      ~~88.~~77.      Defendants COUNTY, together with other COUNTY final

25  policymakers and supervisors, maintained the following unconstitutional

26  customs, practices, and policies:

27

28

a. The use of excessive force, including excessive deadly force by LASD deputies when there is no need for deadly force, or where there is no imminent threat to deputies.

b. The COUNTY's failure to provide adequate training regarding the use of force, and the use of deadly force.

c. The COUNTY's employing and retaining as Sheriff's deputies and individuals whom the COUNTY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive deadly force.

d. The use of excessive force by LASD deputies against individuals suffering from a mental health crisis, when there are reasonable alternatives.

e. The COUNTY's inadequately supervisingsupervision, training, controlling, assigning, and disciplining Deputy Sheriffs, contributing to situations like that encountered on February 10, 2023, where lack of proper direction and control led to the escalation of a situation involving a mentally distressed individual and resulted in fatal consequences.

f. The COUNTY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by County deputies, as demonstrated by the incident on February 10, 2023, where conflicting orders and the use of lethal force against an individual suffering from a mental health crisis highlight systemic failures in handling such situations.

g. The COUNTY's failures to adequately discipline County deputies and for categories of misconduct as demonstrated on February 10, 2023, where a call for non-lethal force was ignored, leading to the

18

use of deadly force against a mentally distressed individual
without adequate warning or opportunity for the individual to
comply.

h. The COUNTY's custom and practice of concluding that acts of
excessive use of force are "within policy" including use of deadly
force instances such as the one on February 10, 2023, where
lethal force was used against an individual in a mental health
crisis who did not pose an immediate threat of death or serious
bodily injury to any person.

i. Even when an incident such as the one on February 10, 2023 is
brought to light, where the use of force was excessive and fatal
against a mentally distressed individual, the COUNTY has
refused to discipline, terminate, or retrain the deputies involved.

j. The COUNTY's custom and practice of accommodating, or
facilitating a "code of silence," pursuant to which sheriff's
deputies do not report other deputies' errors, misconduct, or
crimes, as potentially indicated by the lack of immediate
corrective actions or reporting regarding the incident on February
10, 2023.

k. The COUNTY's maintaining a policy of inaction and an attitude
of indifference towards soaring numbers of instances of excessive
force by sheriff's deputies, as evidenced by the fatal incident on
February 10, 2023, where a lack of discipline, retraining,
investigation, termination, and recommendation for criminal
prosecution perpetuates a cycle of violence, especially against
vulnerable populations.

l. The COUNTY's custom and practice of providing inadequate
training regarding handling situations with mentally ill persons

19

and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158, as exemplified by the incident on February 10, 2023, where the deputies were ill-prepared to de-escalate a situation involving an individual suffering from a mental health crisis, leading to fatal consequences.

m. The COUNTY's tolerance of self-organized gangs of deputies engaged in illegal acts.

n. Tolerating and failing to adequately investigate and discipline unconstitutional and unlawful deputy activity, including the proliferation of deputy "gangs" within the COUNTY.  As far back as 1971, a secret subgroup called the "Little Devils" existed at the East Los Angeles station; the Citizens' Commission on Jail Violence found a long history of deputy cliques contributing to acts of insubordination, aggressive behavior, and excessive force.

o. Employing and retaining as deputies, individuals such as DEFENDANT RUNGE, who the COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

p. The LASD has a longstanding history involving unauthorized gang-like deputy cliques, violent cliques, tattoo groups, station groups, secret deputy sub-groups, and secret societies, whose membership is based on ethnicity, involvement in excessive uses of force, intimidation of fellow deputies, and harassment and even shootings of civilians. Many of these groups are known for their identical, hidden, sinister tattoos, and have been the subjects of investigations, lawsuits and settlements involving excessive uses of force, violence, and dishonesty.

20

1     89.78.     Defendants COUNTY~~,  and DEPUTY RUNGE, along with~~

2   ~~DOES 1 -10, together~~acting through ~~with~~ various ~~other~~ COUNTY officials,

3   and final policy makers including the Sheriff of the Los Angeles Sheriff's

4   department, had either actual or constructive knowledge of the

5   unconstitutional policies, practices and customs alleged in the paragraphs

6   above. ~~The~~ Defendant~~s~~ COUNTY ~~and DEPUTY RUNGE, along with DOES~~

7   ~~1 -10,~~ acted with deliberate indifference to the foreseeable effects and

8   consequences of these customs and policies with respect to the constitutional

9   rights of Mr. Byram, Plaintiffs, and other individuals similarly situated.

10     90.79.     The following are only a few examples of constitutional

11  violations committed by Sheriff's deputies working for Defendant County.

12  These examples demonstrate the unconstitutional customs and practices of

13  using excessive force against unarmed civilians, ratifying that use of deadly

14  force, and/or finding the use of deadly force to be justified or "within policy,"

15  as exemplified in the incident on February 10, 2023, involving Mr. Byram

16  during a mental health crisis. Despite knowledge of Mr. Byram's mental

17  health condition and initial use of non-lethal force options, DEPUTY RUNGE

18  escalated the situation by discharging his firearm, fatally wounding Mr.

19  Byram, who at that time did not pose an immediate threat of death or serious

20  bodily injury to any person, including the involved deputies. This incident

21  reflects the alleged unconstitutional customs and practices within the

22  Defendant COUNTY.

23       a.  In *Mitchell v. County of Los Angeles*, et al., case number CV 03-

24          8421 RJK (Awx), an LASD Deputy killed an unarmed civilian,

25          Robert Mitchell, shooting him in the back six times. At trial, the

26          COUNTY argued that use of deadly force by the Deputy was

27          reasonable; the jury found otherwise, returning a $4,000,000

28          verdict. The Deputy was not disciplined or retrained for his use of

1    deadly force, and the COUNTY found that the shooting was

2    justified and did not violate any COUNTY policy.

3  b. In *Gutierrez, et al. v. County of Los Angeles*, et al., case number

4    CV 10-7608 PSG (AJWx), a jury found that an LASD Deputy

5    used excessive and unreasonable force when he shot and killed

6    Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000.

7    The Deputy was not disciplined or retrained for his use of deadly

8    force, and the COUNTY found that the shooting was justified and

9    did not violate any COUNTY policy.

10 c. On August 8, 2009, in the City of Carson, an LASD Deputy shot

11    and killed Ezequiel Jacobo, who was unarmed. Police reports

12    confirmed that Mr. Jacobo was unarmed. The Deputy was not

13    disciplined or retrained for shooting Mr. Jacobo. The COUNTY

14    found that the shooting was justified and did not violate any

15    COUNTY policy. (*Jacobo, et al. v. County of Los Angeles, et al.*,

16    case number CV-11-7212 GW (SSx)).

17 d. In 2011, in the city of Norwalk, LASD deputies shot Emiliano

18    Amaya five times in the back, killing him. In 2017, a jury

19    awarded more than $3 million to the plaintiffs. The COUNTY

20    found that the shooting was justified and did not violate any

21    COUNTY policy. (*Marian Amaya, et al., v. County of Los

22    Angeles, et al.*, case number VC062384)

23 e. On January 4, 2012, an LASD Deputy killed Ms. Jazmyne Ha

24    Eng, a 40-year-old who sought psychiatric help at the Asian

25    Pacific Family Center in Rosemead. Ms. Eng, who suffered from

26    schizophrenia, was holding a small ball-peen hammer when

27    Deputy Vance shot her. The shooting occurred within 12 seconds

28

1    of the deputies making contact with Ms. Eng. In 2014, the
2    COUNTY settled the lawsuit for $1.8 million.

3    f.   On February 1, 2013, in the City of Walnut, an LASD Deputy
4         shot Michael Lobrono, who was unarmed. Police reports
5         confirmed that Mr. Lobrono was unarmed. The Deputy was not
6         disciplined or retrained for his use of deadly force, and the
7         COUNTY found that the shooting was justified and did not
8         violate any COUNTY policy. In October 2014, the COUNTY
9         settled the lawsuit for $335,000. (Lobrono, et al. v. County of Los
10        Angeles, et al., case number CV 13-03838).

11   g.   On April 20, 2013, in the City of Cudahy, an LASD Deputy shot
12        and killed Chalino Sanchez, who was unarmed and riding his
13        bicycle at the time of the shooting. Police reports confirmed that
14        Mr. Sanchez was unarmed. The Deputy was not disciplined or
15        retrained for his use of deadly force, and the COUNTY found that
16        the shooting was justified and did not violate any COUNTY
17        policy. (*Sanchez v. County of Los Angeles, et al.*, case number
18        CV 13-03836).

19   h.   On May 11, 2013, in the City of Cudahy, an LASD Deputy shot
20        and killed Rigoberto Arceo, who was unarmed and had his hands
21        up at the time of the shooting. Police reports confirmed that Mr.
22        Arceo was unarmed. The Deputy was not disciplined or retrained
23        for his use of deadly force, and the COUNTY found that the
24        shooting was justified and did not violate any COUNTY policy.
25        (*N.K.A., et al. v. County of Los Angeles, et al.*, case number CV
26        13-05507).

27   i.   On May 23, 2013, in the City of Compton, LASD Deputies shot
28        and killed Rashawn Brown, who, according to percipient

23

1   witnesses, was unarmed at the time he was shot. The Deputies

2   were not disciplined or retrained for their use of deadly force, and

3   the COUNTY found that the shooting was justified and did not

4   violate any COUNTY policy. (*D.A.B., et al. v. County of Los*

5   *Angeles, et al.*, case number CV 14-05207 FMO (ASx)).

6   j.  On August 1, 2014, in the city of Pico Rivera, LASD Deputies

7   shot and killed ~~54-year old~~54-year-old man, Frank Mendoza in

8   broad daylight in the doorway of Mr. Mendoza's home. LASD

9   deputies allegedly mistook him for a parolee-at-large. Mendoza

10   was unarmed at the time he was shot. In May 2018, the County

11   settled the case for $14.35 million. The COUNTY found that the

12   deputies were justified in their use of deadly force.

13   k.  In 2015, LASD deputies shot and killed an unarmed man. The

14   Board of Supervisors approved a $1.5 million legal settlement for

15   the family of the young father that was shot and killed by a

16   Sheriff's deputy in Cerritos in 2015 when he allegedly used his

17   car to try and run over the deputy.

18   l.  In *Martinez v. County of Los Angeles, et al.*, case number 2:14-

19   cv-05456-DSF-MAN, an LASD Deputy discharged his weapon at

20   a moving vehicle, striking Gonzalo Martinez, who was unarmed.

21   Deputy Gonzalez was not disciplined or retrained for his use of

22   deadly force, and the COUNTY found that the shooting was

23   justified and did not violate any COUNTY policy. In 2016, the

24   Board of Supervisors approved a settlement of the lawsuit for

25   $2,800,000.

26   m. On March 8, 2017, an LASD deputy shot and killed Dennis Todd

27   Rogers, an African-American man, who was 41 years old~~,~~ and

28   was having a mental health crisis outside a 24 Hour Fitness in

24

1    Ladera Heights. His family filed a lawsuit against the LASD,

2    *Dennis Todd Rogers et al v. County of Los Angeles, et al*, case

3    number 2:2017cv05236, alleging that the deputies reacted

4    improperly by shooting to kill, and accused the COUNTY of

5    failing to adequately train and supervise deputies to deal with

6    people who suffer from mental illness.

7      n.  On March 31, 2021, LASD shot and left paralyzed Isaias

8    Cervantes, a 25-year-old man who suffered from autism who

9    functioned as a ~~six-year old~~six-year-old. On the day of the

10    incident when he got shot by LASD deputies, he was

11    experiencing a mental health crisis and having problems with his

12    family. As a result of the shooting, the Cervantes family filed an

13    action against the LASD alleging that the deputies who responded

14    to the call involving Cervantes deliberately incited a crisis

15    irrationally panicked, then "recklessly shot their way out of an

16    imagined danger." It was also alleged that deputies shot

17    Cervantes after only 83 seconds had passed after making contact

18    with him.

19      o.  On March 14, 2021, LASD deputies shot and killed David Ordaz

20    Jr., who was 34 years old and a father of three, after LASD

21    deputies responded to call for help where Ordaz was experiencing

22    a mental health emergency in East Los Angeles. The family of

23    Ordaz alleged that the LASD deputies shot at Ordaz after he

24    turned away. The coroner's report supported that Ordaz was

25    struck in the back. Following the shooting, the County Sheriff

26    commented, that he had "grave concerns" regarding this deputy-

27    involved shooting.

28

p. On February 15, 2018, the LASD Civilian Oversight Commission
issued a report calling for more mental health evaluation teams to
respond to mental health emergencies. The report is available at
http://file.lacounty.gov/SDSInter/bos/supdocs/1033706_Item4.Me
tFinalReport.pdf. At pages 11 and 12 of the report, the LASD
Oversight Commission cited its concerns over the County's
payouts for lawsuits stemming from the excessive use of force
and cited concerns regarding the excessive use of force by LASD
deputies on people with mental illness or disabilities.

91.80.     The aforementioned cases establish a pattern of excessive
use of force by Sheriff's deputies, and the unconstitutional custom, and
practice of the COUNTY in ratifying the excessive use of force by Sheriff's
deputies, as evidenced by the number of prior cases involving the use of
deadly force by deputies working for the LASD.

92.81.     The County's longstanding practice or custom caused the
deprivation of Mr. Byram and Plaintiffs' rights by DEPUTY RUNGE and
DOES 1–10; that is, the County's official policy condoning excessive force
against mentally ill people is so closely related to the deprivation of Mr.
Byram and Plaintiffs' rights in this case as to be the moving force that caused
Mr. Byram's death.

93.82.     The COUNTY had either actual or constructive knowledge
of the unconstitutional policies, practices and customs alleged in the
paragraphs above.

94.83.     The COUNTY also acted with deliberate indifference to the
foreseeable effects and consequences of these policies with respect to the
constitutional rights of Mr. Byram, Plaintiffs, and other individuals similarly
situated.

26

PLAINTIFFS' COMPLAINT FOR DAMAGESAMENDED COMPLAINT

1       95.84.       By reason of the aforementioned acts and omissions, the

2   Plaintiffs have suffered the loss of the love, companionship, affection,

3   comfort, care, society, training, guidance, and moral support of Mr. Byram.

4   The aforementioned acts and omissions also caused Mr. Byram's pain and

5   suffering, loss of enjoyment of life, and death.

6       96.85.      Accordingly, Defendant COUNTY is liable to Plaintiffs for

7   compensatory damages under 42 U.S.C. § 1983.

8       97.86.      Plaintiffs bring their claim individually and as successors-

9   in-interest to Mr. Byram and seek wrongful death damages under this claim.

10   Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. §

11   1988(b).

12               ~~SIXTH~~ FIFTH **CLAIM FOR RELIEF**

13        **Municipal Liability: Failure to Train (42 U.S.C. § 1983)**

14              (Plaintiffs against COUNTY)

15       98.87.      Plaintiffs repeat and reallege each and every allegation in

16   the foregoing paragraphs of this Complaint with the same force and effect as

17   if fully set forth herein.

18       99.88.      At all times herein mentioned, DEPUTY RUNGE ~~and~~

19   ~~DOES 1–10,~~ acted under color of law and ~~the acts and omissions of the~~

20   ~~DOES 1–10~~ deprived Mr. Byram and Plaintiffs of their Constitutional rights

21   under the United States Constitution. The training policies of Defendant

22   COUNTY were not adequate to properly train LASD deputies to handle the

23   usual and recurring situations in their interactions with residents, including

24   responding to calls involving mentally ill people, responding to calls and

25   interacting with people who display symptoms of mental illness. The training

26   policies of Defendant COUNTY were not adequate to properly train LASD

27   deputies with regard to the use of deadly force or ~~,~~ the permissible use of

28

1   deadly weapons, and protecting the rights of persons to medical care during
2   in the course of detaining individuals..

3   100.89.    The unjustified and excessive use of deadly force against
4   Mr. Byram by DEPUTY RUNGE and DOES 1–10, was a result of the
5   negligent training by Defendant COUNTY who failed to train LASD
6   deputies, such as DEPUTY RUNGE , and DOES 1–10, as to proper police
7   tactics, proper use of force, proper use of deadly force, and proper police
8   tactics in the use of force with respect to mentally ill individuals. Defendant
9   COUNTY was responsible for the training of LASD deputies to ensure that
10  the actions, procedures, and practices of DEPUTY RUNGE and DOES 1–10,
11  complied with Peace Officer Standards and Training ("POST") training
12  standards regarding proper police tactics, proper use of force, and proper use
13  of deadly force.

14  101.90.    Defendant COUNTY negligently failed to train COUNTY
15  Sheriff's deputies, such as DEPUTY RUNGE, and DOES 1–10, to comply
16  with POST training standards regarding proper police tactics, proper use of
17  force, proper use of deadly force, and proper police tactics when dealing with
18  individuals suffering from a mental health crisis. POST was established by
19  the California Legislature in 1959 to set minimum training standards for
20  California Sheriff's deputies. The training policies of Defendant COUNTY
21  were not adequate to train its Sheriff's deputies to handle the usual and
22  recurring situations with residents, suspects, and  and pretrial detainees that
23  with whom DEPUTY RUNGE DOES 1–10 havehas contact with.

24  102.91.    The training policies of Defendant COUNTY were deficient
25  in the following:

26          a. Defendant COUNTY failed to adequately train Los Angeles
27             County Sheriff's deputies, such as DEPUTY RUNGE and DOES
28             1–10, in de-escalating interactions with residents or individuals

28

1    experiencing a mental health crisis. Instead of de-escalation,
2    DEPUTY RUNGE ~~and DOES 1–10~~ escalated their interactions
3    with Mr. Byram, who was experiencing a mental health crisis.
4    b. Defendant COUNTY failed to properly train Los Angeles County
5    Sheriff's deputies, like DEPUTY RUNGE ~~and DOES 1–10~~, to
6    manage their fear to prevent it from becoming unreasonable and
7    not objectively justifiable. This lack of training led to the use of
8    deadly force by DEPUTY RUNGE ~~and DOES 1–10~~, causing the
9    death of residents or individuals in a mental health crisis, such as
10    Mr. Byram.
11    c. Defendant COUNTY failed to properly train COUNTY Sheriff's
12    deputies, such as DEPUTY RUNGE ~~and DOES 1–10~~, in proper
13    police tactics, such as situational awareness, to prevent the use of
14    negligent tactics, which is what DEPUTY RUNGE ~~and DOES 1–~~
15    ~~10~~ did in this case. Because of this lack of proper training by
16    Defendant COUNTY, DEPUTY RUNGE ~~and DOES 1–10~~ did not
17    use proper police tactics in handling their contact and interaction
18    with Mr. Byram. DEPUTY RUNGE ~~and DOES 1–10~~ used
19    defective police tactics, including ~~the~~ a lack of situational
20    awareness. These training failures by Defendant COUNTY, and
21    defective tactics by DEPUTY RUNGE ~~and DOES 1–10,~~ resulted
22    in the death of Mr. Byram.
23    d. Defendant COUNTY failed to properly train Sheriff's deputies,
24    such as DEPUTY RUNGE ~~and DOES 1–10~~, on the importance of
25    effective communication between ~~officers~~ deputies prior to using
26    any type of force.
27    e. Because of the lack of proper training by COUNTY, DEPUTY
28    RUNGE ~~and DOES 1–10~~ did not use effective communication

29

1    prior to and during the use of force against Mr. Byram. This

2    ineffective communication by DEPUTY RUNGE and DOES 1

3    10, prior to and during the incident, resulted in the death of Mr.

4    Byram, causing constitutional injuries to Mr. Byram and

5    PLAINTIFFSlaintiffs.

6    103.92.    The failure of Defendant COUNTY to provide proper

7    training to its deputy Sheriffs resulted in the deprivation of Plaintiffs' rights

8    by DEPUTY RUNGE and DOES 1-10. Defendant COUNTY's failure to train

9    is so closely related to the deprivation of the Plaintiffs' rights as to be the

10   moving force that caused the ultimate injuries to Plaintiffs.

11   104.93.    The training policies of the County were not adequate to

12   train its deputy Sheriffs to handle the usual and recurring situations they must

13   deal with, including situations involving persons suffering from a mental

14   health crisis, such as Mr. Byram. Defendant County was deliberately

15   indifferent to the obvious consequences of its failure to properly train its

16   deputy Sheriffs.

17   105.94.    The failure of the County to provide adequate training to its

18   deputy Sheriffs caused the deprivation of Plaintiffs' rights by DEPUTY

19   RUNGE and DOES 1-10; the County's failure to train is so closely related to

20   the deprivation of Mr. Byram and Plaintiffs' rights as to be the moving force

21   that caused the ultimate constitutional injuries to Plaintiffs.

22   106.95.    By reason of the aforementioned acts and omissions of

23   Defendant COUNTY, Plaintiffs have suffered the loss of the love,

24   companionship, affection, comfort, care, society, training, guidance, and

25   moral support of Mr. Byram. The aforementioned acts and omissions also

26   caused Mr. Byram's pain and suffering, loss of enjoyment of life, and death.

27   107.96.    Defendant COUNTY is liable to the Plaintiffs for

28   compensatory damages under 42 U.S.C. § 1983. Plaintiffs bring these claims

1   as Mr. Byram's successors-in-interest as defined in Section 377.11 of the
2   California Code of Civil Procedure and seek survival damages for the
3   violation of Mr. Byram's rights. Plaintiffs also seek reasonable attorneys'
4   fees pursuant to 28 U.S.C. § 1988, costs, and interest.

5                      ~~SEVENTH~~ SIXTH **CLAIM FOR RELIEF**
6                **Municipal Liability: Ratification (42 U.S.C. § 1983)**
7                          (Plaintiffs against COUNTY)

8       ~~108.~~97.    Plaintiffs repeat and reallege each and every allegation in
9   the foregoing paragraphs of this Complaint with the same force and effect as
10  if fully set forth herein.

11      ~~109.~~98.    At all relevant times~~,~~. Defendants RUNGE ~~and DOES 1–10~~
12  acted under the color of state law and within the course and scope of his~~their~~
13  employment with Defendant COUNTY.

14      ~~110.~~99.    The acts of Defendant RUNGE ~~and DOES 1–10~~ deprived
15  Mr. Byram and Plaintiffs of their particular rights under the United States
16  Constitution, including when he ~~they~~ intentionally shot Mr. Byram without
17  justification, causing his death~~,~~. and depri_ving_~~ved~~ Plaintiffs of their familial
18  relationship Mr. Byram.

19      ~~111.~~100.   Upon information and belief, a final policymaker, acting
20  under color of law, has a history of ratifying the unconstitutional and
21  unreasonable uses of force, including deadly force.

22      ~~112.~~101.   Upon information and belief, a final policymaker for the
23  Defendant COUNTY, acting under color of law, who had final policymaking
24  authority concerning the acts of Defendants RUNGE ~~and DOES 1–10~~ and the
25  bases for them, ratified the acts and omissions of Defendants RUNGE ~~and~~
26  ~~DOES 1–10~~ and the bases for them. Upon information and belief, the final
27  policymaker knew of and specifically approved of ~~Defendants'~~ DEPUTY
28  RUNGE's acts, specifically approving his~~the LASD Deputies'~~ unlawful

1  detention of Mr. Byram, and the excessive and unreasonable shooting of Mr.

2  Byram when he was not an immediate threat of death or serious bodily injury.

3      113.102.   The official policies with respect to the incident are that

4  LASD Deputies are not to use deadly force against an individual unless the

5  individual poses an immediate risk of death or serious bodily injury to the

6  Deputies or others. DEPUTY RUNGEThe LASD Deputies' actions deviated

7  from these official policies because Mr. Byram did not pose an immediate

8  threat of death or serious bodily injury to the involved Deputies or anyone

9  else.

10     114.103.   Upon information and belief, a final policymaker(s) has

11 determined (or will determine) that the acts of Defendants RUNGE and

12 DOES 1–10 were "within policy."

13     115.104.   By reason of the aforementioned acts and omissions,

14 Defendant COUNTY is liable to Plaintiffs for compensatory damages under

15 42 U.S.C. §1983.

16     116.105.   Plaintiffs bring this claim individually and as successors-in-

17 interest to Mr. Byram and seeks both survival and wrongful death damages.

18 Plaintiffs also seeks reasonable attorneys' fees and costs under this claim.

19                **EIGHTH SEVENTH CLAIM FOR RELIEF**

20            **Americans with Disabilities Act (42 U.S.C. § 12132)**

21            (Plaintiffs against all DefendantsRUNGE and COUNTY)

22     117.106.   Plaintiffs repeat and reallege each and every allegation in

23 the foregoing paragraphs of this Complaint with the same force and effect as

24 if fully set forth herein.

25     118.107.   Mr. Byram was a "qualified individual," with a mental

26 impairment, specifically depressive disorder, that substantially limited his

27 ability to care for himself and control his mental health condition as defined

28 under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 (2).

119.108.   Los Angeles County is a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), as explained by regulations under these laws.

120.109.   Under the ADA, the COUNTY is mandated to develop effective procedures for interactions with individuals with mental disabilities and to ensure the protection of their personal and civil rights.

121.110.   Congress enacted the ADA with the finding that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. §12101(a)(2).

122.111.   The COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. §12182 (a).

123.112.   The COUNTY and, DEPUTY RUNGE , and DOES 1-10 violated the ADA by: (1) failing to properly train its deputies to respond and interact peacefully with individuals with mental impairmentshealth impairments suffering from mental health crises, such as Mr. Byram; and (2) failing to follow procedures for de-escalation and non-lethal force in interactions with Mr. Byram, who was experiencing a mental health crisis.

124.113.   As a result of the acts and omissions of the DefendantsDEPUTY RUNGE and the COUNTY, Mr. Byram suffered damages, including loss of life and pain and suffering.

125.114.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seeks both survival and wrongful death damages. Plaintiffs also seeks reasonable attorneys' fees and costs under this claim.

**NINTH EIGHTH CLAIM FOR RELIEF**

**Battery**

(Plaintiffs against RUNGE and COUNTYall Defendants)

126.115.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

127.116.    Defendants DEPUTY RUNGE and DOES 1-10 acted within the course and scope of their his employment as deputies a deputy for the Defendant COUNTY and LASD and acted under color of state law.

128.117.    DEPUTY RUNGE Defendant RUNGE intentionally shot Mr. Byram, resulting in his fatal injury. DEPUTY RUNGE RUNGE had no legal justification for using deadly force against Mr. Byram, making the use of force unreasonable under the circumstances.

129.118.    At all relevant times, Mr. Byram did not pose an immediate threat of death or serious bodily injury to anyone, including Defendants RUNGE and DOES 1-10. No warning was given that deadly force would be used prior to its use, and less-than-lethal alternatives were available.

130.119.    Defendant COUNTY is vicariously liable for the wrongful acts of Defendant RUNGE pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries proximately caused by an act or omission of an employee of the public entity.

131.120.    The conduct of DEPUTY RUNGE Defendant RUNGE was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Byram, entitling Plaintiffs to an award of exemplary and punitive damages.

132.121.    Plaintiffs seek survival, wrongful death, and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

**TENTH NINTH CLAIM FOR RELIEF**

**Negligence**

(Plaintiffs against RUNGE and COUNTYall Defendants)

34

1   ~~133.~~122.   Plaintiffs repeat and reallege each and every allegation in

2   the foregoing paragraphs of this Complaint with the same force and effect as

3   if fully set forth herein.

4   ~~134.~~123.   DEPUTY RUNGE ~~Defendants RUNGE and DOES 1–10~~

5   acted within the course and scope of ~~their~~ his employment as ~~deputies~~ a

6   deputy for the ~~Defendant~~ COUNTY and LASD and acted under color of state

7   law.

8   ~~135.~~124.   ~~Police~~ Law enforcement officers, including DEPUTY

9   RUNGE~~Defendants RUNGE and DOES 1–10~~, have a duty to use reasonable

10  care to prevent harm and injury to others. This duty includes using

11  appropriate tactics, giving appropriate commands, using de-escalation

12  techniques, and only using force as a last resort, especially when dealing with

13  individuals in a mental health crisis. ~~Defendants RUNGE and DOES 1–10~~

14  ~~also have a responsibility to provide timely medical care to individuals they~~

15  ~~have harmed.~~

16  ~~136.~~125.   DEPUTY RUNGE ~~Defendants RUNGE and DOES 1–10~~

17  negligently caused physical injury to Mr. Byram when DEPUTY RUNGE

18  ~~RUNGE~~ discharged his firearm at him, striking him fatally. Their use of force

19  was excessive, unreasonable, and negligent, including their pre-shooting

20  conduct~~.~~ ~~and post-shooting neglect to provide medical care.~~

21  ~~137.~~126.   DEPUTY RUNGE~~Defendants RUNGE and DOES 1–10~~

22  breached ~~their~~ his duty of care. ~~Their~~ His actions were negligent and reckless,

23  including but not limited to: (a) failing to formulate a reasonable plan, using

24  proper tactics that are used to prevent unnecessary deaths like this one;(b~~a~~)

25  ignoring the call for non-lethal force and fatally shooting Mr. Byram; and

26  (~~b~~c) contributing to Mr. Byram's disorientation by shouting conflicting

27  command~~; and (c) failing to provide or summon timely medical care after the~~

28  ~~shooting.~~.

1    ~~138.~~127.    As a direct and proximate result of the conduct DEPUTY

2    RUNGE~~of Defendants RUNGE and DOES 1–10~~, Mr. Byram suffered severe

3    physical and mental pain, loss of life, and loss of earning capacity.

4    ~~139.~~128.    At all relevant times, Mr. Byram was not an immediate

5    threat of death or serious bodily injury to anyone, was several yards away

6    from ~~officers~~ the deputies, who had cover, and was not given any warning

7    that deadly force would be used.

8    ~~140.~~129.    Defendant COUNTY is vicariously liable for the wrongful

9    acts of DEPUTY RUNGE~~Defendants RUNGE and DOES 1–10~~ pursuant to

10   section 815.2(a) of the California Government Code.

11   ~~141.~~130.    Plaintiffs bring this claim as successors-in-interest to Mr.

12   Byram and seek wrongful death and punitive damages under this claim;

13   survival damages include pre-death pain and suffering damages.

14   ~~ELEVENTH CLAIM FOR RELIEF~~

15   ~~Intentional Infliction of Emotional Distress~~

16   ~~(Plaintiffs against all Defendants)~~

17   ~~142.   Plaintiffs repeat and reallege each and every allegation in the~~

18   ~~foregoing paragraphs of this Complaint with the same force and effect as if~~

19   ~~fully set forth herein.~~

20   ~~143.   The conduct of the Defendants, including but not limited to,~~

21   ~~unlawfully detaining URSULA BYRAM in a patrol vehicle for over 7 hours~~

22   ~~and deliberately withholding vital information about the condition and~~

23   ~~whereabouts of her husband and daughter, was extreme and outrageous and~~

24   ~~beyond the scope of conduct which should be tolerated by citizens in a~~

25   ~~democratic and civilized society.~~

26   ~~144.   Defendants committed these extreme and outrageous acts,~~

27   ~~including the unscheduled and inappropriate "welfare check" on her deceased~~

28

1   husband, with the intent to inflict severe mental and emotional distress upon

2   URSULA BYRAM.

3       145.  As a direct and proximate result of Defendants' willful,

4   intentional, and malicious conduct URSULA BYRAM suffered severe and

5   extreme mental and emotional distress.

6       146.  Therefore, URSULA BYRAM is entitled to an award of

7   compensatory and punitive damages against said defendants.

8                    **TWELFTHTENTH CLAIM FOR RELIEF**

9                           **False Imprisonment**

10  (URSULA BYRAM against BRENDA ALCANTARAall Defendants)

11      147.131.    Plaintiffs repeat, reallege, and incorporate each and every

12  allegation in the foregoing paragraphs of this Complaint and with the same

13  force and effect as if fully set forth herein.

14      148.132.    The Defendant deputiesDEPUTY ALCANTARA, along

15  with other deputies, acting within the course and scope of their her duties,

16  unlawfully detained URSULA BYRAM without probable cause, exigent

17  circumstances, or a warrant for her detention.

18      149.133.    URSULA BYRAM's freedom of movement was

19  intentionally restricted by DEPUTY ALCANTARA these deputies for an

20  extended period exceeding 47 hours, to which she did not consent. At all

21  relevant times, URSULA BYRAM was not committing any crimes.

22      150.134.    As an actual and proximate result of the deputies' false

23  imprisonment of URSULA BYRAM, she sustained emotional distress and

24  mental anguish.

25      151.  Defendants committed the aforementioned acts and omissions

26  knowingly, willfully, maliciously, with the expressed intent to harm Plaintiff

27  and with conscious or reckless disregard for URSULA BYRAM's rights. By

28

1  reason thereof, Plaintiffs seek punitive and exemplary damages from the
2  involved deputies in an amount according to proof at trial.

3      152.135.    Defendant COUNTY is liable for the wrongful acts of the
4  involved LASD deputies pursuant to section 815.2(a) of the California
5  Government Code, which provides that a public entity is liable for the
6  injuries caused by its employees within the scope of employment if the
7  employee's act would subject them to liability, and under the theory of
8  *respondeat superior*.

9      153.   As a result of their misconduct, Defendant deputies are liable for
10  URSULA BYRAM's emotional distress, either because they failed to
11  intervene or prevent these violations. The COUNTY is liable under the theory
12  of *respondeat superior*.

13      154.136.    Plaintiffs bring this claim on behalf of URSULA BYRAM
14  brings this claim and and sseeks damages for emotional distress and, mental
15  anguish, and punitive damages.

16              **THIRTEENTH ELEVENTH CLAIM FOR RELIEF**

17              **Violation of Cal. Civil Code § 52.1**

18      (Plaintiffs against DEPUTY RUNGE BLAKE RUNGE and COUNTY)

19      155.137.    Plaintiffs repeat and reallege each and every allegation in
20  the foregoing paragraphs of this Complaint with the same force and effect as
21  if fully set forth herein.

22      156.138.    DEPUTY RUNGE Defendants RUNGE and DOES 1–10
23  acted within the course and scope of their his employment as a deputyies for
24  the Defendant COUNTY and LASD and acted under color of state law.

25      157.139.    The Bane Act, the California Constitution, and California
26  common law prohibit the use of excessive force by law enforcement.
27  California Civil Code, Section 52.1(b) authorizes a private right of action and
28  permits survival actions for such claims.

1    158.140.    DEPUTY RUNGEOn information and belief, Defendants
2    RUNGE and DOES 1–10, while working for the COUNTY and acting within
3    the course and scope of their duties, intentionally committed and attempted to
4    commit acts of violence against Mr. Byram, including by using excessive
5    force against him without justification or excuse.

6    159.141.    When DEPUTY RUNGE Defendants unnecessarily shot
7    Mr. Byram, they he interfered with his civil rights to be free from
8    unreasonable searches and seizures, due process, equal protection of the laws,
9    medical care, and his right to life, liberty, and property. DEPUTY RUNGE
10   They intentionally used deadly force, demonstrating a reckless disregard for
11   Mr. Byram's right to be free from excessive force.

12   160.142.    On information and belief, DEPUTY RUNGE Defendant
13   RUNGE intentionally and spitefully committed the above acts to discourage
14   Mr. Byram from exercising his civil rights.

15   161.143.    On information and belief, Mr. Byram reasonably believed
16   that the violent acts committed by DEPUTY RUNGE Defendants were
17   intended to discourage him from exercising his civil rights.

18   162.144.    DEPUTY RUNGE Defendants successfully interfered with
19   the civil rights of Mr. Byram and Plaintiffs.

20   163.145.    Mr. Byram was caused to suffer severe pain and suffering,
21   loss of enjoyment of life, and loss of life. The conduct of DEPUTY RUNGE
22   Defendants was a substantial factor in causing the harm, losses, injuries, and
23   damages of Mr. Byram.

24   164.146.    Defendant COUNTY is vicariously liable for the wrongful
25   acts of DEPUTY RUNGE Defendants RUNGE and DOES 1–10 under
26   California law and the doctrine of *repondeat superior* and section 815.2(a) of
27   the California Government Code.
28

**Formatted:** Font: Italic

1    165.147.    The conduct of the DEPUTY RUNGE individual
2    Defendants RUNGE and DOES 1–10 was malicious, wanton, oppressive, and
3    accomplished with a conscious disregard for the rights of Plaintiffs and Mr.
4    Byram. Plaintiffs and Mr. Byram are thus entitled to an award of exemplary
5    and punitive damages.
6         166.148.    Plaintiffs also seek survival damages, costs, and attorneys'
7    fees under this claim.
8                      **PRAYER FOR RELIEF**
9         WHEREFORE, Plaintiffs URSULA BYRAM, S.B., N.B., and A.B.
10   REGINA CASTRO requests entry of judgment in her their favor against
11   Defendants COUNTY OF LOS ANGELES,; DEPUTY BLAKE RUNGE, and
12   BRENDA ALCANTARA; and DOES 1–10 as follows:
13        1.    For compensatory damages according to proof at trial, including:
14   survival damages, not limited to pre-death pain and suffering and loss of life under
15   federal and state law; and wrongful death damages under federal and state law;
16        2.    For funeral and burial expenses, and loss of financial support;
17        3.    For loss of consortium;
18        4.    For punitive and exemplary damages against DEPUTY BLAKE
19   RUNGE in an amount to be proven at trial;
20        5.    For statutory damages;
21        6.    For reasonable attorneys' fees including litigation expenses;
22        7.    For costs of suit and interest incurred; and
23        8.    For such other and further relief as the Court may deem just, proper,
24   and appropriate.
25
26   DATED: March 5, 2024March 1, 2024        **LAW OFFICES OF DALE**
     **K. GALIPO**
27
28                              /s/    *Cooper Alison-Mayne*
                         _____
                                      40



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby submits this demand that this action be tried in front of a jury.


DATED: March 5, 2024March 1, 2024          **LAW OFFICES OF DALE K. GALIPO**

                              /s/     *Cooper Alison-Mayne*
                              Dale K. Galipo
                              Cooper Alison-Mayne
                              *Attorneys for Plaintiff*

42

PLAINTIFFS' COMPLAINT FOR DAMAGESAMENDED COMPLAINT