**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**RUBIN LAW OFFICE, P.C.**
David Rubin (SBN 304744)
david@rubinlawoffice.com
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Phone: (619) 719–1087

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

URSULA BYRAM, S.B. by and through guardian *ad litem* TIMOTHY BYRAM, N.B. by and through guardian *ad litem* TIMOTHY BYRAM, and A.B. by and through guardian *ad litem* KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram,

Plaintiffs,

v.

COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA,

Defendants.

Case No.: 2:23-cv-09285-SB-MAR

**AMENDED COMPLAINT**

Federal Law Claims
1.   Fourth Amendment, Excessive Force (42 U.S.C. § 1983)
2.   42 U.S.C. § 1983 Fourteenth Amendment, Interference with Familial Relationship
3.   Fourth Amendment, Unlawful Detention (42 U.S.C. § 1983)
4.   Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)
5.   Municipal Liability, Failure to Train (42 U.S.C. § 1983)
6.   Municipal Liability, Ratification (42 U.S.C. § 1983)
7.   Americans with Disabilities Act (42 U.S.C. § 12132)

State Law Claims
8.   Battery
9.   Negligence
10.  False Imprisonment
11.  Violation of Cal. Civil Code § 52.

## AMENDED COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs URSULA BYRAM, S.B. and N.B. by and through their guardian *ad litem*, TIMOTHY BYRAM; and A.B. by and through his guardian *ad litem* KAITLYN HUMENCHUK for their Amended Complaint for Damages against Defendants COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA and hereby allege as follows:

## INTRODUCTION

1.      This civil rights and state tort action arises from the egregious and unjustified use of deadly force by Defendant BLAKE RUNGE against Everett Byram, a 34-year-old comedian and father of three. On the night of February 10, 2023, Los Angeles Sheriff's Department deputies recklessly escalated a manageable situation into a deadly confrontation, resulting in a life cut short, three young children robbed of their father's love and guidance, and a widow permanently scarred by the loss of her partner. Plaintiffs seek compensatory damages from Defendants COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA for violating their rights under the United States Constitution and for their violations of state law. Plaintiffs seek punitive damages from Defendant BLAKE RUNGE.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)–(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

3.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C.

§1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

5.      On August 1, 2023, Plaintiffs served their comprehensive and timely claim for damages on their own behalf and on behalf of Mr. Byram with the COUNTY OF LOS ANGELES pursuant to applicable sections of the California Government Code.

6.      On October 2, 2023, Defendant COUNTY served its letters of rejection of Plaintiffs' claims.

## **PARTIES**

7.      Everett Byram, a 34-year-old man, was killed on February 10, 2023 by Defendant BLAKE RUNGE. At all relevant times, Mr. Byram was an individual residing in Los Angeles.

8.      Plaintiff URSULA BYRAM is an individual who was residing in Los Angeles at the time of the incident. URSULA BYRAM is the wife of Mr. Byram; she sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff URSULA BYRAM is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. She currently resides in Arkansas.

9.      Plaintiff S.B., a child of Mr. Byram, is an individual and was residing in Los Angeles at the time of the incident. Plaintiff S.B. sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff S.B. is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. Plaintiff S.B. currently resides in Arkansas.

10.     Plaintiff N.B., a child of Mr. Byram, is an individual and was residing in Los Angeles at the time of the incident. Plaintiff N.B. sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff N.B. is Mr. Byram's successor-in-interest pursuant to

California Code of Civil Procedure §§377.30 and 377.60. Plaintiff N.B. currently resides in Arkansas.

11.    Plaintiff A.B., a child of Mr. Byram, sues under federal and state law in her individual capacity and as successor-in-interest to Mr. Byram. Plaintiff A.B. is Mr. Byram's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60. Plaintiff A.B. currently resides in Virginia.

12.    Defendant COUNTY OF LOS ANGELES ("COUNTY") is a political subdivision of the State of California that is within this judicial district. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the COUNTY Sheriff's Department ("LASD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring those actions, omissions, policies, procedures, practices, and customs of Defendant COUNTY, LASD, and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, Defendant COUNTY was the employer of Deputies RUNGE and ALCANTARA.

13.    Defendants RUNGE and ALCANTARA are deputies with the LASD. At all relevant times, they were acting under the color of law within the course and scope of their duties as deputies working for the LASD. At all relevant times, the deputies acted with complete authority and ratification of his principal, Defendant COUNTY.

14.    According to information and belief, Defendants RUNGE and ALCANTARA were at all relevant times residents of Los Angeles.

15.    Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their

authority as agents and employees, and with the permission and consent of each other.

16.    At all relevant times, Defendants RUNGE and ALCANTARA acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and Defendant COUNTY.

17.    Pursuant to Cal. Govt. Code §815.2(a), Defendant COUNTY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants RUNGE and ALCANTARA, as alleged by Plaintiffs' state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendants RUNGE and ALCANTARA are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant COUNTY is also liable pursuant to Cal. Govt. Code §815.6.

18.    Defendants RUNGE and ALCANTARA are sued individually. Defendant COUNTY is being sued for direct liability under *Monell* and vicarious liability under Plaintiffs' state law claims. Punitive damages are only being requested as to Defendant RUNGE.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19.    On February 10, 2023, at approximately 10:22 p.m., deputies from the Los Angeles County ("COUNTY") Sheriff's Department ("LASD") responded to the residence of URSULA BYRAM and Everett Byram.

20.    Upon arrival, deputies spoke with URSULA BYRAM at the front door, where she informed them that Mr. Byram was having a mental health crisis.

21.    Mr. Byram was 34 years old with a history of depression.

22.     Deputies entered the residence, entered the backyard and located Mr. Byram in the side yard of the residence, where they found him in possession of a blunt sword.

23.     Initially, two deputies aimed non-lethal weapons at Mr. Byram: one wielded a Taser, and the other a 40mm foam baton launcher.

24.     Despite knowing that Mr. Byram was suffering from a mental health crisis, the deputies escalated the situation by simultaneously shouting conflicting commands at him, contributing to his disorientation.

25.     Shortly thereafter, RUNGE approached, drew his firearm, and pointed it at Mr. Byram, joining the two deputies who had previously aimed non-lethal weapons at Mr. Byram.

26.     RUNGE also began shouting orders simultaneously with other deputies, escalating the situation and further disorienting Mr. Byram.

27.     One of the deputies called for the use of a non-lethal weapon against Mr. Byram.

28.     Ignoring the call for the use of non-lethal force, RUNGE discharged his firearm, fatally wounding Mr. Byram.

29.     Almost immediately following the gunshot, another deputy deployed the 40mm foam baton launcher.

30.     At the time of the shooting, Mr. Byram did not pose an immediate threat of death or serious bodily injury to any person, including the involved deputies.

31.     When shot and killed, Mr. Byram was standing several yards away from the deputies, who themselves were behind or near a backyard gate, providing them with distance, space, cover, and time.

32.     Mr. Byram was neither charging nor advancing toward the deputies and was at such a distance that he could not reasonably be perceived as posing an imminent threat of death or severe bodily injury.

AMENDED COMPLAINT

33.     DEPUTY RUNGE failed to provide a verbal warning indicating that deadly force would be used and did not afford Mr. Byram an opportunity to heed any such warning.

34.     As a direct and proximate result of the shooting, Mr. Byram experienced severe pain and suffering, loss of life, and loss of earning capacity.

35.     Upon information and belief, the Inclusive Province AKIA ("IPA") is a violent deputy gang involved in criminal activity, similar to other deputy gangs within the Los Angeles County Sheriff's Department, such as the "Executioners" operating in Compton, or the "Bandidos" operating out of East Los Angeles. AKIA is Ku Klux Klan shorthand for "A Klansman I Am."

36.     Upon information and belief, deputy members of IPA use violence and unreasonable force against those they are sworn to protect, as well as falsify reports, violating the civil rights of hundreds of citizens of Los Angeles.

37.     Upon information and belief, at the time of the incident, DEFENDANT RUNGE was a member of the IPA.

38.     Following the shooting of Mr. Byram, DEPUTY ALCANTARA detained URSULA BYRAM in a patrol vehicle without justification.

39.     URSULA BYRAM was held in this manner for an extended period exceeding 4 hours.

40.     During her unlawful detention, URSULA BYRAM was placed in a patrol vehicle along with her son, but her daughter was absent.

41.     The involved deputies deliberately withheld information from URSULA BYRAM concerning the condition and whereabouts of her husband, Mr. Byram, and her daughter.

42.    Due to this lack of communication, URSULA BYRAM was left in a state of distress, uncertain as to the welfare of her daughter and under the impression that she might have been injured or even killed.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force (42 U.S.C. § 1983)

(Plaintiffs against DEPUTY RUNGE )

43.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

44.    Plaintiffs bring this claim for relief in their capacity as the successors-in-interest of Mr. Byram under California Code of Civil Procedure § 377.30.

45.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by law enforcement officers.

46.    DEPUTY RUNGE failed to employ de-escalation tactics, gave conflicting commands, and did not provide a verbal warning for the use of deadly force when it was feasible to do so.

47.    DEPUTY RUNGE used excessive force against Mr. Byram by ignoring his colleague's call for non-lethal force and fatally shooting him, despite the fact that Mr. Byram did not pose an immediate threat of death or serious bodily injury to anyone. At the time of the shooting, Mr. Byram was several yards away from the deputies, who had cover and distance between them and Mr. Byram. Furthermore, no verbal warning of deadly force was given, nor was Mr. Byram given an opportunity to heed such a warning. This unjustified and unreasonable use of force violated Mr. Byram's Fourth Amendment rights.

48.     As a direct result of DEPUTY RUNGE actions, Mr. Byram experienced severe physical and mental pain up to the time of his death.

49.     DEPUTY RUNGE acted within the course and scope of his employment as a deputy for the LASD and acted under color of state law.

50.     The use of force was excessive and unreasonable, given that Mr. Byram posed no immediate threat, was several yards away, and the deputies had cover, time, and space to maneuver.

51.     The conduct of RUNGE was willful, wanton, malicious, and done with reckless disregard for Mr. Byram's rights and safety, warranting the imposition of exemplary and punitive damages.

52.     No serious crime was being responded to, there was no report that Mr. Byram had a firearm, and less intrusive alternatives were available.

53.     Further, the DEPUTY RUNGE knew that Mr. Byram was suffering from a mental health crisis, but he did not take that into account when he chose to escalate the situation, shout simultaneously with other deputies, and shoot Mr. Byram without warning.

54.     DEPUTY RUNGE is directly liable for Mr. Byram's injuries.

55.     Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, loss of opportunity of life, and loss of enjoyment of life, under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

56.     The conduct of DEPUTY RUNGE was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of Mr. Byram. DEPUTY RUNGE intentionally deprived and violated their constitutional rights, or acted with reckless disregard for those rights. Upon information and belief, DEPUTY RUNGE is a member of the IPA, a violent deputy gang that encourages the use of excessive force against citizens. As

such, this conduct entitles the Plaintiffs to an award of exemplary and punitive damages from DEPUTY RUNGE.

### SECOND CLAIM FOR RELIEF

**Fourteenth Amendment—Denial of Familial Relationship (42 U.S.C. § 1983)**

(Plaintiffs against DEPUTY RUNGE)

57.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

58.    URSULA BYRAM had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in URSULA BYRAM's familial relationship with her husband, Mr. Byram.

59.    S.B., by and through guardian ad litem TIMOTHY BYRAM, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in S.B.'s familial relationship with their father, Mr. Byram.

60.    N.B., by and through guardian ad litem TIMOTHY BYRAM, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in N.B.'s familial relationship with their father, Mr. Byram.

61.    A.B., by and through guardian ad litem KAITLYN HUMENCHUK, had a cognizable interest under the Due Process Clause of

the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in A.B.'s familial relationship with their father, Mr. Byram.

62. Defendant DEPUTY RUNGE acted within the course and scope of his employment as deputies for the Defendant COUNTY and LASD and acted under color of state law.

63. The aforementioned actions of DEPUTY RUNGE shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Mr. Byram and Plaintiffs, and with a purpose to harm unrelated to any legitimate law enforcement objective.

64. As a direct and proximate result of these actions, Mr. Byram experienced pain and suffering and eventually died. Defendant DEPUTY RUNGE  thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. Byram.

65. As a direct and proximate cause of the acts of DEPUTY RUNGE, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Byram, and will continue to be so deprived for the remainder of their natural lives.

66. DEPUTY RUNGE is directly liable for Mr. Byram's injuries.

67. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seek both survival and wrongful death damages for the violation of their rights. Plaintiffs also seek attorney's fees and costs under this claim.

68. The conduct of DEPUTY RUNGE was malicious, wanton, oppressive, and carried out with conscious disregard for the rights of both the Plaintiffs and the Mr. Byram. DEPUTY RUNGE intentionally deprived and

violated their constitutional rights, or acted with reckless disregard for those rights. Upon information and belief, DEPUTY RUNGE is a member of the IPA, a violent deputy gang that encourages the use of excessive force against citizens. As such, this conduct entitles the Plaintiffs to an award of exemplary and punitive damages from DEPUTY RUNGE.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment—Unlawful Detention (42 U.S.C. § 1983)

(URSULA BYRAM against BRENDA ALCANTARA)

69. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

70. The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures. Statute 42 U.S.C. § 1983 provides a right of action for conduct which violates this right. BRENDA ALCANTARA violated URSULA BYRAM's rights to be free from unreasonable searches and seizures, which is guaranteed to her by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

71. At all relevant times, BRENDA ALCANTARA acted under the color of state law and within the course and scope of their duties. BRENDA ALCANTARA had no reasonable justification to detain URSULA BYRAM for an extended period exceeding 4 hours.

72. As a direct result of the unlawful detention, URSULA BYRAM was placed in a situation causing her to experience severe emotional distress.

73. As a result of her misconduct, BRENDA ALCANTARA is liable for URSULA BYRAM's emotional distress for wrongfully detaining her and failing to inform her of the condition and whereabouts of her family members while in her custody, control, and care.

74.     URSULA BYRAM brings this claim against BRENDA ALCANTARA, seeking compensatory damages, including pain and suffering, emotional distress, and humiliation. She also seeks attorney's fees under this claim, pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability: Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Plaintiffs against the COUNTY)

75.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

76.     The actions of DEPUTY RUNGE, which deprived Mr. Byram and Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments, were carried out in accordance with a widespread and longstanding practice or custom of Defendant COUNTY. This custom condones, ratifies, and acquiesces in the excessive use of deadly force by Sheriff's deputies. Due to this ingrained practice, DEPUTY RUNGE has not been disciplined, reprimanded, retrained, suspended, or faced any administrative or adverse employment consequences in connection with Mr. Byram's death. This practice or custom by COUNTY serves as the moving force behind the deprivation of the Plaintiffs' rights and Mr. Byram's death.

77.     Defendants COUNTY, together with other COUNTY final policymakers and supervisors, maintained the following unconstitutional customs, practices, and policies:

a. The use of excessive force, including excessive deadly force by LASD deputies when there is no need for deadly force, or where there is no imminent threat to deputies.

b. The COUNTY's failure to provide adequate training regarding the use of force, and the use of deadly force.

13

c.  The COUNTY's employing and retaining as Sheriff's deputies and individuals whom the COUNTY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive deadly force.

d.  The use of excessive force by LASD deputies against individuals suffering from a mental health crisis, when there are reasonable alternatives.

e.  The COUNTY's inadequate supervision, training, controlling, assigning, and disciplining Deputy Sheriffs, contributing to situations like that encountered on February 10, 2023, where lack of proper direction and control led to the escalation of a situation involving a mentally distressed individual and resulted in fatal consequences.

f.  The COUNTY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by County deputies, as demonstrated by the incident on February 10, 2023, where conflicting orders and the use of lethal force against an individual suffering from a mental health crisis highlight systemic failures in handling such situations.

g.  The COUNTY's failures to adequately discipline County deputies and for categories of misconduct as demonstrated on February 10, 2023, where a call for non-lethal force was ignored, leading to the use of deadly force against a mentally distressed individual without adequate warning or opportunity for the individual to comply.

h.  The COUNTY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of deadly

force instances such as the one on February 10, 2023, where lethal force was used against an individual in a mental health crisis who did not pose an immediate threat of death or serious bodily injury to any person.

i.  Even when an incident such as the one on February 10, 2023 is brought to light, where the use of force was excessive and fatal against a mentally distressed individual, the COUNTY has refused to discipline, terminate, or retrain the deputies involved.

j.  The COUNTY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which sheriff's deputies do not report other deputies' errors, misconduct, or crimes, as potentially indicated by the lack of immediate corrective actions or reporting regarding the incident on February 10, 2023.

k.  The COUNTY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of excessive force by sheriff's deputies, as evidenced by the fatal incident on February 10, 2023, where a lack of discipline, retraining, investigation, termination, and recommendation for criminal prosecution perpetuates a cycle of violence, especially against vulnerable populations.

l.  The COUNTY's custom and practice of providing inadequate training regarding handling situations with mentally ill persons and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158, as exemplified by the incident on February 10, 2023, where the deputies were ill-prepared to de-escalate a situation involving an individual

suffering from a mental health crisis, leading to fatal consequences.

m. The COUNTY's tolerance of self-organized gangs of deputies engaged in illegal acts.

n. Tolerating and failing to adequately investigate and discipline unconstitutional and unlawful deputy activity, including the proliferation of deputy "gangs" within the COUNTY. As far back as 1971, a secret subgroup called the "Little Devils" existed at the East Los Angeles station; the Citizens' Commission on Jail Violence found a long history of deputy cliques contributing to acts of insubordination, aggressive behavior, and excessive force.

o. Employing and retaining as deputies, individuals such as DEFENDANT RUNGE, who the COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

p. The LASD has a longstanding history involving unauthorized gang-like deputy cliques, violent cliques, tattoo groups, station groups, secret deputy sub-groups, and secret societies, whose membership is based on ethnicity, involvement in excessive uses of force, intimidation of fellow deputies, and harassment and even shootings of civilians. Many of these groups are known for their identical, hidden, sinister tattoos, and have been the subjects of investigations, lawsuits and settlements involving excessive uses of force, violence, and dishonesty.

78. Defendants COUNTY, acting through various COUNTY officials, and final policy makers including the Sheriff of the Los Angeles Sheriff's department, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs

16

above. Defendant COUNTY acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of Mr. Byram, Plaintiffs, and other individuals similarly situated.

79.     The following are only a few examples of constitutional violations committed by Sheriff's deputies working for Defendant County. These examples demonstrate the unconstitutional customs and practices of using excessive force against unarmed civilians, ratifying that use of deadly force, and/or finding the use of deadly force to be justified or "within policy," as exemplified in the incident on February 10, 2023, involving Mr. Byram during a mental health crisis. Despite knowledge of Mr. Byram's mental health condition and initial use of non-lethal force options, DEPUTY RUNGE escalated the situation by discharging his firearm, fatally wounding Mr. Byram, who at that time did not pose an immediate threat of death or serious bodily injury to any person, including the involved deputies. This incident reflects the alleged unconstitutional customs and practices within the Defendant COUNTY.

      a.  In *Mitchell v. County of Los Angeles*, et al., case number CV 03-8421 RJK (Awx), an LASD Deputy killed an unarmed civilian, Robert Mitchell, shooting him in the back six times. At trial, the COUNTY argued that use of deadly force by the Deputy was reasonable; the jury found otherwise, returning a $4,000,000 verdict. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy.

      b.  In *Gutierrez, et al. v. County of Los Angeles*, et al., case number CV 10-7608 PSG (AJWx), a jury found that an LASD Deputy used excessive and unreasonable force when he shot and killed

Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy.

c. On August 8, 2009, in the City of Carson, an LASD Deputy shot and killed Ezequiel Jacobo, who was unarmed. Police reports confirmed that Mr. Jacobo was unarmed. The Deputy was not disciplined or retrained for shooting Mr. Jacobo. The COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Jacobo, et al. v. County of Los Angeles, et al.*, case number CV-11-7212 GW (SSx)).

d. In 2011, in the city of Norwalk, LASD deputies shot Emiliano Amaya five times in the back, killing him. In 2017, a jury awarded more than $3 million to the plaintiffs. The COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Marian Amaya, et al., v. County of Los Angeles, et al.*, case number VC062384)

e. On January 4, 2012, an LASD Deputy killed Ms. Jazmyne Ha Eng, a 40-year-old who sought psychiatric help at the Asian Pacific Family Center in Rosemead. Ms. Eng, who suffered from schizophrenia, was holding a small ball-peen hammer when Deputy Vance shot her. The shooting occurred within 12 seconds of the deputies making contact with Ms. Eng. In 2014, the COUNTY settled the lawsuit for $1.8 million.

f. On February 1, 2013, in the City of Walnut, an LASD Deputy shot Michael Lobrono, who was unarmed. Police reports confirmed that Mr. Lobrono was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the

COUNTY found that the shooting was justified and did not violate any COUNTY policy. In October 2014, the COUNTY settled the lawsuit for $335,000. (Lobrono, et al. v. County of Los Angeles, et al., case number CV 13-03838).

g. On April 20, 2013, in the City of Cudahy, an LASD Deputy shot and killed Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting. Police reports confirmed that Mr. Sanchez was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*Sanchez v. County of Los Angeles, et al.*, case number CV 13-03836).

h. On May 11, 2013, in the City of Cudahy, an LASD Deputy shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting. Police reports confirmed that Mr. Arceo was unarmed. The Deputy was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*N.K.A., et al. v. County of Los Angeles, et al.*, case number CV 13-05507).

i. On May 23, 2013, in the City of Compton, LASD Deputies shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot. The Deputies were not disciplined or retrained for their use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. (*D.A.B., et al. v. County of Los Angeles, et al.*, case number CV 14-05207 FMO (ASx)).

j.  On August 1, 2014, in the city of Pico Rivera, LASD Deputies shot and killed 54-year-old man, Frank Mendoza in broad daylight in the doorway of Mr. Mendoza's home. LASD deputies allegedly mistook him for a parolee-at-large. Mendoza was unarmed at the time he was shot. In May 2018, the County settled the case for $14.35 million. The COUNTY found that the deputies were justified in their use of deadly force.

k.  In 2015, LASD deputies shot and killed an unarmed man. The Board of Supervisors approved a $1.5 million legal settlement for the family of the young father that was shot and killed by a Sheriff's deputy in Cerritos in 2015 when he allegedly used his car to try and run over the deputy.

l.  In *Martinez v. County of Los Angeles, et al*., case number 2:14-cv-05456-DSF-MAN, an LASD Deputy discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was unarmed. Deputy Gonzalez was not disciplined or retrained for his use of deadly force, and the COUNTY found that the shooting was justified and did not violate any COUNTY policy. In 2016, the Board of Supervisors approved a settlement of the lawsuit for $2,800,000.

m.  On March 8, 2017, an LASD deputy shot and killed Dennis Todd Rogers, an African-American man, who was 41 years old and was having a mental health crisis outside a 24 Hour Fitness in Ladera Heights. His family filed a lawsuit against the LASD, *Dennis Todd Rogers et al v. County of Los Angeles, et al*, case number 2:2017cv05236, alleging that the deputies reacted improperly by shooting to kill, and accused the COUNTY of failing to

adequately train and supervise deputies to deal with people who suffer from mental illness.

n. On March 31, 2021, LASD shot and left paralyzed Isaias Cervantes, a 25-year-old man who suffered from autism who functioned as a six-year-old. On the day of the incident when he got shot by LASD deputies, he was experiencing a mental health crisis and having problems with his family. As a result of the shooting, the Cervantes family filed an action against the LASD alleging that the deputies who responded to the call involving Cervantes deliberately incited a crisis irrationally panicked, then "recklessly shot their way out of an imagined danger." It was also alleged that deputies shot Cervantes after only 83 seconds had passed after making contact with him.

o. On March 14, 2021, LASD deputies shot and killed David Ordaz Jr., who was 34 years old and a father of three, after LASD deputies responded to call for help where Ordaz was experiencing a mental health emergency in East Los Angeles. The family of Ordaz alleged that the LASD deputies shot at Ordaz after he turned away. The coroner's report supported that Ordaz was struck in the back. Following the shooting, the County Sheriff commented, that he had "grave concerns" regarding this deputy-involved shooting.

p. On February 15, 2018, the LASD Civilian Oversight Commission issued a report calling for more mental health evaluation teams to respond to mental health emergencies. The report is available at http://file.lacounty.gov/SDSInter/bos/supdocs/1033706_Item4.Me tFinalReport.pdf. At pages 11 and 12 of the report, the LASD Oversight Commission cited its concerns over the County's

payouts for lawsuits stemming from the excessive use of force and cited concerns regarding the excessive use of force by LASD deputies on people with mental illness or disabilities.

80.    The aforementioned cases establish a pattern of excessive use of force by Sheriff's deputies, and the unconstitutional custom, and practice of the COUNTY in ratifying the excessive use of force by Sheriff's deputies, as evidenced by the number of prior cases involving the use of deadly force by deputies working for the LASD.

81.    The County's longstanding practice or custom caused the deprivation of Mr. Byram and Plaintiffs' rights by DEPUTY; that is, the County's official policy condoning excessive force against mentally ill people is so closely related to the deprivation of Mr. Byram and Plaintiffs' rights in this case as to be the moving force that caused Mr. Byram's death.

82.    The COUNTY had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above.

83.    The COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Byram, Plaintiffs, and other individuals similarly situated.

84.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Byram. The aforementioned acts and omissions also caused Mr. Byram's pain and suffering, loss of enjoyment of life, and death.

85.    Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

AMENDED COMPLAINT

86.     Plaintiffs bring their claim individually and as successors-in-interest to Mr. Byram and seek wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

### FIFTH CLAIM FOR RELIEF

**Municipal Liability: Failure to Train (42 U.S.C. § 1983)**

(Plaintiffs against COUNTY)

87.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

88.     At all times herein mentioned, DEPUTY RUNGE acted under color of law and deprived Mr. Byram and Plaintiffs of their Constitutional rights under the United States Constitution. The training policies of Defendant COUNTY were not adequate to properly train LASD deputies to handle the usual and recurring situations in their interactions with residents, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness. The training policies of Defendant COUNTY were not adequate to properly train LASD deputies with regard to the use of deadly force or the permissible use of deadly weapons.

89.     The unjustified and excessive use of deadly force against Mr. Byram by DEPUTY RUNGE was a result of the negligent training by Defendant COUNTY who failed to train LASD deputies, such as DEPUTY RUNGE, as to proper police tactics, proper use of force, proper use of deadly force, and proper police tactics in the use of force with respect to mentally ill individuals. Defendant COUNTY was responsible for the training of LASD deputies to ensure that the actions, procedures, and practices of DEPUTY RUNGE complied with Peace Officer Standards and Training ("POST")

training standards regarding proper police tactics, proper use of force, and proper use of deadly force.

90.     Defendant COUNTY negligently failed to train COUNTY Sheriff's deputies, such as DEPUTY RUNGE, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics when dealing with individuals suffering from a mental health crisis. POST was established by the California Legislature in 1959 to set minimum training standards for California Sheriff's deputies. The training policies of Defendant COUNTY were not adequate to train its Sheriff's deputies to handle the usual and recurring situations with residents, suspects, and pretrial detainees with whom DEPUTY RUNGE has contact.

91.     The training policies of Defendant COUNTY were deficient in the following:

      a. Defendant COUNTY failed to adequately train Los Angeles County Sheriff's deputies, such as DEPUTY RUNGE, in de-escalating interactions with residents or individuals experiencing a mental health crisis. Instead of de-escalation, DEPUTY RUNGE escalated their interactions with Mr. Byram, who was experiencing a mental health crisis.

      b. Defendant COUNTY failed to properly train Los Angeles County Sheriff's deputies, like DEPUTY RUNGE, to manage their fear to prevent it from becoming unreasonable and not objectively justifiable. This lack of training led to the use of deadly force by DEPUTY RUNGE, causing the death of residents or individuals in a mental health crisis, such as Mr. Byram.

      c. Defendant COUNTY failed to properly train COUNTY Sheriff's deputies, such as DEPUTY RUNGE, in proper police tactics,

such as situational awareness, to prevent the use of negligent tactics, which is what DEPUTY RUNGE did in this case. Because of this lack of proper training by Defendant COUNTY, DEPUTY RUNGE did not use proper police tactics in handling their contact and interaction with Mr. Byram. DEPUTY RUNGE used defective police tactics, including a lack of situational awareness. These training failures by Defendant COUNTY, and defective tactics by DEPUTY RUNGE resulted in the death of Mr. Byram.

d.  Defendant COUNTY failed to properly train Sheriff's deputies, such as DEPUTY RUNGE, on the importance of effective communication between deputies prior to using any type of force.

e.  Because of the lack of proper training by COUNTY, DEPUTY RUNGE did not use effective communication prior to and during the use of force against Mr. Byram. This ineffective communication by DEPUTY RUNGE, prior to and during the incident, resulted in the death of Mr. Byram, causing constitutional injuries to Mr. Byram and Plaintiffs.

92.  The failure of Defendant COUNTY to provide proper training to its deputy Sheriffs resulted in the deprivation of Plaintiffs' rights by DEPUTY RUNGE. Defendant COUNTY's failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiffs.

93.  The training policies of the County were not adequate to train its deputy Sheriffs to handle the usual and recurring situations they must deal with, including situations involving persons suffering from a mental health crisis, such as Mr. Byram. Defendant County was deliberately indifferent to the obvious consequences of its failure to properly train its deputy Sheriffs.

AMENDED COMPLAINT

94.     The failure of the County to provide adequate training to its deputy Sheriffs caused the deprivation of Plaintiffs' rights by DEPUTY RUNGE; the County's failure to train is so closely related to the deprivation of Mr. Byram and Plaintiffs' rights as to be the moving force that caused the ultimate constitutional injuries to Plaintiffs.

95.     By reason of the aforementioned acts and omissions of Defendant COUNTY, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Byram. The aforementioned acts and omissions also caused Mr. Byram's pain and suffering, loss of enjoyment of life, and death.

96.     Defendant COUNTY is liable to the Plaintiffs for compensatory damages under 42 U.S.C. § 1983. Plaintiffs bring these claims as Mr. Byram's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of Mr. Byram's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability: Ratification (42 U.S.C. § 1983)

(Plaintiffs against COUNTY)

97.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

98.     At all relevant times, Defendants RUNGE acted under the color of state law and within the course and scope of his employment with Defendant COUNTY.

99.     The acts of Defendant RUNGE deprived Mr. Byram and Plaintiffs of their particular rights under the United States Constitution,

including when he intentionally shot Mr. Byram without justification, causing his death and depriving Plaintiffs of their familial relationship Mr. Byram.

100.   Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying the unconstitutional and unreasonable uses of force, including deadly force.

101.   Upon information and belief, a final policymaker for the Defendant COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendants RUNGE and the bases for them, ratified the acts and omissions of Defendants RUNGE and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of DEPUTY RUNGE's acts, specifically approving his unlawful detention of Mr. Byram, and the excessive and unreasonable shooting of Mr. Byram.

102.   The official policies with respect to the incident are that LASD Deputies are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the Deputies or others. DEPUTY RUNGE deviated from these official policies because Mr. Byram did not pose an immediate threat of death or serious bodily injury to the involved Deputies or anyone else.

103.   Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of Defendant RUNGE were "within policy."

104.   By reason of the aforementioned acts and omissions, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. §1983.

105.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seek both survival and wrongful death damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Americans with Disabilities Act (42 U.S.C. § 12132)

(Plaintiffs against RUNGE and COUNTY)

106.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

107.   Mr. Byram was a "qualified individual," with a mental impairment, specifically depressive disorder, that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 (2).

108.   Los Angeles County is a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), as explained by regulations under these laws.

109.   Under the ADA, the COUNTY is mandated to develop effective procedures for interactions with individuals with mental disabilities and to ensure the protection of their personal and civil rights.

110.   Congress enacted the ADA with the finding that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. §12101(a)(2).

111.   The COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. §12182 (a).

112.   The COUNTY and DEPUTY RUNGE violated the ADA by: (1) failing to properly train its deputies to respond and interact peacefully with individuals with mental health impairments suffering from mental health crises, such as Mr. Byram; and (2) failing to follow procedures for de-escalation and non-lethal force in interactions with Mr. Byram, who was experiencing a mental health crisis.

113.   As a result of the acts and omissions of DEPUTY RUNGE and the COUNTY, Mr. Byram suffered damages, including loss of life and pain and suffering.

114.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Byram and seek both survival and wrongful death damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

**EIGHTH CLAIM FOR RELIEF**

**Battery**

(Plaintiffs against RUNGE and COUNTY)

115.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

116.   DEPUTY RUNGE acted within the course and scope of his employment as a deputy for the COUNTY and LASD and acted under color of state law.

117.   DEPUTY RUNGE intentionally shot Mr. Byram, resulting in his fatal injury. DEPUTY RUNGE had no legal justification for using deadly force against Mr. Byram, making the use of force unreasonable under the circumstances.

118.   At all relevant times, Mr. Byram did not pose an immediate threat of death or serious bodily injury to anyone. No warning was given that deadly force would be used prior to its use, and less-than-lethal alternatives were available.

119.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendant RUNGE pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries proximately caused by an act or omission of an employee of the public entity.

AMENDED COMPLAINT

120.   The conduct of DEPUTY RUNGE was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Byram, entitling Plaintiffs to an award of exemplary and punitive damages.

121.   Plaintiffs seek survival, wrongful death, and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

**NINTH CLAIM FOR RELIEF**

**Negligence**

(Plaintiffs against RUNGE and COUNTY)

122.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

123.   DEPUTY RUNGE acted within the course and scope of his employment as a deputy for the COUNTY and LASD and acted under color of state law.

124.   Law enforcement officers, including DEPUTY RUNGE, have a duty to use reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, using de-escalation techniques, and only using force as a last resort, especially when dealing with individuals in a mental health crisis.

125.   DEPUTY RUNGE negligently caused physical injury to Mr. Byram when DEPUTY RUNGE discharged his firearm at him, striking him fatally. Their use of force was excessive, unreasonable, and negligent, including their pre-shooting conduct.

126.   DEPUTY RUNGE breached his duty of care. His actions were negligent and reckless, including but not limited to: (a) failing to formulate a reasonable plan, using proper tactics that are used to prevent unnecessary deaths like this one;(b) ignoring the call for non-lethal force and fatally

shooting Mr. Byram; and (c) contributing to Mr. Byram's disorientation by shouting conflicting command.

127.  As a direct and proximate result of the conduct DEPUTY RUNGE, Mr. Byram suffered severe physical and mental pain, loss of life, and loss of earning capacity.

128.  At all relevant times, Mr. Byram was not an immediate threat of death or serious bodily injury to anyone, was several yards away from the deputies, who had cover, and was not given any warning that deadly force would be used.

129.  Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY RUNGE pursuant to section 815.2(a) of the California Government Code.

130.  Plaintiffs bring this claim as successors-in-interest to Mr. Byram and seek wrongful death and punitive damages under this claim; survival damages include pre-death pain and suffering damages.

### TENTH CLAIM FOR RELIEF

#### False Imprisonment

(URSULA BYRAM against BRENDA ALCANTARA)

131.  Plaintiffs repeat, reallege, and incorporate each and every allegation in the foregoing paragraphs of this Complaint and with the same force and effect as if fully set forth herein.

132.  The DEPUTY ALCANTARA, along with other deputies, acting within the course and scope of her duties, unlawfully detained URSULA BYRAM without probable cause, exigent circumstances, or a warrant for her detention.

133.  URSULA BYRAM's freedom of movement was intentionally restricted by DEPUTY ALCANTARA for an extended period exceeding 4

hours, to which she did not consent. At all relevant times, URSULA BYRAM was not committing any crimes.

134.   As an actual and proximate result of the deputies' false imprisonment of URSULA BYRAM, she sustained emotional distress and mental anguish.

135.   Defendant COUNTY is liable for the wrongful acts of the involved LASD deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject them to liability, and under the theory of *respondeat superior*.

136.   URSULA BYRAM brings this claim and seeks damages for emotional distress and mental anguish.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

(Plaintiffs against DEPUTY RUNGE and COUNTY)

137.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

138.   DEPUTY RUNGE acted within the course and scope of his employment as a deputy for the COUNTY and LASD and acted under color of state law.

139.   The Bane Act, the California Constitution, and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.

140.   DEPUTY RUNGE, while working for the COUNTY and acting within the course and scope of their duties, intentionally committed acts of

violence against Mr. Byram, including by using excessive force against him without justification or excuse.

141.   When DEPUTY RUNGE unnecessarily shot Mr. Byram, he interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, and his right to life. DEPUTY RUNGE intentionally used deadly force, demonstrating a reckless disregard for Mr. Byram's right to be free from excessive force.

142.   DEPUTY RUNGE intentionally and spitefully committed the above acts to discourage Mr. Byram from exercising his civil rights.

143.   Mr. Byram reasonably believed that the violent acts committed by DEPUTY RUNGE were intended to discourage him from exercising his civil rights.

144.   DEPUTY RUNGE successfully interfered with the civil rights of Mr. Byram.

145.   Mr. Byram was caused to suffer severe pain and suffering, loss of enjoyment of life, and loss of life. The conduct of DEPUTY RUNGE was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Byram.

146.   Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY RUNGE under California law and the doctrine of *repondeat superior* and section 815.2(a) of the California Government Code.

147.   The conduct of the DEPUTY RUNGE was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Byram. Plaintiffs and Mr. Byram are thus entitled to an award of exemplary and punitive damages.

148.   Plaintiffs also seek survival damages, costs, and attorneys' fees under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs URSULA BYRAM, S.B., N.B., and A.B. request entry of judgment in their favor against Defendants COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA;  as follows:

1.    For compensatory damages according to proof at trial, including: survival damages, not limited to pre-death pain and suffering and loss of life under federal and state law; and wrongful death damages under federal and state law;

2.    For funeral and burial expenses, and loss of financial support;

3.    For loss of consortium;

4.    For punitive and exemplary damages against BLAKE RUNGE in an amount to be proven at trial;

5.    For statutory damages;

6.    For reasonable attorneys' fees including litigation expenses;

7.    For costs of suit and interest incurred; and

8.    For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: March 29, 2024        **LAW OFFICES OF DALE K. GALIPO**

                                             /s/    *Dale K. Galipo*
                                             Dale K. Galipo
                                             Cooper Alison-Mayne
                                             *Attorneys for Plaintiffs*

AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby submit this demand that this action be tried in front of a jury.


DATED: March 29, 2024        **LAW OFFICES OF DALE K. GALIPO**

/s/     *Dale K. Galipo*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs*