Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Jordan S. Stern, State Bar No. 311527
E-Mail: jstern@hurrellcantrall.com
Nicole G. Ortega, State Bar No. 345882
E-Mail: nortega@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, BLAKE RUNGE and BRENDA ALCANTARA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| URSULA BYRAM, S.B. by and through guardian ad litem TIMOTHY BYRAM, N.B. by and through guardian ad litem TIMOTHY BYRAM, and A.B. by and through guardian ad litem KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram,<br><br>                    Plaintiffs,<br><br>        v.<br><br>COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA,<br><br>                    Defendants. | Case No. 2:23-cv-09285-KS<br><br>[Assigned to Hon. Karen L. Stevenson, Courtroom 580]<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Final Pretrial Conference/Hearing on Motions in Limine<br>Date: January 21, 2025<br>Time: 10:15 a.m.<br><br>Trial Date: February 10, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants COUNTY OF LOS ANGELES, DEPUTY BLAKE RUNGE and DEPUTY BRENDA ALCANTARA (collectively "Defendants") hereby submit the following Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

I.    INTRODUCTION

### A.    Brief Overview of Case

This matter arises out of a use of force incident that occurred on February 10, 2023, when Plaintiff Ursula Byram ("Mrs. Byram") contacted Los Angeles County Sheriff's Department ("LASD") to report an incident of domestic violence involving decedent Everett Byram ("Mr. Byram"). When deputies arrived, they determined that a protective sweep was necessary to ensure the safety of Plaintiff and her children and searched the residence for Mr. Byram. Deputies encountered Mr. Byram in the backyard of the residence where he was wielding a sword and, against commands from the deputies, began to approach them. Deputy Blake Runge ("Deputy Runge") was forced to discharge his service pistol one time and shot Mr. Byram in the face, ending the situation. Deputy Brenda Alcantara ("Deputy Alcantara") (collectively with Deputy Runge, "Deputy Defendants") removed Plaintiff from the residence into a patrol vehicle, where she was detained with her infant son, but her infant daughter was absent. Mrs. Byram was eventually reunited with her daughter, and the three stayed in the patrol car for several hours and were then transported to the station where they were detained for several more hours.

Mrs. Byram, S.B. by and through guardian ad litem Timothy Byram, N.B. by and through guardian ad litem Timothy Byram, and A.B. by and through guardian ad litem Kaitlyn Humenchuk (collectively, "Plaintiffs") are pursuing the following claims: Fourth Amendment excessive force and denial of familial relationship against Deputy Runge; unlawful detention and false imprisonment against Deputy Alcantara; unconstitutional custom, practice or policy (*Monell*) causing a violation of Civil Rights, failure to train, and ratification against the County of Los Angeles ("COLA"); violation of Americans with Disabilities Act, battery, negligence, violation of Cal. Civil Code § 52.1 against Deputy Runge and COLA.

Defendants deny Plaintiffs' allegations, and contend that the Deputy

2

1  Defendants acted reasonably and their use of force was reasonable under the
2  circumstances.

3  **B.    Summary of Facts**

4  On February 10, 2023, at approximately 10:00 p.m., Mrs. Byram called 911
5  and informed the operator that Mr. Byram had been assaulting her the past few days.
6  That night specifically, Mrs. Byram relayed to the 911 operator that Mr. Byram had
7  struck her and placed her in a headlock and was under the influence of alcohol and
8  possibly suicidal. Mrs. Byram also told 911 that she was afraid Mr. Byram would
9  harm himself and/or their twin infants that were also in the residence.

10  Deputies Lopez-Munoz and Cervantes were assigned to the call which was
11  dispatched as a domestic disturbance. Subsequently, the 911 operator, who was still
12  on the phone with Mrs. Byram, heard Mr. Byram yell in the background "suicide by
13  cop." The 911 operator then updated the dispatch to indicate a potential "suicide by
14  cop" situation. The Deputies then requested additional units, a field sergeant, and
15  MET to respond to the Byram residence. Deputy Runge assigned himself to the call
16  to support.

17  Deputies Runge, Lopez-Munoz, and Cervantes responded to the residence and
18  initially convened down the street from the Byram residence where a tactical plan was
19  discussed. Deputies Runge, Lopez-Munoz, Cervantes and Sergeants James and
20  Pereida (collectively, "Responding Deputies") then arrived at the Byram residence
21  where they made contact with Mrs. Byram after knocking on the front door.
22  Responding Deputies could hear her two babies ("S.B." and "N.B.") crying and
23  screaming inside the residence. Mrs. Byram informed the Responding Deputies that
24  she believed Mr. Byram had left the residence.

25  Based on the exigent circumstances of Mr. Byram's alleged domestic abuse,
26  Responding Deputies decided to conduct a protective sweep of the Byram residence
27  to protect the safety of Mrs. Byram, the two infants and the Responding Deputies.

28  While conducting the protective sweep, Deputies encountered Mr. Byram in

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

the backyard, where he was hiding in an unlit portion on the side of the house attempting to gain access through a window. Upon encountering Mr. Byram, he stood up brandishing a four (4) foot sword which he swung wildly and cursed and screamed at the Responding Deputies. Mr. Byram began to immediately approach the Responding Deputies swinging the sword. Responding Deputies gave Mr. Byram several commands to stop advancing towards Deputies and to drop his sword. Mr. Byram ignored the Responding Deputies' commands and continued to approach the deputies screaming "shoot me" along with racial slurs.

Responding Deputies were at the entrance to the side yard of the Byram residence, with the pool behind them, which made repositioning impossible. As Mr. Byram continued to approach the deputies to within seven (7) to ten (10) feet, Deputy Runge fired his 9mm service pistol, while simultaneously Deputy Lopez-Munoz fired his 40mm Baton Launcher at Mr. Byram. Deputy Runge's shot struck Mr. Byram in the head and Mr. Byram fell to the ground. Deputies immediately rendered aid until Los Angeles Fire Department responded to the location and transported him to the nearest hospital where he was pronounced dead upon arrival.

Following the shooting, Mrs. Byram and S.B. were led away from the residence and put into the back of a patrol vehicle by Deputy Alcantara. N.B was still asleep in her crib and was eventually brought to the vehicle to join Mrs. Byram and S.B. The three were then transported to the Sheriff's Station where they put in a room and provided with toys and mats for the children. Mrs. Byram was questioned by detectives before being released approximately six (6) hours after the shooting.

The Justice System Integrity Division of the Los Angeles County District Attorney's Office conducted an extensive investigation into the incident and concluded that the Deputy Runge used acted lawfully in self-defense and defense of others when he fired his weapon.

/ / /

/ / /

II.   **PLAINTIFF'S CLAIMS**

    A.    **Claim 1:   Excessive Force (42 U.S.C. § 1983) Against Defendant Deputy Runge.**

        a.    **Elements Required to Establish Claim 1:**

            (1)    Defendant Deputy Runge used excessive force, under the circumstances known to him, when he attempted to make a lawful arrest Mr. Byram, defend himself and others, and attempted to stop Mr. Byram from fleeing or escaping.

(*See* Ninth Cir. Manual of Model Civil Jury Instructions No. 9.25 (2023) - Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Excessive Force.)

        b.    **Key Evidence in Opposition to Claim 1:**

            (1)    Defendant Deputy Runge was responding to a call for service regarding domestic violence at the Byram residence.

            (2)    Mrs. Byram informed the Responding Deputies that Mr. Byram had left the premises.

            (3)    During a protective sweep of the Byram residence, Responding Deputies encountered Mr. Byram in the backyard.

            (4)    The lay out of the back yard was such that when Mr. Byram was encountered by Deputies Runge, Lopez-Munoz and Cervantes, retreat or repositioning was impossible.

            (5)    Once spotted by Responding Deputies, Mr. Byram yelled racial slurs and began to approach them swinging a four (4) foot sword.

            (6)    Deputies commanded Mr. Byram to stop and drop the sword, but Mr. Byram continued to approach and ignored

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

5

all of the deputies' commands.

(7)    Deputy Runge had mere seconds to determine the type and amount of force that reasonably appeared necessary.

(8)    Defendant Deputy Runge and fellow deputies were in fear for their lives.

(9)    Mr. Byram created the dangerous situation by brandishing a sword and swinging it in a threatening manner as he ignored deputies' commands and advanced towards them.

(10)    Defendant Deputy Runge used his service pistol once to stop Mr. Byram.

(11)    Defendant Deputy Runge used reasonable force and acted lawfully at all times.

(12)    Mr. Byram was provided immediate medical treatment.

(13)    Defendant Deputy Runge did not violate the Decedent's constitutional rights.

**B.    Claim 2: Denial of Familial Relationship (42 U.S.C. § 1983) Against Defendant Deputy Blake Runge**

**a.    Elements Required to Establish Claim 2:**

(1)    Plaintiffs had an enduring parent-child relationship with Mr. Byram;

(2)    Defendant Deputy Runge acted under color of state law in a manner that shocks the conscience; and

(3)    Defendant Deputy Runge acted with a purpose to harm Mr. Byram unrelated to legitimate law enforcement objectives.

(*See* Ninth Circuit Model Civil Jury Instructions §§ 9.1, 9.32; *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018); *Porter v. Osborn*, 546 F.3d 1131, 1137-38 (9th Cir. 2008); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

/ / /

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

b.    **Key Evidence in Opposition to Claim 2:**

(1)    Mrs. Byram did not have parent-child relationship with Mr. Byram.

(2)    During the majority of A.B.'s life, Mr. Byram did not have care, custody, or parental rights over him.

(3)    During A.B.'s formative years, Mr. Byram was not stable financially, emotionally, and mentally.

(4)    Mr. Byram only saw A.B. a couple times a year.

(5)    Defendant Deputy Runge had no time to deliberate because Mr. Byram acted violently immediately upon being encountered and advanced towards the deputies.

(6)    Defendant Deputy Runge observed Mr. Byram wield a sword in a threatening manner as Mr. Byram approached deputies.

(7)    Mr. Byram failed to comply with deputies' commands to stop, drop the sword, and show his hands.

(8)    Deputies' lives were in immediate danger.

(9)    Defendant Deputy Runge shot Mr. Byram once.

(10)    Defendant Deputy Runge's actions do not shock the conscience and were necessary to defuse a dangerous situation.

(i)    Please see Key Evidence in Opposition to Claim 1.

C.    **Claim 3: Unlawful Detention (42 U.S.C. § 1983) Against Defendant Deputy Brenda Alcantara**

a.    **Elements Required to Establish Claim 3:**

(1)    Defendant Deputy Alcantara seized Mrs. Byram's person;

(2)    In seizing Mrs. Byram's person, Deputy Alcantara acted intentionally; and

7

(3)     The seizure was unreasonable.

(*See* Ninth Circuit Model Civil Jury Instructions §§ 9.20 (2023) – Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Generally).

   **b.   Key Evidence in Opposition to Claim 3:**

(1)     Defendant Deputy Alcantara had information that the initial call to the Byram residence consisted of domestic violence.

(2)     Defendant Deputy Alcantara did not know who the aggressor was in regards to the domestic violence.

(3)     Back up was requested after a deputy involved shooting had occurred.

(4)     Upon arriving to the Byram residence, Defendant Deputy Alcantara did not know Mrs. Byram's role in the deputy involved shooting.

(5)     Mrs. Byram was not allowed back into the home in order to preserve the evidence at the scene.

(6)     Mrs. Byram and her children were escorted into Deputy Alcantara's patrol car to allow the fire department easier access to transport Mr. Byram to the nearest hospital and because the temperature was too cold for Mrs. Byram and her children to sit outside.

(7)     While Mrs. Byram and her children were in the patrol car, they were offered to go to the Palmdale station until investigators could speak to her.

(8)     Mrs. Byram voluntarily signed the transportation forms to be escorted, along with her children to the Palmdale station.

(9)     As soon as investigators took Mrs. Byram's statement, she

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

and her children were able to and did leave the Palmdale station.

(10)    Mrs. Byram was only detained for less than six (6) hours.

**D.    Claim 4: U.S.C. § 1983 Municipal Liability for Unconstitutional Custom, Practice or Policy Against Defendant County of Los Angeles**

a.    **Elements Required to Establish Claim 4:**

(1)    The officer Defendants acted under the color of state law;

(2)    The officer Defendants deprived Mr. Byram and Plaintiffs of their rights under the Fourth Amendment of the United States Constitution when they shot Mr. Byram;

(3)    Defendant Deputy Runge acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the County of Los Angeles; and

(4)    The County of Los Angeles' official policy or widespread or longstanding practice or custom caused/was the moving force that caused the deprivation of Mr. Byram and Plaintiffs' rights by Defendant Deputy Runge.

(*See* Ninth Cir. Manual of Model Civil Jury Instructions No. 9.5 (2023) - Section 1983 Claim Against Local Governing Body Defendants Based on Unlawful Official Policy, Practice, or Custom – Elements and Burden of Proof.)

b.    **Key Evidence in Opposition to Claim 4:**

(1)    Plaintiffs have no evidence of any custom, practice or policy that caused any injury to them.

(2)    Deputy Defendants did not act pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant County of Los Angeles (the "County").

(3)    Defendant County did not and does not have any inadequate

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

9

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

policy, practice or custom that caused Plaintiffs' injuries.

    (4)    The Deputy Defendants' actions were objectively reasonable given the circumstances.

    (5)    The Deputy Defendants did not violate the Plaintiffs' constitutional rights.

        (i)    Please see Key Evidence in Opposition to Claims 1-3.

    (6)    Because Plaintiffs' claims against Defendant Deputies fail, there is no underlying constitutional violation to support Plaintiffs' Monell claims.

    (7)    There can be no Monell claim without an underlying constitutional violation by a deputy.

**E.    Claim 5: 42 U.S.C. § 1983 Municipal Liability for Inadequate Training Against Defendant County of Los Angeles**

**a.    Elements Required to Establish Claim 5:**

    (1)    The acts of Deputy Defendants deprived Plaintiff of a Constitutional right under the United States Constitution;

    (2)    Defendant Deputies acted under the color of state law;

    (3)    The training policies of the County were not adequate to train its police officers to handle the usual and recurring situations with which they must deal;

    (4)    The County was deliberately indifferent to the known or obvious consequences of its failure to train its police officers adequately; and

    (5)    The failure of the County to provide adequate training caused or played a substantial part in causing the deprivation of Mr. Byram and Plaintiffs' rights.

(*See* Ninth Cir. Manual of Model Civil Jury Instructions No. 9.8 (2023) -

Section 1983 Claim Against Local Governing Body Defendants Based on a Policy that Fails to Prevent Violations of Law or a Policy of Failure to Train – Elements and Burden of Proof.)

    **b.**    **Key Evidence in Opposition to Claim 5:**

        (1)    Defendant Deputy Runge received adequate training on subject matters relevant to the facts of this action, including on Use of Force;

        (2)    Defendant Deputy Runge's actions during all relevant times were in accordance with the training they received;

        (3)    Plaintiffs have failed to establish that Defendant Deputy Runge was not adequately trained, nor have they proven that any alleged failure to train caused or contributed to their injuries;

        (4)    The deputies' actions were objectively reasonable given the circumstances; and

        (5)    The deputies did not violate Mr. Byram and Plaintiffs' constitutional rights.

            (i)    Please see Key Evidence in Opposition to Claims 1-4.

**F.**    **Claim 6: 42 U.S.C. § 1983 Municipal Liability – Ratification of Civil Rights Violations Against Defendant County of Los Angeles**

    **a.**    **Elements Required to Establish Claim 6:**

        (1)    Defendant Deputies acted under the color of state law;

        (2)    The acts of the Defendant Deputies deprived Plaintiffs of a Constitutional right under the United States Constitution;

        (3)    A specifically named final policymaker acted under the color of state law;

        (4)    A specifically named final policymaker had final policy

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

making authority concerning the acts of Defendant Deputies;

(5) A specifically named final policymaker ratified Defendant Deputies' acts, that is, the specifically named final policymaker knew of and specifically made a deliberate choice to approve the deputies' acts and the basis for it.

(*See* Ninth Cir. Manual of Model Civil Jury Instructions No. 9.7 (2023) - Section 1983 Claim Against Local Governing Body Defendants Based on Ratification – Elements and Burden of Proof.)

**b.    Key Evidence in Opposition to Claim 6:**

(1) Defendant Deputies did not violate Plaintiffs' constitutional rights.

(i) Please see Key Evidence in Opposition to Claims 1-5.

(2) Defendant Deputy Runge's actions were objectively reasonable given the circumstances.

(3) Plaintiffs have not identified any County final policymaker that knew of and specifically made a deliberate choice to approve the officers' and the basis for it.

(4) Plaintiffs have no evidence of any ratification by the County.

(5) Because Plaintiffs' claims against the Defendant Deputies fail, there is no underlying constitutional violation to support Plaintiffs' Monell claims.

**G.    Claim 7: American With Disabilities Act (42 U.S.C. § 12131) Against Defendants Deputy Runge and County of Los Angeles:**

**a.    Elements Required to Establish Claim 7:**

(1) Mr. Byram was an individual with a disability;

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

(2)    Mr. Byram is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities;

(3)    Mr. Byram was either excluded from participation in or denied the benefits of the public entity's services, programs or activities; and

(4)    Such exclusion, denial of benefits or discrimination was by reason of his disability.

(*See Sheehan v. City and Cty. Of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007); *C.B. v. Sonora Sch. Dist.*, 691 F.Supp.2d 1123, 1158 (E.D. Cal. 2009).)

**b.    Key Evidence in Opposition to Claim 7:**

(1)    Plaintiff failed to prove that Mr. Bryam was a qualified individual under the ADA.

(2)    Plaintiff has failed to prove that the County failed to provide a reasonable accommodation.

(3)    Mr. Byram was not excluded, denied benefits or discriminated against by reason of any disability.

(4)    Deputy Runge is an individual and not a public entity.

**H.    Claim 8: Battery Against Defendants Deputy Runge and County of Los Angeles:**

**a.    Elements Required to Establish Claim 8:**

(1)    That the Defendant Deputy Runge intentionally touched Mr. Byram or caused Mr. Byram to be touched;

(2)    that Defendant Deputy Runge used unreasonable force on Mr. Byram;

(3)    That Mr. Byram did not consent to the use of that force;

(4)    That Mr. Byram was harmed; and

(5)    That Defendant Deputy Runge's use of unreasonable force was a substantial factor in causing Mr. Byram harm.

*See* Judicial Council of California Civil Jury Instruction No. 1305A.

    **b.    Key Evidence in Opposition to Claim No. 8:**

        (1)    Same as Key Evidence in Opposition to Claims 1-7.

**I.    Claim 9: Negligence Against Defendants Deputy Runge and County of Los Angeles:**

    **a.    Elements Required to Establish Claim 9:**

        (1)    That Defendant Deputy Runge was a peace officer;

        (2)    That Defendant Deputy Runge used force to against Mr. Byram;

        (3)    That the amount of force used by Defendant Deputy Runge was unreasonable;

        (4)    That Mr. Byram was harmed; and

        (5)    That Defendant Deputy Runge's use of unreasonable force was a substantial factor in causing Mr. Byram's harm.

*See* Judicial Council of California Civil Jury Instruction No. 400.

    **b.    Key Evidence in Opposition to Claim No. 9:**

        (1)    Same as Key Evidence in Opposition to Claims 1-8.

**J.    Claim 10: False Imprisonment by only Plaintiff Ursula Byram Against Defendant Deputy Alcantara:**

    **a.    Elements Required to Establish Claim 10:**

        (1)    Defendant Deputy Alcantara intentionally deprived Plaintiff Ursula Byram of her freedom of movement by use of physical barriers/force/threats of force/fraud/deceit and/or unreasonable duress;

        (2)    That the detention compelled Mrs. Byram to stay or go somewhere for some appreciable time, however short;

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

(3)     Mrs. Byram did not consent;

(4)     That Mrs. Byram was actually harmed; and

(5)     Defendant Deputy Alcantara's conduct was a substantial factor in causing harm to Mrs. Byram

*See* Judicial Council of California Civil Jury Instruction No. 1400.

**b.     Key Evidence in Opposition to Claim No. 10:**

(1)     Same as Key Evidence in Opposition to Claims 1-9.

(2)     Plaintiff Ursula Byram admitted she was a victim of a crime.

(3)     Plaintiff Ursula Byram and her children were escorted to Defendant Deputy Alcantara's patrol car for their safety and further investigation.

(4)     After the deputy involved shooting, the scene needed to be secured.

(5)     Investigators needed to speak with Plaintiff Ursula Byram regarding the series of events that lead to the deputy involved shooting.

(6)     Plaintiff voluntarily signed the transportation forms to be transported, with her children, to the Palmdale station until investigators could speak with her.

**B.     Claim No. 11: Bane Act (Civil Code § 52.1) Against Defendants Deputy Runge and the County of Los Angeles:**

**a.     Elements Required to Establish Claim No. 11:**

(1)     Defendant Deputy Runge acted violently against Mr. Byram to prevent him from exercising his right to free speech and assembly, or to retaliate against Mr. Byram for having exercised his right to free speech and assembly;

(2)     Defendant Deputy Runge intended to deprive Mr. Byram

1   of his enjoyment of the interests protected by the right to

2   free speech and assembly;

3   (3)   Mr. Byram was harmed; and

4   (4)   Defendant Deputy Runge's conduct was a substantial

5   factor in causing Mr. Byram's harm.

6   *See* Judicial Council of California Civil Jury Instruction No. 3066.

7   **b.   Key Evidence in Opposition to Claim No. 11:**

8   (1)   Plaintiffs cannot prove that Defendant Deputy Runge

9   acted with intent to deprive him of his rights.

10   (i)   Please see Key Evidence in Opposition to Claims 1-

11   10.

12   (2)   Mr. Byram was not exercising his right to protest or free

13   speech.

14   (3)   There was no underlying constitutional violation, and the

15   *Civil code* section 52.1 claim thus fails as a matter of law;

16   (4)   Plaintiffs cannot establish vicarious liability against the

17   County based on the conduct of one of its officers, as

18   required by *Government Code Section* 815.2;

19   (5)   There is not intentional interference or attempted

20   interference with a state or federal constitutional or legal

21   right. (*Allen v. City of Sacramento*, 234 Cal.Ap..4th 41, 67

22   (Ct. App. 2015).

23   **III.   DEFENDANTS' AFFIRMATIVE DEFENSES**

24   **A.   First Affirmative Defense: Defendant Deputy Runge is Entitled to**

25   **Qualified Immunity from Plaintiff's Section 1983 Claims.**

26   **a.   Elements Required to Establish First Affirmative Defense:**

27   (1)   The Defendant Deputies did not deprive Mr. Byram or

28   Plaintiffs of their constitutional rights;

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

16

(2)    The Defendant Deputies did not violate a clearly established right of Mr. Byram or Plaintiffs; and

(3)    A reasonable deputy faced with the circumstances facing Defendant Deputies could have believed his or her conduct was lawful.

(*See Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993); *Reichle v. Howards*, 566 U.S. 658 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Revere v. Massachusetts Gen. Hosp*., 463 U.S. 239, 244 (1983); *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1414 (9th Cir. 1986); *Tatum v. City & Cty. of San Francisco,* 441 F.3d 1090, 1095, 1098-99 (9th Cir. 2006); *Baculanta v. Baily*, 2012 WL 5456395, at *2 (C.D. Cal. 2012); *Borges v. City of Eureka*, 2017 WL 363212, at *7 (N.D. Cal. 2017).)

**b.    Evidence in Support of the First Affirmative Defense:**

(1)    The facts as stated above in Section I.

(2)    Defendant Deputy Runge did not deprive Mr. Byram of his rights under the United States Constitution;

(3)    Defendant Deputy Runge did not violate a clearly established constitutional right of Mr. Byram of which a reasonable deputy would have known; and

(4)    Mr. Byram did not have a clearly established right to not be subjected to use of force by the Defendant Deputy Runge after he began to approach and swing a sword at deputies.

(5)    Defendant Deputies believed their conduct was lawful.

**B.    Second Affirmative Defense: Self-Defense/Defense of Others.**

**a.    Elements Required to Establish Defendants' Second Affirmative Defense.**

(1)    Defendant Deputy Runge reasonably believed that Mr. Byram was going to harm himself, deputies and/or others;

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

17

1          and

2      (2)    Deputy Defendants used only the amount of force that was

3              reasonably necessary to control the Plaintiff and protect

4              themselves and others.

5      (*See* Ninth Cir. Manual of Model Civil Jury Instructions No. 9.25 (2023) -

6  Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Excessive

7  Force; Judicial Council of California Civil Jury Instructions § 1304 (2022); Civ. C.

8  50.)

9          **b.    Evidence in Support of Defendants' Second Affirmative**

10             **Defense.**

11     (1)    The facts as stated above in Section I.

12     (2)    The force used by the Defendant Deputy Runge was in

13             response to Mr. Byram's aggression and threatening

14             conduct; and

15     (3)    Deputies ceased using force when Mr. Byram no longer

16             posed a threat.

17     (4)    Defendant Deputy Runge fired only one (1) shot.

18     (5)    Defendant Deputy Runge observed Mr. Byram approaching

19             deputies while wielding a sword.

20     (6)    Defendant Deputy Runge and other deputies ordered Mr.

21             Byram to stop advancing and drop his sword.

22     (7)    Mr. Byram failed to abide to deputies' commands.

23     (8)    Mr. Byram got within 10 feet of deputies when Defendant

24             Deputy Runge shot Mr. Byram.

25  / / /

26  / / /

27  / / /

28  / / /

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

18

**C.**   **Third Affirmative Defense: The Officers Are Immune Under California *Penal Code* § 196—Justifiable Homicide.**

    **a.**   **Elements Required to Establish Defendants' Third Affirmative Defense.**

        (1)   The circumstances reasonably created a fear of death or serious bodily harm to the deputies or others; and

        (2)   The deputies necessarily committed the homicide against Mr. Byram in the discharge of their legal duties.

*See* Cal. Pen. Code § 196; *Brown v. Ransweiler*, 171 Cal.App.4th 516, 533 (2009); *Gilmore v. Superior Court*, 230 Cal.App.3d 416, 421 (1991) (justifiable homicide is privileged act that precludes all tort liability arising therefrom).

    **b.**   **Evidence in Support of Defendants' Third Affirmative Defense.**

        (1)   The facts as stated above in Section I.

        (2)   Same as Evidence in Support of Defendants' First and Second Affirmative Defense.

**D.**   **Fourth Affirmative Defense: Contributory Negligence**

    **a.**   **Elements Required to Establish Defendants' Fourth Affirmative Defense.**

        (1)   That Plaintiffs were negligent;

        (2)   That Plaintiffs and/or others' negligence was a substantial factor in causing his harm.

*See* CACI 405 (2009).

    **b.**   **Evidence in Support of Defendants' Fourth Affirmative Defense.**

        (1)   The facts as stated above in Section I.

        (2)   Mr. Byram willfully ignored deputies' commands to stop

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

1    advancing towards deputies.

2           (3)    Mr. Byram willfully ignored deputies' commands to drop

3    his sword.

4    **IV.    <u>ANTICIPATED EVIDENTIARY ISSUES</u>**

5        1.    Defendants' Motion *in Limine* to preclude evidence or other claims,

6    lawsuits, settlements, verdicts, judgments, complaints, administrative investigations

7    or proceedings and/or other alleged incidents concerning defendants or other

8    members of law enforcement and LASD.

9    **V.    <u>ISSUES OF LAW</u>**

10        **A.    The Deputy Defendants Did Not Use Excessive Force On Mr.**

11            **Byram.**

12        Plaintiffs allege that the amount of force used by Defendant Deputy Runge to

13    defend himself and others was unreasonable and excessive. This unreasonable use of

14    force is allegedly a substantial factor in causing Plaintiffs' injury. As argued more

15    fully below, Defendant Deputy Runge did not use excessive force on Mr. Byram and

16    acted reasonably at all relevant times given the totality of the circumstances with

17    which they were confronted.

18        Determining whether the force used to affect a particular seizure is reasonable

19    under the Fourth Amendment requires a careful balancing of the nature and quality of

20    the intrusion on the individual's Fourth Amendment interests against the

21    countervailing governmental interests at stake.  *Graham v. Connor* (1989) 490 U.S.

22    386, 396.  The right to make an arrest or investigatory stop necessarily carries the

23    right to use some degree of physical coercion or threat thereof to effect it.  *Ibid.*

24    Because the test of reasonableness under the Fourth Amendment is not capable of

25    precise definition or mechanical application, its proper application requires careful

26    attention to the facts and circumstances of each case.  Such attributes include the

27    following: the severity of the crime at issue, whether the suspect poses an immediate

28    threat to the safety of the Deputies or others, and whether he is actively resisting arrest

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

1  or attempting to evade arrest by flight. *Ibid.*

2  The most crucial factor is whether the suspect posed an immediate threat to the

3  safety of the officers or others. *Bryan v. MacPherson* (9th Cir. 2010) 630 F.3d 805,

4  826. The reasonableness of a particular use of force must be judged from the

5  perspective of a reasonable officer on the scene rather than with the 20/20 vision of

6  hindsight. *Graham*, *supra*, 490 U.S. at 396. The calculus of reasonableness must

7  embody allowance for the fact that police officers need to make split-second

8  judgments—intense, uncertain, and rapidly evolving circumstances—about the

9  amount of force necessary in a particular situation. *Id.* at 396-97. The reasonableness

10  inquiry in an excessive force case is objective: the question is whether the deputies'

11  actions are objectively reasonable in light of the facts and circumstances confronting

12  them, without regard to their underlying intent or motivation. *Id.* at 397.

13  Defendant Deputy Runge responded to the Byram residence and was

14  conducting a protective sweep along with fellow deputies, after it was determined that

15  a crime had been committed. Deputies first encountered Mr. Byram while securing

16  the outside yard, when Mr. Byram popped out from a crouching position, seemingly

17  hiding from deputies. When Mr. Byram stood to his full height, deputies observed

18  that he was wielding a sword and swung it in a threatening manner. Deputies gave

19  Mr. Byram commands to stop and drop his sword. However, Mr. Byram advanced

20  towards deputies swinging the sword and yelling racial slurs. All deputies deemed

21  Mr. Byram a threat to himself and deputies' lives. There was no opportunity for de-

22  escalation tactics given Mr. Byram's aggressive and non-responsive manner. Also,

23  there was no room for the deputies to reposition given the layout of the backyard

24  where they encountered Mr. Byram. Deputy Lopez-Munoz issued a warning and fired

25  his 40mm baton launcher at Mr. Byram in efforts to stop the advancement. Almost

26  simultaneously, Defendant Deputy Runge fired one shot at Mr. Byram with his

27  service pistol. Defendant Deputy Runge used adequate force that he determined to be

28  necessary and continued to assess his actions in an attempt to stop Mr. Byram and

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

1  protect himself and his fellow deputies. Defendant Deputy Runge did not apply
2  greater force than was necessary; once Mr. Byram was no longer in possession of the
3  weapon, medical treatment was provided. There were no alternative methods
4  available to respond to the situation quickly and without warning because Mr. Byram
5  was wielding a sword in a threatening manner as he approached deputies.

6    In sum, the type and amount of force Defendant Deputy Runge used on Mr.
7  Byram was objectively reasonable under these circumstances.

8    **B.    Plaintiff's Municipal Claim against Defendant, County of Los**
9    **Angeles fail**

10    A plaintiff cannot prevail on a municipal liability claim in the absence of an
11  underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799
12  (1986).  Since the Deputy Defendants did not violate Plaintiffs' constitutional rights,
13  as discussed above, the Plaintiffs' municipal liability claim fails.

14    Under a *Monell* claim, local governing bodies can be held liable under § 1983
15  only where an alleged unconstitutional action implements or executes a policy
16  statement, ordinance, regulation, or decision officially adopted and promulgated by
17  that body's officers. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,
18  690 (1978).  A plaintiff must also demonstrate that, through its deliberate conduct, the
19  municipality was the moving force behind the injury alleged. *Bd. of Cty. Comm'rs of*
20  *Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997).  That is, a plaintiff must show
21  that the municipal action was taken with the requisite degree of culpability and must
22  demonstrate a direct causal link between the municipal action and the deprivation of
23  federal rights. *Id.*

24    For Plaintiffs to succeed on their municipal liability claim based on an
25  unconstitutional custom, policy, or practice, a plaintiff must show they possessed a
26  constitutional right of which they were deprived; the municipality had a policy; the
27  policy amounted to deliberate indifference to the plaintiff's constitutional right; and
28  the policy was the moving force behind the constitutional violation. *Plumeau v. Sch.*

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

*Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). Sporadic incidents are insufficient to establish a custom and practice claim. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Adell v. Las Vegas Metro Pol. Dept.*, 268 F.3d 924 (9th Cir. 2001).

Here, there is no evidence of an unconstitutional policy or widespread custom or practice which resulted in a violation of Plaintiffs' constitutional rights. As such, Plaintiffs' claim against Defendant County of Los Angeles based on Municipal liability is unsupported by the facts and evidence in this case, and therefore fails.

### C. Qualified Immunity Shields The Deputy Defendants From Liability For Plaintiff's 42 U.S.C. § 1983 Claims

Qualified immunity shield Deputy Defendants from liability. The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harassing litigation. *See Anderson v. Creighton*, 483 U.S. 637, 638-639 (1987). Qualified immunity shields a deputy from civil liability where the officer acts reasonably but makes a mistake of law or fact. *Lal v. Cal.*, 746 F.3d 1112, 1116 (9th Cir. 2014). A law enforcement officer is entitled to qualified immunity if a reasonable officer in his position *could* have believed that his conduct was lawful, and the defense may only be denied where *every* reasonable officer would have acted differently. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993); *Reichle v. Howards*, 566 U.S. 658 (2012). If government agents "of reasonable competence" could disagree on whether a chosen course of action is constitutional, "immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Importantly, the "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

There are two steps a court must decide in evaluating qualified immunity: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) whether that right was "clearly established" by law at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A district court has the discretion to decide which prong should be addressed first. *Pearson*, 555 U.S. at 236. If there is no constitutional violation, or a reasonable officer could have believed his conduct was reasonable under the circumstances, the defendant is entitled to qualified immunity.

Here, Plaintiffs cannot establish that any of their constitutional rights were violated. Moreover, Plaintiffs cannot provide support for the argument that the rights they allege to have been violated were clearly established. Mr. Byram did not have a clearly established right against being subjected to use of force by Defendant Deputy Runge after Mr. Byram brandished his sword towards deputies in a threatening manner. Therefore, Defendant Deputy Runge is shielded by the doctrine of qualified immunity.

### D.    The Bane Act Claim Fails

As set forth above, Plaintiffs cannot establish a violation of his constitutional rights; thus, his Bane Act claim fails as a matter of law. *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 (2015).

To prevail on a Bane Act claim, a plaintiff must show that by threats, intimidation or coercion, the defendant acted violently to prevent the plaintiff from exercising his constitutional rights or caused the plaintiff to reasonably believe that if he exercised his constitutional rights the defendant would commit violence against him; the defendant intended to deprive the plaintiff of his enjoyment of the interests protected by the right; the plaintiff was harmed; and the defendant's conduct was a substantial factor in causing the plaintiff's harm.  Judicial Counsel of California Advisory Committee of Civil Jury Instructions ("CACI") § 3066; Civ. C. § 52.1.

This claim fails because Plaintiffs were not attempting to exercise their first

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

1  amendment rights. Plaintiffs cannot show that the deputies used excessive force to

2  prevent them from exercising their rights. As such, there is no evidence that any of

3  the deputies specifically intended to violate any of Plaintiffs' constitutional rights, and

4  thus any claim fails under *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th

5  Cir. 2018). There is no evidence of any threats, intimidation, or coercion on the part

6  of any Defendant deputy.

7        **E.    Plaintiff Battery Claims Fail**

8        To prevail on a battery claim against a peace officer, a plaintiff must prove the

9  officer used unreasonable force. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526-28

10  (2009); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998); CACI 1305.

11  An officer is not liable for battery if his actions were objectively reasonable based on

12  the facts and circumstances confronting the officer, a test highly deferential to the

13  officer's need to protect himself and others. *Brown*, *supra*, 171 Cal.App.4th at 526.

14  Police officers are "not similarly situated to the ordinary battery defendant and need

15  not be treated the same." *Id.* at 527. Police officers are "entitled to the even greater

16  use of force than might be in the same circumstances required for self-defense." *Id.*

17  In calculating whether the amount of force was excessive, a trier of fact must

18  recognize that officers are often forced to make split-second judgments, in tense

19  circumstances, concerning the amount of force required. *Id.* at 528.

20        Similar to the above contentions, Defendant Deputies were in fear for their lives

21  as Mr. Byram approached them. Defendant Deputy Runge had only seconds to react

22  and used reasonable force in defense of himself and others. Given Mr. Byram's actions

23  and the deputies reasonable response, Defendants are not liable under Plaintiffs' cause

24  of action for battery.

25        **F.    Plaintiff's Negligence Claim Fails**

26        To prove negligence, a plaintiff must show the defendant had a duty to use due

27  care, he breached that duty, and the breach was the proximate cause of the injury.

28  *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013). The reasonableness of an

**HURRELL CANTRALL LLP**
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

officer's conduct is determined in light of the totality of circumstances. *Id.* As long as an officer's conduct falls within the range of conduct that is reasonable, there is no requirement that he choose the most reasonable action or the conduct that is the least likely to cause harm to avoid liability for negligence. *Id.* at 632. Officers have a degree of discretion as to how they choose to address a particular situation. *Id.*

Here, the Defendant Deputies acted reasonably under the totality of the circumstances. Specifically, Defendant Deputies were in fear for their lives as Mr. Byram approached them. Defendant Deputy Runge had only seconds to react and used reasonable force in defense of himself and others. Further, the County is also immune from liability pursuant to Gov. Code section 820.2.

## G.    Mrs. Byram's Unlawful Detainment and False Imprisonment Claims Fail

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, … in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (omissions in original) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). This may occur through coercion, physical force, or a show of authority. United States v. Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997). A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437 (1991); *see also* Dees v. Cty. of San Diego, 960 F.3d 1145, 1154 (9th Cir. 2020) (holding that seizure occurs if, in view of all circumstances surrounding incident, reasonable person would have believed she was not free to leave). A seizure, however, "does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* at 434; *see* United States v. Washington, 490 F.3d 765, 770 (9th Cir.

2014). The general rule is that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). In addition, a seizure "requires either physical force … or, where that is absent, submission to the assertion of authority." California v. Hodari D., 499 U.S. 621, 626 (1991); *see also* United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013).

In determining whether a reasonable person would have felt free to ignore police presence, the Ninth Circuit considers five factors: "(1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or nonpublic setting; (4) whether the officer's officious or authoritative manner would imply that compliance would be compelled; and (5) whether the officers advised the detainee of his right to terminate the encounter." United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009) (quoting United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004)).

Here, Mrs. Byram was never arrest nor held in a jail cell. She was able to interact with deputies through out the process and even voluntarily signed a release allowing her to be transported to Palmdale station.

### H.     Plaintiffs' ADA Claim is Inapplicable

Courts have recognized at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees. *Sheehan v. City & Cnty. Of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

27

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000

1   To state a claim under Title II of the ADA, a plaintiff generally must show:

2   (1) she is an individual with a disability; (2) she is otherwise qualified to participate

3   in or receive the benefit of a public entity's services, programs or activities; (3) she

4   was either excluded from participation in or denied the benefits of the public entity's

5   services, programs or activities or was otherwise discriminated against by the public

6   entity; and (4) such exclusion, denial of benefits or discrimination was by reason of

7   her disability. *Id.* In a Title II claim grounded in a public entity's alleged failure to

8   provide a reasonable accommodation under 28 C.F.R. § 35.130(b)(7), the plaintiff

9   bears the initial burden of producing evidence of the existence of a reasonable

10  accommodation. *See Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir.2002). A

11  public entity may defeat a reasonable accommodation claim by showing "that

12  making the modifications would fundamentally alter the nature of the service,

13  program, or activity." 28 C.F.R. § 35.130(b)(7); *see Zukle v. Regents of Univ. of*

14  *Cal.,* 166 F.3d 1041, 1047 (9th Cir.1999).

15  A plaintiff cannot bring an ADA or Rehabilitation Act suit against individual

16  officials, because the proper defendant in such cases is the public entity responsible

17  for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877,

18  879, 163 L. Ed. 2d 650 (2006); *Ramirez v. Tilton*, 2010 WL 889988, at *2 (N.D.

19  Cal. Mar. 8, 2010).

20  Here, Plaintiffs improperly name Deputy Runge as a defendant in their cause

21  of action. Since he is an individual, he is not a proper defendant in such a cause of

22  action.

23  Further, even assuming Plaintiffs had sued the correct defendants, their

24  allegations fall short of stating a viable claim under the ADA. Plaintiffs assert that

25  defendants failed to properly train deputies to respond and interact peacefully with

26  individuals with mental health impairments suffering from mental health crises and

27  failed to follow procedures for de-escalation and non-lethal force interactions, but

28  they does not allege facts that show Mr. Byram was excluded from participation in,

1  or denied the benefits of, any service or programs offered by the County because of

2  his disability, or that he was subjected to any type of discrimination by reason of his

3  disability. As such, Plaintiffs ADA claim fails.

4  **VI.**    <u>**BIFURCATION OF ISSUES**</u>

5       Defendants also reserve the right to request bifurcation of liability against the

6  Deputy Defendants in the first phase, and liability against the County of Los Angeles

7  as to the Plaintiffs' *Monell* claim in the second phase, assuming a jury finds the

8  Deputy Defendants violated Plaintiffs' constitutional rights. Defendants also request

9  that the amount of punitive damages be subject to a second bifurcation if the jury

10 determines that punitive damages are justified.

11 **VII.**    <u>**JURY TRIAL**</u>

12      All issues applicable to Defendants are triable to a jury, and a Demand for Jury

13 Trial was timely filed by Defendants.  Defendants hereby reiterate their demand for a

14 jury trial in this matter.

15 **VIII.** <u>**ATTORNEYS' FEES**</u>

16      Plaintiffs are seeking attorney's fees in this matter under 42 U.S.C. § 1988.

17 **IX.**    <u>**ABANDONMENT OF ISSUES**</u>

18      None by Defendants.  To date, Plaintiffs have not informed Defendants of any

19 abandonment of issues.

20 DATED:  November 12, 2024      HURRELL CANTRALL LLP

21

22

23             By:      */s/ Jordan S. Stern*

24                  THOMAS C. HURRELL

                  JORDAN S. STERN

25                  NICOLE G. ORTEGA

26                  Attorneys for Defendants, COUNTY OF

                  LOS ANGELES, BLAKE RUNGE and

27                  BRENDA ALCANTARA

28

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE  (213) 426-2000