Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Jordan S. Stern, State Bar No. 311527
E-Mail: jstern@hurrellcantrall.com
Nicole G. Ortega, State Bar No. 345882
E-Mail: nortega@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, BLAKE RUNGE and BRENDA ALCANTARA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| URSULA BYRAM, S.B. by and through guardian ad litem TIMOTHY BYRAM, N.B. by and through guardian ad litem TIMOTHY BYRAM, and A.B. by and through guardian ad litem KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA,<br><br>Defendants. | Case No. 2:23-cv-09285-KS<br><br>[Assigned to Hon. Karen L. Stevenson, Courtroom 580]<br><br>**JOINT NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 2 TO PRECLUDE ANY REFERENCE OR EVIDENCE OF ALLEGED "DEPUTY GANGS" AND "DEPUTY CLIQUES/SUBGROUPS" (MOVING PARTY: DEFENDANTS)**<br><br>*[Filed Concurrently with the Declaration of Jordan S. Stern in Support of JMIL No. 2, Declaration of Cooper Alison-Mayne in Opposition to JMIL No. 2, and [Proposed] Order]*<br><br>Final Pretrial Conference/Hearing on Motions in *Limine*<br>Date:         January 21, 2025<br>Time:        10:00 a.m.<br>Courtroom: 580<br>Trial Date: February 10, 2025 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 21, 2025, at 10:00 a.m. in Courtroom "580" of the above entitled court, located at 255 E. Temple Street, Los Angeles, California 90012, Defendants COUNTY OF LOS ANGELES, DEPUTY BLAKE RUNGE and DEPUTY BRENDA ALCANTARA (collectively "Defendants") will move this Court, in *Limine* for an Order precluding Plaintiffs URSULA BYRAM, S.B. by and through guardian ad litem TIMOTHY BYRAM, N.B. by and through guardian ad litem TIMOTHY BYRAM, and A.B. by and through guardian ad litem KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram, (collectively "Plaintiffs") and their counsel from introducing at trial any evidence, references to evidence, witness testimony, contentions, or cross-examination relating to any alleged "deputy gangs," "cliques," and "subgroups." Defendants bring this Motion on the grounds that such evidence is irrelevant to the issues to be tried; it is inadmissible hearsay without an exception; it amounts to inadmissible character evidence; and such evidence would only serve to unduly prejudice Defendants, waste time, confuse the issues, and mislead the jury.

Defendants further move this Court to instruct Plaintiffs and their counsel and to require them to advise all witnesses:

1. Not to attempt to convey to the jury, directly or indirectly, any of the facts mentioned in this Motion without first obtaining permission of the Court outside the presence and hearing of the jury;

2. Not to make any reference to the fact that this Motion has been filed; and

3. To warn and caution each of Plaintiffs' witnesses to strictly follow the same instructions.

This motion is made following compliance with the meet and confer requirements of *Local Rule* 7-3. (See Declaration of Jordan S. Stern in Support of Joint Motion in *Limine* No. 2 ("Stern Decl."), ¶ 3.) This Motion is based upon the Memorandum of Points and Authorities served herewith, upon the pleadings and

1  papers on file herein, Declaration of Jordan S. Stern, and upon such other and further
2  oral argument and evidence as may be presented at the hearing on this Motion.
3
4  DATED: December 10, 2024          HURRELL CANTRALL LLP
5
6
7                                    By:    */s/ Jordan S. Stern*
                                          THOMAS C. HURRELL
8                                         JORDAN S. STERN
                                          NICOLE G. ORTEGA
9                                         Attorneys for Defendants, COUNTY OF
                                          LOS ANGELES, BLAKE RUNGE and
10                                        BRENDA ALCANTARA
11

HURRELL CANTRALL LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 426-2000

3

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This civil rights action arises out of Plaintiffs URSULA BYRAM, S.B. by and through guardian ad litem TIMOTHY BYRAM, N.B. by and through guardian ad litem TIMOTHY BYRAM, and A.B. by and through guardian ad litem KAITLYN HUMENCHUK, individually and as successors-in-interest to Everett Byram, (collectively "Plaintiffs") allegations that on February 10, 2023, at approximately 10:00 p.m., while Mr. Everett Byram ("Mr. Byram") was in possession of a sword, Defendant Deputy BLAKE RUNGE ("Deputy Runge") allegedly unreasonably shot Mr. Byram without a warning or command. Specifically, Plaintiffs allege the following causes of action: (1) excessive force (42 U.S.C. § 1983) against Deputy RUNGE; (2) denial of familial relationship (42 U.S.C. § 1983) against Deputy RUNGE; (3) unlawful detention (42 U.S.C. § 1983) against Deputy ALCANTARA; (4) unconstitutional custom or policy (42 U.S.C. § 1983) against the COUNTY OF LOS ANGELES ("COLA"); (5) failure to train (42 U.S.C. § 1983) against COLA; (6) ratification (42 U.S.C. § 1983) against COLA; (7) Americans with Disabilities Act (42 U.S.C. § 12132) against COLA and Deputy RUNGE; (8) battery against COLA and Deputy RUNGE; (9) negligence against COLA and Deputy RUNGE; (10) false imprisonment against Deputy ALCANTARA; and (11) violation of Cal. Civil Code § 52.1.

Defendants anticipate Plaintiffs may attempt to introduce into evidence at the time of trial that there exists "cliques" or "deputy gangs" within the Los Angeles County Sheriff's Department ("LASD"). Defendants expect that Plaintiffs' counsel will attempt to introduce this evidence to insinuate that Deputy Runge is affiliated with a "deputy gang" with a proclivity for violence.

Defendants seek to exclude such evidence as detailed below pursuant to the *Federal Rules of Evidence*, Rules 402, 403, 404 and 801, as this evidence is irrelevant, highly speculative, unduly prejudicial, inadmissible character evidence, designed to

4

inflame the jury with bias, as well as being inadmissible hearsay without an exception.

## II. ARGUMENTS

### A. EVIDENCE AT ISSUE: TESTIMONY REGARDING DEPUTY RUNGE'S ASSIGNMENT AT NORTH COUNTY CORRECTIONAL FACILITY, INSINUATING DEPUTY RUNGE BELONGS TO "IPA" AND "DEPUTY GANGS"/"CLIQUES."

During the deposition of the Deputy Runge, Plaintiffs' counsel questioned Deputy Runge about his involvement in deputy gangs. Specifically, Deputy Runge was asked if he has ever been a member of the Inclusive Province A Klansman I Am ("AKIA") ("IPA"). Plaintiffs claim there is a subject-based Ku Klux Klan deputy gang, known as IPA, which is involved in criminal activity within the Sheriff's department. Plaintiffs base these assertions solely on an unfounded article from *KnockLA* which alleges that the IPA operates out of the North County Correctional Facility (NCCF) in Castaic. While this article claims that former colleagues have confirmed Deputy Runge's membership in IPA, it fails to identify such colleagues or even provide evidence confirming IPA's existence. This *KnockLA* article, entitled "*LASD Deputy with Violent History Behind Latest Department Killing*," is highly prejudicial and makes wild accusations about Deputy Runge and the Sheriff's department having "gangs." *KnockLA* fails to corroborate such inflammatory statements with any evidence.

Given the *KnockLA* article claiming NCCF is home to the IPA, Plaintiffs have followed *KnockLA*'s article to claim that IPA exists within the Sheriff's department and falsely accuse Deputy Runge of being a member of IPA. Plaintiffs attempt to make this groundless connection between Deputy Runge and the alleged IPA gang, merely because Deputy Runge was briefly assigned to NCCF during the beginning of his career in the Sheriff's department. Plaintiffs associate IPA with other alleged deputy gangs such as the "Executioners" operating in Compton and the "Bandidos"

5

operating out of East Los Angeles. Again, these gang allegations are made without providing any evidence of their existence.

During his deposition, Deputy Runge denied being involved in any deputy gangs and having any tattoos that symbolize any association with a deputy group or gang. (Runge Depo., p.66:7-18; attached as Exh. A to Stern Decl.) Further, Plaintiffs have not obtained any evidence that the IPA exists or Deputy Runge was ever a member of said group. (Runge Depo., p.66:7-18; attached as Exh. A to Stern Decl., Deputy Runge's Response to Plaintiff's Request for Admission, p.3:23; p.4-10; attached as Exh. C to Stern Decl., Deputy Runge's Response to Plaintiff's Request for Production of Documents, p.2-5:1-13; attached as Exh. D to Stern Decl.).

Contrary to Deputy Runge's deposition testimony and all related discovery, Plaintiffs assert that Deputy Runge is a member of the Ku Klux Klan through the deputy gang IPA, which uses "violence and unreasonable force against those they are sworn to protect, as well as falsify reports, violating civil rights of hundreds of citizens of Los Angeles." (First Amended Complaint., p.7:7-17; attached as Exh. B to Stern Decl.) In addition, Plaintiffs have indicated that they intend to bring up the deputy "clique/gang" issue during trial.

### B. **ANY EVIDENCE CONCERNING "CLIQUES," "DEPUTY GANGS," DEFENDANT DEPUTY RUNGE'S ALLEGED "AKIA" OR "IPA" GANG MEMBERSHIP, ARE IRRELEVANT TO THE ISSUES BEFORE THIS COURT.**

*Federal Rules of Evidence*, Rule 402 provides that evidence which is not relevant is not admissible. *Fed. R. Evid.* 402; *United States v. Schaff*, 948 F.2d 501 (9th Cr. 1991). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. See *Fed. R. Evid.* Rule 401.

Any evidence or reference to "cliques" or "deputy gangs," are entirely irrelevant and speculative of any point Plaintiffs may seek to get across to the jury.

As demonstrated during Deputy Runge's depositions and discovery responses, any implication by Plaintiffs that Deputy Runge is a member of a deputy "gang" is unfounded and patently false.

As detailed above, Deputy Runge testified he was assigned to the NCCF from 2016 to 2019, however, denied being involved in the unverified deputy gangs IPA, AKIA, or any other deputy gang during those years. Further, he denied involvement in any deputy gang at any given point, including the date of the subject incident. Since Plaintiffs failed to provide any evidence of these accusations, they are thereby irrelevant under *Federal Rules of Evidence*, Rule 402.

### C.  ANY PROBATIVE VALUE OF "CLIQUES" OR "DEPUTY GANGS," ARE SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNDUE PREJUDICE, CONFUSION OF THE ISSUES, MISLEADING THE JURY, AND WASTE OF TIME.

*Federal Rules of Evidence*, Rule 403, provides that evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, misleading the jury, or by consideration of waste of time. *Fed. R. Evid.* 403. "Unfair prejudice" for purposes of Rule 403 means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. U.S.,* 519 U.S. 172, 180 (1997) (internal quotations omitted).

In this case, it is respectfully submitted that evidence concerning "cliques" or "deputy gangs," would be offered by Plaintiffs in an effort to support their absurd suggestion that Deputy Runge is affiliated with a "deputy gang" or "deputy clique" and maliciously singled out and attacked Mr. Byram. By presenting evidence of "cliques" or "deputy gangs", Plaintiffs will undoubtedly mislead the jury and create a confusion of the issues. The quintessential issue the jury should consider is whether the use of force by the Deputy Defendants was objectively reasonable in light of the facts and circumstances confronting them.  See *Graham v. Connor*, 490 U.S. 386, 388

(1989).

Plaintiffs would have to first prove that such gangs exist within the Sheriff's department, before attempting to prove Deputy Runge's involvement in these alleged gangs. Specifically, the validity of the *KnockLA* article, claiming the existence of the IPA, would itself be another mini trial. In essence, Plaintiffs would create several mini trial within the trial which are a waste of the court's time and resources, and would confuse the jury as to the real issue at trial.

Asking the jury to consider the unfounded claims made in the KnockLA article runs a high risk of igniting emotion rather than logic. As such, the danger of unfair prejudice potentially arising from any of the above-referenced evidence substantially outweighs any probative value this Court may find and should thereby be excluded from trial.

### D. THE KNOCKLA ARTICLE CONSTITUTES HEARSAY NOT SUBJECT TO ANY EXCLUSION

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Fed. R. Evid.* 801. Except as otherwise provided, hearsay evidence is inadmissible. *Fed. R. Evid.* 802.

The *KnockLA* article referenced by Plaintiffs in their complaint and during discovery contains unsubstantiated third-party hearsay statements regarding the existence of a deputy gang and Deputy Runge's membership in said gang. The purpose of the hearsay rule is to exclude untrustworthy statements not made under oath. This purpose would be thwarted if Plaintiffs are allowed to introduce pre-selected media accounts containing unsworn third-party statements regarding other unrelated incidents. Such media accounts are not reliable evidence and are clearly out-of-court statements being used to establish the truth of the matter asserted. Consequently, any such media coverage are hearsay and should be excluded.

///

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request the Court grant this Motion in *Limine*, and preclude Plaintiffs and their counsel from introducing at trial any evidence, references to evidence, witness testimony, contentions, or cross-examination relating to any alleged "deputy gangs," "cliques," and "subgroups."

DATED: December 10, 2024      HURRELL CANTRALL LLP

By:     */s/ Jordan S. Stern*
THOMAS C. HURRELL
JORDAN S. STERN
NICOLE G. ORTEGA
Attorneys for Defendants, COUNTY OF LOS ANGELES, BLAKE RUNGE and BRENDA ALCANTARA

9

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION

## I. INTRODUCTION

This civil rights and state tort case arises out of the fatal deputy-involved shooting of decedent, Everett Byram ("Mr. Byram") on February 10, 2023. On that date, deputies from the Palmdale Station of the Los Angeles County Sheriff's Department, responded to a call for a domestic disturbance at the home that Plaintiffs Ursula Byram, N.B., and S.B. lived in with their husband and father, Mr. Byram. Upon the Deputies' arrival, Plaintiff Ursula Byram stood outside of her front door and advised the deputies that her husband, Mr. Byram, was experiencing a mental health crisis and was suicidal. She advised the deputies that there were no injuries, there were no guns in the home, and that her primary concern was her husband receiving the mental health treatment he needed. Furthermore, based on the 9-1-1 call, dispatch requested a mental evaluation team ("MET") to respond to the home as well. Ms. Byram did not consent to the Deputies entry or search in her home, and the Deputies did not have a warrant to search the home. Without consent, absent exigent circumstances, and without waiting for the MET responders to arrive, the Deputies, including Defendant Deputy Blake Runge ("Defendant Runge") and Defendant Brenda Alcantara ("Defendant Alcantara") searched the home and encountered Mr. Byram in the backyard. Mr. Byram waived a blunt sword in a "Jedi" fashion around his own body and remained more than 14 feet away from the deputies throughout the entire encounter. Mr. Byram did not advance or charge at the deputies as he waived the sword. Nevertheless, when Deputy Lopez-Munoz announced he would deploy less-lethal 40 millimeter rounds at Mr. Byram in an attempt to safely bring him into custody, by shouting "40!" Defendant Runge approached Mr. Byram from behind these deputies and deployed his firearm, shooting Mr. Byram in the head, killing him. At the same time, Deputy Cervantes was designated as lethal coverage and stood directly next to Deputy Lopez-Munoz,

as he deployed his less-lethal shots did *not* deploy any lethal rounds at Mr. Byram. In his deposition, Deputy Cervantes testified that he did not think lethal force was necessary at that time.

Given Defendant Runge's aggressive use of lethal force, in a situation where other deputies designated as lethal did not act in the same way, the jury should be permitted to hear admissible evidence that is relevant his excessive use of force; as well as Defendant County's perpetuation of an unconstitutional practice, policy, and custom; ratification; and failure to train. This necessarily includes evidence of Defendant Runge's involvement in a known Deputy Gang called the IPA. Plaintiffs oppose Defendants' motion *in limine* to exclude this evidence on the basis that the evidence is relevant under Federal Rule of Evidence Rule 402, more probative than prejudicial under Rule 403, and permitted under Rule 404(b)(2) as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Plaintiffs anticipate introducing this evidence by way of witness testimony after laying proper foundation as to the existence of Deputy Gangs, the Inclusive Province A Klansman I Am ("AKIA") ("IPA") deputy gang, and Defendant Runge's alleged membership in the IPA gang.

## II. ARGUMENT

### A. EVIDENCE OF DEFENDANT RUNGE'S DEPUTY GANG MEMBERSHIP IS RELEVANT.

Federal Rule of Evidence, Rule 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probably than it would be without the evidence and [] the fact is of consequence in determining the action. Fed. R. Evid. Rule 401. The Ninth Circuit construes the standard of relevance as "a liberal one," *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019). Furthermore, the *Crawford* court noted that determining a fact's "consequence in determining the action generally requires considering the substantive issues the case presents." *Id.*

The primary substantive issue this case presents is whether Defendant Runge used excessive and unreasonable deadly force against Decedent. In addition to the reporting conducted in the *Knock LA* article that Defendants reference, voluminous additional documentation of Los Angeles County Sheriff's Department's deputy gangs exists. For example, in February 2023, In February of 2023, Special Counsel to the Los Angeles County Sheriff Civilian Oversight Committee publicly published its years-long investigative findings in the Report and Recommendations of the Special Counsel to the Sheriff Civilian Oversight Committee Regarding Deputy Gangs and Deputy Cliques in the Los Angeles County Sheriff's Department. The Special Counsel published its factual findings sourced from dozens of depositions and elicited sworn testimony from witnesses.

Additionally, there is ample documentation, supported by sworn testimony, that a common practice within these Deputy Gangs (by way of initiation, maintaining certain status within the gang, or otherwise) is to use lethal force against civilians as a type of trophy. Therefore, whether Defendant Runge was a member or affiliate of any LASD deputy gang is certainly relevant to Plaintiffs' claims of excessive force, their claim under the Fourteenth Amendment for interference with familial relations, and their *Monell* claims against Defendant County. Additionally, such evidence is relevant to Plaintiffs' claims for punitive damages.

Evidence of whether Defendant Runge was ever a member of a deputy gang, and/or was a member of a deputy gang at the time of the shooting bears on Defendant Runge's motive, intent, opportunity, plan, preparation, knowledge, identity, absence of mistake, or lack of accident, when he used lethal force against Mr. Byram. Fed. R. Evid. 404(b)(2); See also *Vargas v. Cnty. of Los Angeles*, No. 219CV03279MEMFASX, 2023 WL 2266114 at * 8 (C.D. Cal. Feb. 27, 2023) (finding evidence of defendant deputies' alleged gang membership admissible as relevant under FRE 401 and 404). If Defendant Runge was a member of any deputy gang, including IPA, that fact makes it more likely than not that he used excessive

force against Decedent Mr. Byram and did so with a particular motive or intent to gain or maintain a degree of status within the deputy gang.

For the same reasons, this evidence would be relevant to Plaintiffs' claims for interference with their familial relationship with Mr. Byram under the Fourteenth Amendment. In *Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009), the Ninth Circuit made clear that acting with "deliberate indifference to or reckless disregard for [a person's] rights" was "consistent with the standard imposed in the substantive due process context, in which government action may violate due process if it 'shocks the conscience.'" The Ninth Circuit has indicated that a standard higher than "deliberate indifference" should apply only in situations "that escalate so quickly that the officer must make a snap judgment." *Porter v. Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008). The "snap judgment" to use deadly force must be a reaction to an "unforeseen" escalation by the subject. *Porter v. Osborn*, 546 F.3d 1131, 1230 (9th Cir. 2008). Here, the jury will decide which of the two "shocks the conscience" standards apply, but in the application of either standard, whether Defendant Runge was a member of a deputy gang would be relevant. The jury could find that Defendant Runge's deputy gang membership and his consequential motivations to use lethal force in the absence of an immediate threat of death or serious bodily injury bears on whether he acted with reckless disregard for Plaintiffs' rights to familial relations. In addition, this evidence would be relevant to Plaintiffs' claims for punitive damages, as it would assist the jury in determining whether Defendant Runge acted with malice when he used lethal force against Mr. Byram.

This evidence is also relevant to Defendant Runge's credibility because he testified under oath at his deposition that he was not a member of any deputy gang. Evidence showing otherwise would go directly to his credibility.

### B. EVIDENCE OF DEFENDANT RUNGE'S DEPUTY GANG MEMBERSHIP IS NOT HEARSAY.

Plaintiffs anticipate introducing the aforementioned evidence by way of

13

sworn witness testimony after laying proper foundation as to the existence of Deputy Gangs, the Inclusive Province A Klansman I Am ("AKIA") ("IPA") deputy gang, and Defendant Runge's membership in any deputy gang at any time. Defendants claim that the *Knock LA* article is inadmissible hearsay for which there is no exception. Plaintiffs submit that the article would likely only be used for impeachment purposes, and would satisfy the reputation in the community exception to the rule against hearsay, given that other deputies within Defendant Runge's station identified him as a member of the IPA. Fed. R. Evid. 404(b)(2); (See Exhibit 1, *Knock LA Article* attached to Declaration of Cooper Alison-Mayne).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request this Court deny Defendants' motion *in limine* to exclude evidence of LASD Deputy Gangs and Defendant Runge's membership in a deputy gang, including the IPA gang.

DATED: December 10, 2024    LAW OFFICES OF DALE K. GALIPO

By: *Cooper Alison-Mayne*
DALE K. GALIPO
COOPER ALISON-MAYNE
Attorneys for Plaintiffs