**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*



# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| URSULA BYRAM, S.B. by and through guardian ad litem TIMOTHY BYRAM, N.B. by and through guardian ad litem TIMOTHY BYRAM, and ATTICUS BYRAM, individually and as successors-in-interest to Everett Byram,<br><br>          Plaintiffs,<br><br>  vs.<br><br>COUNTY OF LOS ANGELES, BLAKE RUNGE, and BRENDA ALCANTARA,<br><br>          Defendants. | Case No.: 2:23-cv-09285-KS<br>Hon. Karen L. Stevenson<br><br>**PLAINTIFFS' UNOPPOSED *EX PARTE* MOTION FOR APPROVAL OF COMPROMISE OF CLAIMS OF THE MINOR PLAINTIFFS S.B. AND N.B.; VERIFICATION BY GUARDIAN *AD LITEM* TIMOTHY BYRAM** |

1

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2E154B01B4

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs S.B. and N.B., by and through their guardian ad litem Timothy Byram, hereby move by way of this Unopposed Ex Parte Motion for Approval of Compromise of Claims of Minor Plaintiffs S.B. and N.B. ("Motion") for an order approving the settlement of Plaintiffs S.B. and N.B.'s claims and distribution of their settlement funds.

Plaintiffs make this Motion pursuant to Central District of California Local Rules 7-19 and 17-1.2. The grounds for this Motion are set forth in the Memorandum of Points and Authorities, which follows below, and the Declaration of Cooper Alison-Mayne, which is submitted concurrently herewith. Prior to filing this *ex parte* application, Plaintiffs' counsel contacted Defendants' counsel in compliance with Local Rules 7-19 through 7-19.1. Defendants' counsel:

> **Jordan Stern**
>
> Hurrell-LLP
>
> 800 W. 6th Street Suite 700
>
> Los Angeles, CA 90017
>
> Phone: (213) 426-2000
>
> Email: jstern@hurrell-llp.com
>
> **Thomas C. Hurrell**
>
> Hurrell-LLP
>
> 800 W. 6th Street Suite 700
>
> Los Angeles, CA 90017
>
> Phone: (213) 426-2000
>
> Email: thurrell@hurrell-llp.com

Declaration of Cooper Alison-Mayne in Support of Ex Parte Motion to Compromise the Claims of the Minor Plaintiffs ("Alison-Mayne Decl.") ¶ 2.

LAW OFFICES OF DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

2

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2E154B01B4

Defendants' counsel conveyed to Plaintiffs' counsel that Defendants and their counsel do not oppose the filing of this application for approval of the minors' compromise on an *ex parte* basis, nor do Defendants and their counsel oppose the substance of Plaintiffs' request for an order approving the claims of minor plaintiffs. Alison-Mayne Decl. ¶ 3.

Plaintiffs seek approval of the Minors' compromise on an *ex parte* basis because the minor plaintiffs' settlement funds will be used to purchase a structured settlement as outlined below, but the structured annuity has to be purchased before the offer expires due to changing interest rates. Filing this application as a regularly-noticed motion would collapse the parties' carefully-negotiated funding timeline; cause the annuity quote to expire.

Plaintiffs will be irreparably prejudiced absent ex parte relief: the structured-annuity quote from Prudential expires before any regularly-noticed motion under L.R. 7-15 could be heard. Moreover, if the Court approved this application and issues the attached proposed order, the County needs 30 days to deliver the checks that will be used to purchase the structured annuities. Neither Plaintiffs nor their counsel created the timing constraint.

Respectfully Submitted,

Dated: May 26, 2026          **LAW OFFICES OF DALE K. GALIPO**

By:    /s/    *Cooper Alison-Mayne*_____
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs*

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Timothy Byram, guardian *ad litem* for minor Plaintiffs S.B. and N.B., hereby submits this *Motion* and proposed order for approval of the compromise of the claims of Plaintiffs S.B. and N.B. in this matter, and respectfully requests that this Honorable Court approve of the proposed distribution of their settlement funds.

The instant claims arose out of the death of Everett Byram ("Decedent"), on February 10, 2023. Decedent was a 34-year-old comedian and the father of three young children. On the night of his death, Decedent was suffering from a mental-health crisis. Los Angeles County Sheriff's deputies were dispatched to the family home in response to a domestic-disturbance call and were specifically told that Decedent was in crisis, that the Mental Evaluation Team ("MET") had been requested, and that no weapons were inside the home. Despite the availability of MET resources, deputies entered the residence and confronted Decedent in the backyard, where he had retreated holding a blunt sword. Within seconds of contact, and from a distance of more than fifteen feet, Deputy Blake Runge fired a single fatal shot to Decedent's head, simultaneously with another deputy's deployment of a 40-mm less-lethal round.

This was a hard-fought, vigorously contested case. Defendants asserted at every stage that Decedent posed an immediate deadly threat because he was armed with a sword and was advancing in the deputies' direction; that the shooting deputy was entitled to qualified immunity; and that any damages were limited by Decedent's own conduct. A § 1983 wrongful-death case turning on a deputy's split-second threat perception carries substantial trial risk: a jury could credit the deputies' testimony that Decedent was charging at them with an edged weapon, and the qualified-immunity defense remained a live issue all the way through trial preparation. The decedent's own troubling statements that night (e.g., "kill me"

4

and "just shoot me"), his possession of the sword, and his refusal to drop it when ordered, all gave Defendants meaningful arguments to present to the jury. Despite those risks, Plaintiffs' counsel was able to secure a settlement of $6,000,000—an excellent recovery for the family that compares very favorably to settlements and verdicts in comparable officer-involved shooting cases.

All Plaintiffs and Defendants have agreed to settle this case. The settlement agreement obligates Defendants to pay Plaintiffs and their attorneys of record a total sum of $6,000,000.00. Plaintiffs have agreed to split the settlement sum equally among the four Plaintiffs as follows:

| | |
|---|---|
| Ursula Byram (wife of Decedent) | $1,500,000.00 |
| S.B. (child of Decedent) | $1,500,000.00 |
| N.B. (child of Decedent) | $1,500,000.00 |
| Atticus Byram (child of Decedent) | $1,500,000.00 |

Alison-Mayne Decl. ¶ 3.

## II.      JUDGMENTS IN SIMILAR CASES

In factually similar officer-involved-shooting cases, courts have granted summary judgment and qualified immunity to defendants, leaving plaintiffs with no recovery. In this case, no motion for summary judgment was filed, but Plaintiffs would have faced similar hurdles on a post-trial motion. For example, in *R.E. v. City of Long Beach, et al.*, Case No. 2:21-cv-06072-SB-KS, a judge sitting for the Central District of California entered summary judgment for the defendants and against the minor plaintiff. As in the instant case, the R.E. decedent refused officers' commands to drop an edged weapon and advanced on the officers with that weapon, at which point a fatal shooting occurred. The R.E. court held that the decedent posed an immediate threat of death or serious bodily injury and granted qualified immunity to the involved officers. Similarly, in *Fernando Del Castillo, et al. v. City of Tempe, et al.*, Case No. CV-14-01945-PHX-DLR, a judge sitting for

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

the District of Arizona granted qualified immunity and summary judgment for the defendants, reasoning that the decedent posed an immediate threat when he advanced toward an officer with an edged weapon. The instant case presents the same core facts on which R.E. and Del Castillo turned: a decedent armed with an edged weapon (a three-foot sword), who refused commands and closed distance on officers from approximately 10-15 feet.

Plaintiffs would face substantial risk at trial. Defendants will seek to introduce evidence relating to the 911 call placed by Decedent's wife reporting an assault and suicidal behavior, as well as Decedent's verbal conduct toward the responding deputies, including threats to harm them, all of which Defendants will argue made the use of deadly force objectively reasonable under *Graham v. Connor*, 490 U.S. 386 (1989). For example, in *Angela Hernandez v. City of Huntington Beach*, Case No. 17-01257 PA (KESx), the district court granted qualified immunity on summary judgment in an edged-weapon shooting case and declined to exercise supplemental jurisdiction over the remaining state-law claims; on retrial in state court (Case No. 30-2020-01137506-CU-CR-CJC), the jury returned a defense verdict. Plaintiffs anticipate that Defendants here would press similar arguments raised in *R.E.*, *Del Castillo*, and *Hernandez* in seeking judgment in their favor.

Factually similar cases that have settled have done so for amounts well below the settlement reached in this case. In *A.B., et al. v. City of Santa Ana, et al.*, Case No. SA CV 18-1553-DOC-ADS, a fatal officer-involved-shooting case arising out of a domestic-disturbance 911 call, the parties settled for a total of $250,000. As in the instant case, the A.B. decedent refused commands to drop an edged weapon, made verbal threats in the presence of family members, and advanced toward officers with the weapon. The *A.B.* court approved a net distribution of $50,476.38 to the decedent's sole minor child. In *Christopher Pettersen, et al. v. County of Los Angeles, et al.*, Case No. CV 14-04699, a fatal

6

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2E154B01B4

shooting case in which the decedent charged deputies with a large metal spike while yelling "kill me, kill me" and refusing commands to drop the object, the case settled for $150,000. The suicidal-by-cop posture in *Pettersen* tracks the suicidal-behavior report relayed by Decedent's wife on the 911 call in this case.

Where similar cases have proceeded to verdict, juries have returned awards substantially below the per-plaintiff recovery here. In *Garcia v. County of Stanislaus*, Case No. 07-cv-01376-LJO-SMS, the jury returned a $45,000 verdict in favor of the decedent's daughter and a $22,500 verdict in favor of the decedent's son in a fatal police shooting case in which defendants argued that the decedent charged an officer and that taser deployment was ineffective.

Against these comparators, the $6,000,000 total settlement reached in this case, and the $891,124.35 net recovery to each of S.B. and N.B., is exceptional. It substantially exceeds the per-minor net recovery approved in *A.B.* by an order of magnitude, exceeds the total settlements in *Pettersen* and *A.B.* combined, and exceeds the minor verdicts in *Garcia* by multiples. The risk that Plaintiffs would recover nothing if qualified immunity were to be granted on a post-trial motion, or substantially less at trial, is real and documented in the cases cited above. Plaintiffs' counsel respectfully submits that the settlement is fair, reasonable, and in the best interests of the Minors.

## III.  DISCUSSION

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors. Rule 17(c) provides, in relevant part, that a district court "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c). In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district "court [to] conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir.

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS
DKG

1978); *see also Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*.").

Although the district court has a special duty to safeguard the interests of minor plaintiffs, that duty requires only that the district court determine whether the net amount distributed to each minor plaintiff in the proposed settlement is fair and reasonable, without regard to the proportion of the total settlement value designated for adult co-Plaintiffs and contracted by them with Plaintiffs' counsel. If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as proposed. *Robidoux v. Rosengren*, 638 F.3d 1177, 1179 (9th Cir. 2011).

Central District Local Rule 17-1.2 likewise provides that "[n]o claim in any action involving a minor or incompetent person shall be settled, compromised, or dismissed without leave of the Court embodied in an order, judgment, or decree." L.R. 17-1.2. Local Rule 17-1.3 further provides that, "[i]nsofar as practicable, hearings on petitions to settle, compromise, or dismiss a claim in an action involving a minor or incompetent person shall conform to Cal. Civ. Proc. Code § 372 and California Rule of Court 3.1384." L.R. 17-1.3. California Code of Civil Procedure Section 372 and California Rule of Court 3.1384 refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts. California Rule of Court, rule 3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure Section 372 must comply with rules 7.950, 7.951, and 7.952." Pursuant to the above California rules, Plaintiffs S.B. and N.B., and their attorneys, make the following disclosures:

**Disclosures pursuant to California Rule of Court 7.950:**

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2E154B01B4

1. Timothy Byram is the duly appointed guardian *ad litem* for minor Plaintiffs S.B. and N.B. Timothy Byram is the brother of the Decedent, Everett Byram, and the natural uncle of S.B. and N.B. Timothy Byram was appointed to serve as guardian *ad litem* in this action because the Minors' surviving parent, Ursula Byram, is a co-plaintiff who asserts her own claims arising out of the same incident, creating a potential conflict of interest as to the allocation of settlement proceeds among Plaintiffs. Ursula Byram remains the Minors' natural mother and legal guardian for all other purposes.

2. Plaintiffs are all represented by the Law Offices of Dale K. Galipo.

3. Plaintiff S.B. is a minor child and the biological son of the Decedent in this case, Everett Byram. He was born in 2021.[1] Alison-Mayne Decl. ¶ 4.

4. Plaintiff N.B. is a minor child and the biological daughter of the Decedent in this case, Everett Byram. She was also born on in 2021. S.B. and N.B. are twins. Alison-Mayne Decl. ¶ 5.

5. Plaintiff Atticus Byram is the biological son of the Decedent in this case, Everett Byram. He turned eighteen on October 13, 2025, and is no longer a minor. He is therefore a competent adult plaintiff and the Court need not approve the compromise of his claims; however, as set forth below, Plaintiffs respectfully request that the proposed order direct payment of his net settlement share so that the entire settlement may be funded as a single, coordinated transaction. Alison-Mayne Decl. ¶ 6.

6. The nature of Plaintiffs' claims in this lawsuit are set forth in the operative complaint filed in this action. Pursuant to the settlement agreement, Plaintiffs' claims will be compromised without a trial on the merits of the claims. Alison-Mayne Decl. ¶ 7.

---

[1] Plaintiffs only include the year of the S.B.'s birth in accordance with FRCP 5.2(a)

7. The Minor Plaintiffs' damages in this case arise from the loss of Decedent's comfort, care, companionship, training, support, and guidance, for which S.B. and N.B. recover directly, and from Decedent's own pre-death damages, which the Minors are entitled to recover as his successors in interest. Alison-Mayne Decl. ¶ 8.

8. Medical treatment and medical billing are not relevant. The Minor Plaintiffs have not received medical treatment in connection with this case. Alison-Mayne Decl. ¶ 9.

9. The total amount of the settlement that Defendants agree to pay is $6,000,000. As stated above, Plaintiffs' proposed gross division (an equal split among the four Plaintiffs) is:

| | |
|---|---|
| Ursula Byram (wife of Decedent) | $1,500,000.00 |
| S.B. (child of Decedent) | $1,500,000.00 |
| N.B. (child of Decedent) | $1,500,000.00 |
| Atticus Byram (child of Decedent) | $1,500,000.00 |

Alison-Mayne Decl. ¶ 3.

10. Plaintiffs' attorneys—the Law Offices of Dale K. Galipo—are requesting reimbursement of advanced litigation costs in the total amount of $35,502.60. The advanced costs consist of the federal-court filing fee; fees paid to retained experts (a police-practices expert and a forensic-pathology expert) and to a video editor; court reporter and deposition transcript fees for the parties' depositions; fees paid to a process-service company; and shipping and postage. The costs will be split among the four Plaintiffs equally on a *pro rata* basis with their gross settlement allocation, such that Plaintiffs' attorneys are requesting costs as follows:

| | |
|---|---|
| Ursula Byram (wife of Decedent) | $8,875.65 |

10

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2F154B01B4

| S.B. (child of Decedent) | $8,875.65 |
|---|---|
| N.B. (child of Decedent) | $8,875.65 |
| Atticus Byram (child of Decedent) | $8,875.65 |

Alison-Mayne Decl. ¶ 10.

11. Thus, the total amount Plaintiffs' attorneys seek in reimbursement for advanced litigation costs from the Minors is $17,751.30 (i.e., $8,875.65 from each of S.B. and N.B.).

12. The contingency retainer agreement between the Minors' guardian *ad litem* and Plaintiffs' attorneys provides for a forty (40) percent contingency fee. Plaintiffs' attorneys are requesting attorneys' fees in the amount of forty (40) percent of the settlement proceeds. Attorneys' fees are $600,000 from each of S.B.'s and N.B.'s gross share, for total attorneys' fees from the Minors of $1,200,000. Alison-Mayne Decl. ¶ 12.

13. This case involved a substantial amount of risk, was challenging, and required significant background in § 1983 litigation. Defendants vigorously asserted that Decedent posed an immediate deadly threat at the time of the shooting because he was armed with a sword, that the shooting deputy was entitled to qualified immunity, and that Plaintiffs' damages were limited by Decedent's own conduct. If Plaintiffs had prevailed at trial, fees due to Plaintiffs' attorneys under the retainer agreement could have substantially exceeded the requested contingency fee, but the same trial would have presented real and serious risks of an adverse verdict. If the Law Offices of Dale K. Galipo are not awarded their requested compensatory fee in such cases, they would not be able to take them. In turn, minor plaintiffs such as S.B. and N.B. would not be able to attract competent counsel who could achieve similar results. Accordingly, the Minors' attorneys request

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

11

reimbursement of the full amount of their attorneys' fees and costs. Alison-Mayne Decl. ¶ 13.

14. The share of these proceeds apportioned for minor Plaintiff S.B. and his attorneys is $1,500,000. After deducting advanced costs in the amount of $8,875.65 and requested attorneys' fees of $600,000, the total net settlement proceeds to Plaintiff S.B. is $891,124.35. It is requested that $891,124.35 be used to fund a structured settlement annuity for Plaintiff S.B. As set forth in **Exhibit A**, attached hereto and incorporated herein by reference, the annuities for minor Plaintiffs S.B. and N.B. will be funded together by a single check in the amount of $1,782,248.70, payable to Prudential Assigned Settlement Services Corp. and mailed to Baldwin Settlements, 24265 Juanita Dr., Laguna Niguel, CA 92677. The total amount that Plaintiff S.B. will receive after final payment is made directly to him is $3,374,896.10. Plaintiff S.B.'s guardian ad litem, Timothy Byram, agrees to this proposal and believes that it is in the best interests of S.B. Alison-Mayne Decl. ¶ 14.

15. The share of these proceeds apportioned for minor Plaintiff N.B. and her attorneys is $1,500,000. After deducting advanced costs in the amount of $8,875.65 and requested attorneys' fees of $600,000, the total net settlement proceeds to Plaintiff N.B. is $891,124.35. It is requested that $891,124.35 be used to fund a structured settlement annuity for Plaintiff N.B. As set forth in **Exhibit A**, attached hereto and incorporated herein by reference, the annuities for minor Plaintiffs S.B. and N.B. will be funded together by a single check in the amount of $1,782,248.70, payable to Prudential Assigned Settlement Services Corp. and mailed to Baldwin Settlements, 24265 Juanita Dr., Laguna Niguel, CA 92677. The total amount that Plaintiff N.B. will receive after final payment is made directly to her is $3,374,896.10. Plaintiff N.B.'s guardian ad litem, Timothy Byram, agrees to this proposal and believes that it is in the best interests of N.B.

**Structured Settlement Annuity Payment Schedule — S.B. and N.B.**

*S.B. and N.B. will receive identical payments on the dates set forth below.*

| Payment Type | Amount | Schedule | Subtotal |
|---|---|---|---|
| Periodic — semi-annual | $40,000.00 | 8 payments, 10/14/2039 through 04/14/2043 | $320,000.00 |
| Periodic — monthly | $4,000.00 | 49 payments, 10/14/2043 through 10/14/2047 | $196,000.00 |
| Lump sum | $120,000.00 | 10/14/2043 | $120,000.00 |
| Lump sum | $150,000.00 | 10/14/2045 | $150,000.00 |
| Lump sum | $300,000.00 | 10/14/2048 | $300,000.00 |
| Lump sum | $500,000.00 | 10/14/2051 | $500,000.00 |
| Lump sum | $1,788,896.10 | 10/14/2056 | $1,788,896.10 |
| **Total guaranteed payments per minor** | | | **$3,374,896.10** |

*See* **Exhibit A**. Alison-Mayne Decl. ¶ 15

16. The structured settlement annuities for S.B. and N.B. will be issued by The Prudential Insurance Company of America ("Prudential"), and Defendant's liability to make the periodic payments will be assigned to Prudential Assigned Settlement Services Corp. ("PASSCorp") as the qualified assignee. PASSCorp will own the annuity policies and will direct Prudential to mail payments to S.B. and N.B. directly. In addition, pursuant to authority granted by its Board of Directors, Prudential has issued a written guarantee that if PASSCorp should fail to make any payment under the Assignment, Prudential will make such payment promptly after receipt of written notice of PASSCorp's default. A true and correct copy of Prudential's Evidence of Guarantee, signed by Prudential Vice President Alexandra Hyten, is attached hereto as **Exhibit B.** Alison-Mayne Decl. ¶ 16

17. Prudential is one of the largest financial services institutions in the world, with operations across the United States, Asia, Europe, and Latin America. According to Prudential's most recently published structured-settlements

13

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

financial-strength summary, Prudential reports approximately $1.35 trillion in total assets under management, $306 billion in admitted assets (including $153 billion held in separate accounts), and approximately $4 trillion in gross life insurance in force worldwide. Prudential is highly rated by each of the four major independent insurance-rating agencies, with the following ratings as published in the same summary: A+ (Superior) by A.M. Best, AA- by Standard & Poor's, Aa3 by Moody's, and AA- by Fitch. A true and correct copy of Prudential's published financial-strength summary is attached hereto as **Exhibit C.** Alison-Mayne Decl. ¶ 17

18. All sums and periodic payments described above constitute damages on account of personal physical injuries within the meaning of 26 U.S.C. § 104(a)(2). Defendant will execute a "qualified assignment" within the meaning of 26 U.S.C. § 130(c), assigning its liability to make the periodic payments to Prudential Assigned Settlement Services Corp. The structure thereby preserves the tax-free character of the Minors' recovery. Alison-Mayne Decl. ¶ 18

19. The structured settlement is in the best interests of S.B. and N.B. for three reasons. First, the Minors will not receive any portion of the structured proceeds until they reach the age of majority. Second, the periodic and lump-sum payments cannot be accelerated, deferred, increased, decreased, sold, mortgaged, encumbered, or assigned by the Minors or by any other party, which provides durable protection against dissipation throughout the Minors' lives. Third, the schedule is sequenced to deliver guaranteed funds at typical life milestones: semi-annual payments beginning at age 18 covering the undergraduate years, a $120,000 lump sum at age 22 coupled with monthly payments through age 26 (post-college transition and early career), a $150,000 lump sum at age 24, a $300,000 lump sum at age 27, a

Docusign Envelope ID: 079ECA11-FB5D-8C9F-82DC-AE2F154B01B4

$500,000 lump sum at age 30, and a final $1,788,896.10 lump sum at age 35. Alison-Mayne Decl. ¶ 19.

20. The share of these proceeds apportioned for adult Plaintiff Atticus Byram and his attorneys is $1,500,000. After deducting advanced costs in the amount of $8,875.65 and attorneys' fees of $600,000, the total net settlement proceeds to Plaintiff Atticus Byram is $891,124.35. Plaintiff Atticus Byram has elected to use $831,124.35 of these proceeds to fund a structured settlement annuity, with the remaining $60,000 to be paid directly to him. To fund the annuity, a check in the amount of $831,124.35 shall be made payable to Prudential Assigned Settlement Services Corp. and delivered to Baldwin Settlements, 24265 Juanita Dr., Laguna Niguel, CA 92677. The remaining $60,000 shall be included in the check made payable to The Law Offices of Dale K. Galipo, Client Trust Account. Alison-Mayne Decl. ¶ 20.

21. The share of these proceeds apportioned for adult Plaintiff Ursula Byram and her attorneys is $1,500,000. After deducting advanced costs in the amount of $8,875.65 and attorneys' fees of $600,000, the total net settlement proceeds to Plaintiff Ursula Byram is $891,124.35. Plaintiff Ursula Byram has elected not to fund a structured settlement annuity, and the full $891,124.35 shall be included in the check made payable to The Law Offices of Dale K. Galipo, Client Trust Account, for disbursement directly to her. Alison-Mayne Decl. ¶ 21.

22. The moving guardian *ad litem*, Timothy Byram, has no claims against Defendants in connection with the subject incident. Alison-Mayne Decl. ¶ 22.

23. The moving guardian *ad litem* does not have any claims against the minor Plaintiffs in connection with the subject incident. Alison-Mayne Decl. ¶ 22.

24. California Welfare and Institutions Code Section 14124.73 does not apply.

25. This motion does not seek an order for payment of money to a special needs trust. Alison-Mayne Decl. ¶ 23.

26. Personal appearance of the Minors and the guardian *ad litem* at a compromise hearing is unnecessary in light of the verified petition submitted herewith, the proposed structured-annuity funding, and the unopposed nature of this application. Plaintiffs respectfully request that any personal-appearance requirement under California Rule of Court 7.952 be excused.

**Disclosures pursuant to California Rule of Court 7.951:**

1. This motion was prepared by attorney Cooper Alison-Mayne (California State Bar Number 343169), of the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, which represents plaintiffs in this action. Alison-Mayne Decl. ¶ 24.

2. The Law Offices of Dale K. Galipo did not become involved in this matter because of any influence or request from any party against whom the claims of the Minors are asserted. Alison-Mayne Decl. ¶ 25.

3. The Law Offices of Dale K. Galipo represents plaintiffs in this matter but is not employed by any other party or any insurance carrier involved in the matter. Alison-Mayne Decl. ¶ 26.

4. The Law Offices of Dale K. Galipo has not to date received any compensation for its services in connection herewith from any person. Alison-Mayne Decl. ¶ 27.

5. In addition to receiving compensation from the Minor Plaintiffs' share of the settlement, Plaintiffs' attorneys expect to receive compensation in the amount of $1,200,000 in attorneys' fees and $17,751.30 in reimbursed advanced litigation costs for their services in connection herewith from the gross settlement proceeds to the adult plaintiffs in this case. Plaintiffs' attorneys will receive a total of $2,400,000 in attorneys' fees and $35,502.59 in costs. Alison-Mayne Decl. ¶ 28.

16

6. The Law Offices of Dale K. Galipo accepted this engagement for a contingency fee, plus reimbursement for any costs advanced. The retainer agreement provides for a 40 percent attorney fee recovery if any recovery is made after commencement of a lawsuit. Alison-Mayne Decl. ¶ 29.

**Petitioner's endorsement:**

Timothy Byram has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident giving rise to the Minors' claims, the parties responsible for the incident, and the nature, extent and seriousness of the Minors' claims. Petitioner further understands that if the compromise proposed in this *Motion* is approved by the Court and is consummated, the minor children will be forever barred from seeking any further recovery of compensation even though the Minors' injuries and losses might in the future appear to be more serious than they are now thought to be. Petitioner recommends the compromise settlement and the proposed distribution to the Minors to the Court as being fair, reasonable, and in the best interests of the Minors, and requests that the Court approve this compromise settlement and make such other and further orders as may be just and reasonable. Petitioner requests that the Court enter the Proposed Order filed concurrently herewith.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order submitted.

Dated: May 26, 2026                    **LAW OFFICES OF DALE K. GALIPO**

                                       By:    /s/   *Cooper Alison-Mayne*_____
                                              Dale K. Galipo
                                              Cooper Alison-Mayne
                                              *Attorneys for Plaintiffs*

17

**VERIFICATION**

I, Timothy Byram, declare as follows:

I am the duly appointed guardian ad litem for minor Plaintiffs S.B. and N.B. in this action. I have read the foregoing Plaintiffs' Unopposed Ex Parte Motion for Approval of Compromise of Claims of the Minor Plaintiffs S.B. and N.B. and know its contents. The matters stated in the Motion are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I have made a careful and diligent inquiry and investigation into the facts relating to the incident giving rise to the Minors' claims, the parties responsible, and the nature, extent, and seriousness of the Minors' claims. I understand that if the compromise proposed in the Motion is approved by the Court and consummated, S.B. and N.B. will be forever barred from seeking any further recovery of compensation, even if their injuries and losses later appear more serious than they are now thought to be.

I recommend the compromise settlement and the proposed distribution to S.B. and N.B. as fair, reasonable, and in the best interests of the Minors, and I request that the Court approve the compromise and enter the proposed order filed concurrently herewith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 26, 2026, at _____São Paulo, Brazil_____.

Signed by:

Timothy Byram, Guardian ad Litem for Plaintiffs S.B. and N.B.

18